UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| KEVAN CASEY, JONATHAN FRIEDLANDER, ADRIAN JAMES, and ROBERT WHEAT, | ) ) ) ) | Civil Action No. 24-cv-2971 |
| Defendants, | ) ) ) | |
| VERTICAL HOLDINGS, LLC, DOVER HILL, LLC, GSK STRATEGIES, LLC, CARMEL VENTURES, LLC, ALS INVESTMENTS, LLC, HIGHBRIDGE CONSULTANTS, LLC, ADRIAN JAMES AS THE TRUSTEE OF THE ASJ LIVING TRUST, ESPORTS GROUP, INC., OAK GROVE ASSET MANAGEMENT, INC., and YSW HOLDINGS, INC., | ) ) ) ) ) ) ) ) ) ) | |
| Relief Defendants. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUBSTITUTE ESTATE REPRESENTATIVE FOR DEFENDANT KEVAN CASEY**

Pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure, Plaintiff U.S. Securities and Exchange Commission (the "SEC") hereby moves this Court for an order to substitute Defendant Kevan Casey with the recently appointed executor of his estate, Tabitha Casey. Counsel representing Mr. Casey in this matter has represented that Mr. Casey is deceased. In September 2024, Mr. Casey's surviving spouse, Tabitha Casey, filed an application for probate, seeking appointment as Mr. Casey's executor. That same month an estate creditor objected to the appointment, causing a legal dispute over who could represent Mr. Casey's estate and the appointment of a temporary administrator pending the resolution of this dispute. In

January 2025, the estate creditor withdrew his objection. Records from the Harris County Probate Court establish that, on January 29, 2025, the Probate Court appointed Tabitha Casey as Mr. Casey's executor. Under Mr. Casey's will, Ms. Casey is also trustee of the Casey Living Trust, a testamentary trust that will receive the residuary of Mr. Casey's probate estate. The SEC now moves to substitute Tabitha Casey, in both capacities, for Mr. Casey.

I.     **BACKGROUND**

On August 9, 2024, the Commission filed a complaint against Defendant Kevan Casey ("Casey") for running a multi-year securities fraud scheme involving a series of microcap companies. Mr. Casey's scheme is alleged to involve acquiring large amounts of shares in these small companies at steep discounts, taking the companies through an initial public offering ("IPO") of stock to the public, hiring or arranging marketing and stock promotions recommending the purchase of these stocks, and then selling a substantial amount of stock for enormous profits without disclosing his ownership stakes, paid stock promotions, or material relationships with the microcap companies. *See* ECF No. 1. The Complaint alleges that Mr. Casey carried out this multi-year scheme to defraud sometimes alone and at other times with three certain co-schemers, his co-defendants Jonathan Friedlander ("Friedlander"), Adrian James ("James"), and Robert Wheat ("Wheat"). *Id.* The Complaint also named several relief defendants whom the Defendants used to hold stock, to sell those holdings to public investors, and to reap ill-gotten gains from those sales. As alleged, the Defendants' unlawful scheme generated approximately $56 million in ill-gotten profits. *Id.* at ¶2. The Complaint seeks permanent injunctions, penny stock bars, officer and director bars, and monetary relief from Mr. Casey and his co-defendants, including an order directing them to "disgorge all ill-gotten gains

2

or proceeds received as a result of the acts and/or courses of conduct [alleged in the Complaint, along] with prejudgment interest thereon." *Id.* at p. 49.

On August 22, 2024, Mr. Casey's counsel executed a waiver of service for the summons in this action. ECF No. 15. Following this waiver, Mr. Casey's counsel represented to SEC counsel that Mr. Casey passed away on September 1, 2024. SEC counsel asked Mr. Casey's counsel if counsel intended to file a statement noting death on the record pursuant to Rule 25, but Mr. Casey's counsel stated they would not because their firm's ethics adviser had told them that they did not have standing to continue representing a deceased client.

On September 11, 2024, Mr. Casey's surviving spouse, Tabitha Casey, filed an application in the Harris County Probate Court in Texas for probate of her husband's will and seeking appointment as independent executor. *See* Exhibit A (Estate of Kevan Mark Casey, No. 528971, Application for Probate). The application includes a copy of Defendant Casey's purported last will and testament. The will appoints Tabitha Casey to be independent executor of the estate. *Id.*, Attachment (Last Will and Testament of Kevan Mark Casey). Further, the application for probate states that "[n]o marriage of [Kevin Casey] was ever dissolved after the will was executed by [him]," affirming Tabitha Casey' status as Mr. Casey's surviving spouse. *Id.*, ¶13. Further, under Article IV of the will, Kevan Casey gives all the residue of his estate to the Casey Living Trust, a testamentary trust in which he and his wife are co-trustees. *Id.*, Attachment (Last Will and Testament), pp. 1-2.

On September 24, 2024, an estate creditor filed an application for the appointment of a temporary administrator. *See* Exhibit B (Estate of Kevan Mark Casey, No. 528971, Application for Appointment of Temporary Administrator). The creditor's application makes an allegation, on information and belief, that Defendant Casey is "faking his death." It also alleges the need

for a temporary administrator because of "significant risk of damage or loss of estate assets." On the same date, the creditor filed notice of an unsecured claim in the approximate amount of $27,000. The creditor also filed a written objection to the appointment of Tabitha Casey as independent executor. On November 27, 2024, Tabitha Casey filed a response to the creditor's objection, including, as an exhibit, a purported death certificate indicating that Kevan Casey died in Puerto Rico on September 1, 2024. *See* Exhibit C (Tabitha Casey's Response), ¶9 & n.2 (relying on death certificate) & Ex. A (purported death certificate). During the scheduling conference in this case before Magistrate Judge Peter Bray on December 6, 2024, Mr. Casey's counsel informed the Court that, while counsel expected Mr. Casey's widow to be appointed the estate's representative, counsel did not have authority to act until that appointment occurred.

On December 12, 2024, the Harris County Probate Court issued an order appointing a temporary administrator pending contest. *See* Exhibit D (Estate of Kevan Mark Casey, No. 528971, Order Appointing Temporary Administrator Pending Contest). The Court found that Defendant Casey is "presumed to have died on September 1, 2024." The Court further found that "[t]here is a contest about who will serve as the personal representative of the estate on file" and that the estate requires the immediate appointment of a neutral, third-party personal representative. *Id.*, p. 1. The Court then ordered the appointment of a Texas attorney to serve as Temporary Administrator Pending Contest. *Id.*, p. 2.

At a subsequent Probate Court hearing on January 14, 2025, the estate creditor withdrew his objection to Tabitha Casey's application to be appointed as executor. *See* Exhibit E (Excerpt of Hearing Transcript dated Jan. 14, 2025). Two weeks later, on January 29, 2025, the Probate Court held a hearing on Tabitha Casey's application for probate, including her request to be appointed independent executor, and appointed her as the executor or Mr. Casey's estate. *See*

Exhibit F (Harris County Probate Court No. 3 – Excerpt of Reporter's Record of Jan. 29, 2025), p. 10.

## II. ARGUMENT

### A. The SEC's Disgorgement Claim Survives Casey's Death

The Federal Rules of Civil Procedure vest courts with authority to "order substitution of the proper party" if a defendant dies after a case is filed "and the claim is not extinguished." FRCP 25(a)(1). Courts determine the survivability of securities law claims by applying a common law rule derived from tort principles, which provide that statutory claims that are primarily "penal" in nature do not survive the death of a wrongdoer, while statutory provisions with a "remedial" purpose survive. *U.S. v. Gill*, 546 F. Supp.3d 538, 542 (S.D. Tex. 2021); *SEC v. Wyly*, 860 F. Supp.2d 275, 276 (S.D.N.Y. 2012). The Fifth Circuit and other federal courts have liberally interpreted federal civil actions for monetary remedies – including actions brought by or in the name of the government – as remedial. *See, e.g., Lee v. Commissioner*, 227 F.2d 181, 183 (5th Cir. 1955) (agreeing with IRS that "fraud penalties . . . are but civil administrative sanctions of a remedial character in aid of the assessment and collection of taxes, and . . . are not . . . penal sanctions which die with the offender"); *U.S. v. Land, Winston County*, 221 F.3d 1194, 1198 (11th Cir. 2000) (holding civil forfeiture served remedial, not penal, purpose because "[f]orfeitures 'are designed primarily to confiscate property used in violation of the law, and to require disgorgement of the fruits of the illegal conduct.'") (*quoting U.S. v. Ursery*, 518 U.S. 267, 284 *1996)); *SEC v. Brooks*, No. 07-61526-CIV, 2017 WL 3315137, at *6 (S.D. Fl. Aug. 3, 2017) (finding SEC disgorgement is remedial because it "sought primarily to recover the ill-gotten gains of a wrongdoer.").

Here, the SEC's claims against Mr. Casey survive his death because the Commission

seeks remedial relief in the form of disgorgement. *See* ECF No. 1, Complaint, p. 49 (requesting order of disgorgement). The Fifth Circuit precedent on this issue is clear: "Disgorgement is remedial and not punitive." *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978). It is a remedy focused on compelling the defendant "to give up . . . the amount by which he was unjustly enriched." *Id.* Unlike restitution, disgorgement is limited to depriving the wrongdoer of ill-gotten gains. *Id.*; *see also SEC v. Hallam*, 42 F.4th 316, 341 (5th Cir. 2022) (recognizing SEC is entitled to disgorgement of unjust enrichment attributable to securities law violation, including interest on that amount). Disgorgement is remedial rather than punitive precisely because it "extends only to the amount with interest by which the defendant profited from his wrongdoing." *Blatt*, 538 F.2d at 1335; *see also Hallam*, 42 F.4th at 329, 341 (recognizing remedial purpose means excluding any income earned on ill-gotten profits). Based on this remedial purpose, federal courts have consistently found that disgorgement claims survive the defendant's death in Commission actions. *See, e.g., Wyly*, 860 F. Supp. at 283 (finding that SEC claims for disgorgement survive death of alleged wrongdoer); *SEC v. TKO Farms, Inc.*, Case No. SACV 22-00941-CJC, 2022 WL 17328461, at *4 (C.D. Cal. Oct. 11, 2022) (disgorgement "constitutes equitable … relief that serves remedial goals, such as preventing unjust enrichment"); *Brooks*, 2017 WL 3315137, at *6-8 (finding that disgorgement is remedial in nature for survivability purposes).

In a pre-motion letter, Casey contends that the SEC's disgorgement claim must meet a three-factor test for survivability. ECF No. 58, p.3. Casey's argument is unavailing for two reasons. *First*, the precedent Casey relies upon in support of his contention that a three-factor test applies—*James v. Home Constr. Co. of Mobile, Inc.*, 621 F.2d 727 (5th Cir. 1980)—applies the three-factor test in the context of the Truth-in-Lending Act, a statute where "very few courts

have considered the question of survivability." *Id.* at 729. Here, by contrast, the Fifth Circuit has expressly addressed whether the SEC seeking disgorgement is remedial. There is no need to apply the three-factor test to an issue that has already been decided by the Fifth Circuit. *Blatt*, 583 F.2d 1at 1335; *accord Lee*, 227 F.2d at 183 (finding tax "fraud penalties" are remedial without applying three-factor test). *Second*, even if the Court looked beyond the Fifth Circuit's unequivocal statement in *Blatt*, Casey fails to recognize that these factors and similar tests "have liberally interpreted federal causes of action as remedial" for survivability purposes. *Brooks*, 2017 WL 3315137, at *6; *see also Gill*, 546 F. Supp.3d at 542. Applying this liberal standard for survivability, courts have consistently found civil forfeiture actions that seize property used in illegal activity as remedial for survivability purposes. *See, e.g.*, *Land, Winston County*, 221 F.3d at 1198; *U.S. v. One Hundred Twenty Thousand Seven Hundred Fifty Dollars*, 102 F.3d 342, 344 (8th Cir. 1996); *U.S. v. $84,740.00 Currency*, 981 F.2d 1110, 1113-14 (9th Cir. 1992). These courts recognize that civil forfeiture statutes serve a deterrent purpose in confiscating property used in illegal activity and disgorging the profits of criminal conduct. *Land, Winston County*, 221 F.3d at 1198; *see $84,740.00 Currency*, 981 F.2d at 1113 (noting remedial purpose in "impeding the success of criminal enterprise by eliminating its resources and instrumentalities, diminishing the efficiency and profitability of the business by increasing the costs and risks associated with it . . . "). An SEC claim for disgorgement, which similarly seeks to recover the ill-gotten gains of a wrong-doer to eliminate unjust enrichment, is likewise a civil remedy with a remedial purpose and effect. *See Brooks*, 2017 WL 3315137, at *6 (finding disgorgement serves remedial purpose like civil forfeiture).

### B. Casey's Surviving Spouse Is a Proper Party for Substitution

When a party dies, Rule 25 empowers courts to substitute a "proper party." The rule does not further define "proper party." Courts have interpreted the rule to include an executor or other

7

appointed legal representative of a deceased party for defendant in a federal civil action. *See Mallonee v. Fahey*, 200 F.2d 918, 919 (9th Cir. 1952) (noting that "Rule 25(a) is derived in part from former 28 U.S.C. Section 778 … which provided for substitution of the executor or administrator of a party who died during the pendency of an action"). Courts have also interpreted Rule 25's "proper party" to include successors or distributees, such as a surviving spouse. *See, e.g.*, *Janvey v. Adams & Reese, LLP*, No. 3:12-cv-0495-N, 2014 WL 12834493, at *2 (N.D. Tex. Oct. 3, 2014); *In re Baycol Prods. Lit.*, 616 F.3d 778, 784-85 (8th Cir. 2010); *McSurley v. McClennan*, 753 F.2d 88, 97-98 (D.C. Cir. 1985). The critical factor to determine the "proper party" is to assess whether the substituted parties will adequately represent the estate. *Janvey*, 2014 WL 12834493, at *2; *see also In re Baycol Prods. Lit.*, 616 F.3d at 788.

Tabitha Casey is a proper substitute. *First*, she is now the duly appointed executor of Mr. Casey's estate. *See* Exhibit E ((Harris County Probate Court No. 3 – Excerpt of Reporter's Record of Jan. 29, 2025), p.10 (appointing Ms. Casey as executor). *Second*, Tabitha Casey has a separate financial interest as the trustee of the testamentary trust designated to receive the estate's residuary trust. As a primary beneficiary of the estate, she qualifies as a "successor" under Rule 25(a)(1). *See McSurley*, 753 F.2d at 97-98 (concluding surviving spouses were "proper" parties under Rule 25(a)(1) where they were primary estate beneficiaries and named as executors of wills that were never probated).

C.  **The SEC's Motion is Timely**

DLA Piper LLP ("DLA"), which represented the deceased Mr. Casey before his death but does not represent his estate, has alleged that the SEC has not met a 90-day period under Rule 25 to move for substitution. This assertion is wrong.

The 90-day period set forth in Rule 25 is not triggered unless a party or the estate of the

8

deceased executes a specific, written record event that requires formal service. To invoke Rule 25(a)'s limitation period, a party or representative of the decedent's estate must (i) make a suggestion of death "upon the record" and (ii) deliver formal service of a "statement of the fact of death" on all parties, as required by Rule 5, and on the decedent's estate, a non-party, as required by Rule 4. Fed. R. Civ. P. 25 25(a)(1), (3) and Advisory Cmte. Note – 1963 Amendment ("The amended rule establishes a time limit for the motion to substitute based not upon the time of death, but rather upon the time information of death as provided by the means of a suggestion of death upon the record, i.e., service of a statement of the fact of death."); *see Gilmore v. Lockard*, 936 F.3d 857, 865 (9th Cir. 2019) (reviewing "'two affirmative steps in order to trigger the running of the 90-day period'") (*quoting Barlow v. Ground*, 39 F.3d 231, 233 (9th Cir. 1994)); *Grandbouche v. Lovell*, 913 F.2d 835, 836 (10th Cir. 1990) (holding running of 90-day limitation period "is not triggered unless a formal suggestion of death is made on the record" and served in accordance with Rule 25(a)); *Tolliver v. Leach*, 126 F.R.D. 529, 530 (W.D. Mich. 1989) (noting the 90-day period commences only when a formal, written "statement of the fact of death" has been filed and properly served). The rule requires this record notice and service to give parties clarity on when their rights to substitute may be limited by time. The period is not triggered by oral representations of death, the mere mention of death in court hearings or pleadings, or any party's informal awareness of a death. *Grandbouche*, 913 F.2d at 836 ("Mere reference to a party's death in court proceedings or pleadings is insufficient to trigger the limitations period for filing a motion for substitution."); *Daskalea v. Washington Humane Soc.*, 275 F.R.D. 346, 369-70 (D.D.C. 2011) ("oral representations in open court were not sufficient to trigger Rule 25(a)(1)'s ninety-day deadline to file a motion for substitution"); *Tolliver*, 126 F.R.D. at 530 ("Actual knowledge of [decedent's] death . . . is immaterial."). In

this case, no such formal, written "statement of death" has been filed or served. Accordingly, the SEC's motion is timely and should be granted.

## CONCLUSION

For the reasons stated herein, the SEC respectfully requests an order substituting Tabitha Casey, in her capacities as executor of Mr. Casey's estate and trustee of the Casey Living Trust, for Defendant Kevan Casey in this case pursuant to Federal Rule of Civil Procedure 25(a)(1).

Respectfully submitted,

On behalf of the Commission,

//s//Richard M. Harper
Richard M. Harper II
Attorney-in-Charge
MA Bar No. 634782, *Pro Hac Vice Motion Pending*
Jeffrey T. Cook
Alexandra B. Lavin
Jonathan T. Menitove
U.S. Securities and Exchange Commission
Boston Regional Office
33 Arch Street, 24th Floor
Boston, MA 02110
(617) 573-8979 (Harper)
(617) 573-4590 (Facsimile)
HarperR@sec.gov

# CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

Prior to the filing of the SEC's motion to substitute, counsel for the SEC caused a Notice of Motion and Hearing to be served on Tabitha Casey by process server on February 18, 2025. A copy of this notice is attached as Exhibit 1 to the motion's ECF-filed certificate of service. The notice enclosed a copy of the motion to substitute, including this accompanying memorandum of law and a proposed order, as well as a copy of the complaint. A copy of the process server's return of service is attached as Exhibit 2 to the Motion's ECF-filed certificate of service.

//s//Richard M. Harper II
Richard M. Harper II