# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| Securities and Exchange Commission, | |
| *Plaintiff,* | |
| v. | Civil Action No. 4:24-cv-02971 |
| Kevan Casey, Jonathan Friedlander, Adrian James, and Robert Wheat, | |
| *Defendants,* | |
| Vertical Holdings, LLC, Dover Hill, LLC, GSK Strategies, LLC, Carmel Ventures, LLC, ALS Investments, LLC, Highbridge Consultants, LLC, Adrian James as the Trustee of the ASJ Living Trust, Esports Group, Inc., Oak Grove Asset Management, Inc., and YSW Holdings, Inc., | |
| *Relief Defendants.* | |

# DEFENDANT ROBERT WHEAT AND RELIEF DEFENDANTS OAK GROVE ASSET MANAGEMENT, INC. AND YSW HOLDINGS, INC.'S <u>MOTION TO DISMISS COMPLAINT</u>

I.  PRELIMINARY STATEMENT ................................................................. 1

II.  FACTUAL BACKGROUND ................................................................. 4

III. STANDARD OF REVIEW .................................................................. 9

IV. ARGUMENT ......................................................................................... 10

    A.  The SEC Fails to Plead a Violation of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) Thereunder........... 10

        1.  The SEC's Scheme Liability Claims Fail Because the SEC Does Not Allege Any Independent Fraudulent Conduct Beyond Alleged Omissions................. 11

        2.  The Complaint Fails to Plead a Duty to Disclose. ............................................ 15

        3.  As to Section 17(a)(2), the SEC Fails to Plead Facts That Could Establish That Wheat Obtained Money by Means of a Material Misstatement or Omission. .15

        4.  The SEC Fails to Allege Scienter Under Section 10(b) and Section 17(a)(1). 18

        5.  The SEC Fails to Allege That Wheat Acted Negligently in Order to Establish a Violation of Section 17(a)(2) or (3).. ............................................................ 21

    B.  The SEC Fails to Plead a Control Liability Claim Under Section 20(b) of the Exchange Act.................................................................................................... 22

C. The Complaint Fails to State an Unjust Enrichment Claim Against YSW and Oak Grove. .................................................................................................................... 24

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

Page

## Cases

*Aaron v. Sec. & Exch. Comm'n*, 446 U.S. 680 (1980) ......................................... 11, 18, 21

*Allatar v. Casey, et al.,* Cause No. 2012-54501 (113th Dist. Ct., Harris Cty., Tex. Apr. 7, 2017) ........................................................................................................... 5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 4, 9

*Broad v. Rockwell Int'l Corp.*, 642 F.2d 929 (5th Cir. 1981) ........................................... 18

*Carlton v. Cannon*, 184 F. Supp. 3d 428 (S.D. Tex. 2016) ............................................. 21

*Cohen v. Citibank, N.A.*, 954 F. Supp. 621 (S.D.N.Y. 1996) ........................................... 23

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000) ............................ 4

*Dennis v. General Imaging, Inc.*, 918 F.2d 496 (5th Cir. 1990) ...................................... 23

*Digital Drilling Data Sys., LLC v. Petrolink Svcs, Inc.*, 965 F.3d 365 (5th Cir. 2020) .... 24

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976) .................................................. 18, 23

*Howard v. Sec. & Exch. Comm'n*, 376 F.3d 1136 (D.C. Cir. 2004) ................................. 20

*In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549 (S.D.N.Y. 2004) ................. 21

*In re Enron Corp. Sec., Derivative & ERISA Litig.,* 586 F. Supp. 2d 732 (S.D. Tex. 2008) ......................................................................................................................... 12

*In re RenovaCare Sec. Litig.*, 2:21-cv-13766, 2024 WL 2815034 (D.N.J. June 3, 2024) ..................................................................................................................... 23

*In re Tyson Foods, Inc. Sec. Litig.*, 275 F. Supp. 3d 970 (W.D. Ark. 2017) ................... 21

*Izadjoo v. Helix Energy Sols. Grp., Inc.*, 237 F. Supp. 3d 492 (S.D. Tex. 2017) ........... 4, 5

*Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011)....2, 10, 11, 14, 22

*Janvey v. Adams*, 588 F.3d 831, 835 (5th Cir. 2009) ........................................................25

*Knutson v. Harris,* 3:17-CV-2618-BK, 2018 WL 4281557 (N.D. Tex. Sept. 6, 2018)....22

*LuxeYard, Inc. v. Kay Holdings, Inc.*, No. 3:15-CV-0357-LRH-WGC,
2016 WL 4941997 (D. Nev. Sept. 15, 2016).................................................................5

*Meyers v. Textron, Inc.*, 540 Fed. App'x. 408 (5th Cir. 2013).............................................4

*Moss v. Morgan Stanley*, 553 F. Supp. 1347 (S.D.N.Y. 1983) .........................................23

*Myzel v. Fields*, 386 F.2d 718 (8th Cir. 1967)...................................................................23

*Owens v. Jastrow*, 789 F.3d 529 (5th Cir. 2015).................................................................5

*Rutstein v. Viva 5 Grp., LLC,* No. 8:24-CV-02417-WFJ-AAS, 2025 WL 500559 (M.D.
Fla. Feb. 14, 2025) .......................................................................................................14

*Sec. & Exch. Comm'n  v. Berry*, 580 F. Supp. 2d 911 (N.D. Cal. May 2008) .................21

*Sec. & Exch. Comm'n v. Bowen*, 3:22-cv-1415-S, 2023 WL 6166780 (N.D. Tex.
Sept 21, 2023) .................................................................................................17, 18, 19

*Sec. & Exch. Comm'n v. Coffey,* 493 F.2d 1304 (6th Cir. 1974).......................................22

*Sec. & Exch. Comm'n v. Farmer*, 4:14-cv-2345, 2015 WL 5838867 (S.D. Tex. Oct. 7,
2015) ............................................................................................................................12

*Sec. & Exch. Comm'n v. Hughes Capital Corp.*, 124 F.3d 449 (3rd Cir. 1997) ..............21

*Sec. & Exch. Comm'n v. Kelly*, 817 F. Supp. 2d 340 (S.D.N.Y. 2011)............................14

*Sec. & Exch. Comm'n v. Killion,* Civil Action No. H-16-621, 2017 WL 7052310
(S.D. Tex. Mar. 14, 2017).................................................................................10, 11, 13

*Sec. & Exch. Comm'n v. Lemelson*, 355 F. Supp. 3d 107 (D. Mass. 2019) .....................24

*Sec. & Exch. Comm'n v. Mahabub*, 343 F. Supp. 3d 1022 (D. Col. 2018) ...................... 18

*Sec. & Exch. Comm'n v. Mapp*, 240 F. Supp. 3d 569 (E.D. Tex. 2017) .................... 12, 15

*Sec. & Exch. Comm'n v. Mapp,* No. 4:16-CV-246, 2016 WL 5870576 (E.D. Tex. Oct. 7, 2016) ................................................................................................ 10, 16

*Sec. & Exch. Comm'n v. Narayan*, No. 3:16-CV-1417-M, 2017 WL 4652063 (N.D. Tex. Aug. 28, 2017) ........................................................... 5, 12, 13, 14

*Sec. & Exch. Comm'n v. Rio Tinto plc*, 41 F.4th 47 (2d Cir. 2022) .................................. 14

*Sec. & Exch. Comm'n v. Syron*, 934 F. Supp. 2d 609 (S.D.N.Y. 2013) ......................... 18

*Sec. & Exch. Comm'n v. Zavodchikov*, 16-cv-845, 2019 WL 3451501 (D.N.J. July 31, 2019) ......................................................................................... 23

*Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F. 3d 673 (5th Cir. 2007) ........................ 9

*Takata v. Riot Blockchain, Inc.*, No. CV182293GCRLS, 2023 WL 7133219 (D.N.J. Aug. 25, 2023) ........................................................................................... 14

*Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061 (5th Cir. 1994) ...................... 10, 16, 19

**Statutes**

15 U.S.C. § 77q(a) ........................................................................................ 10

15 U.S.C. § 77q(a)(2) .................................................................................... 15

15 U.S.C. § 78j(b) ......................................................................................... 10

15 U.S.C. § 78t(b) ......................................................................................... 22

17 C.F.R. § 229.507 ...................................................................................... 16

17 C.F.R. §§ 240.10b-5(a) ............................................................................ 10

17 C.F.R. §§ 240.10b-5(c) ............................................................................ 10

**Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................... 1, 9

Fed. R. Civ. P. 10b-5 ............................................... 2, 10, 11, 12, 14, 15, 18, 22

**Regulations**

Section 10(b) of Exchange Act .................................. 2, 5, 9, 10, 12, 15, 18, 22

Section 17(a) of Exchange Act .................................. 2, 9, 10, 11, 12, 15, 18, 21

Section 20(b) of Exchange Act .................................................... 3, 9, 22, 23, 24

**Other Authorities**

*Manual of Publicly Available Telephone Interpretations*, SEC (5/11/2018) .................... 16

Defendant Robert Wheat and Relief Defendants Oak Grove Asset Management, Inc. ("Oak Grove") and YSW Holdings, Inc. ("YSW") respectfully move this Court to dismiss Plaintiff Securities and Exchange Commission's ("SEC") Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.    <u>PRELIMINARY STATEMENT</u>

The Complaint alleges violations of various securities laws by Wheat and three other defendants, Kevin Casey, Adrian James, and Jonathan Friedlander. The allegations in the Complaint are almost wholly focused on the conduct of now-deceased Casey, alleging that Casey "either alone or with combinations" of the other defendants acquired shares in five companies, took those companies public, paid stock promotions, and sold shares without disclosing ownership stakes or material relationships with those companies. Stripped of the SEC's improper group and conclusory allegations, the remaining handful of allegations regarding Wheat concern his investment in only one of those five companies, EBET, Inc., in which Wheat invested through YSW and Oak Grove.

The SEC's theory is that Casey, along with Friedlander and Wheat, schemed to evade disclosure requirements in order to conceal their names because each had been named defendants in a litigation years earlier about another issuer, LuxeYard Inc. (the "LuxeYard Litigations"). As to Wheat, the SEC alleges that EBET's SEC Form S-1 and an EBET selling shareholder questionnaire, in which Mr. Wheat's lawyer in the LuxeYard Litigations (who was also President of YSW) executed the document on YSW's behalf, omitted that Wheat had dispositive and voting control over YSW's EBET shares. Wheat did not make, nor is he even alleged to have made, these purported misstatements regarding

YSW. The Supreme Court's ruling in *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011) makes clear that Wheat cannot be held liable as a "maker" of a material misstatement or omission because he had no role, involvement, or authority over EBET's S-1 disclosures and nor was he a "maker" of any statements in YSW's selling shareholding questionnaire. Apparently recognizing the strictures of *Janus*, the SEC seeks to improperly back-door a misrepresentation/omission claim by asserting a scheme liability claim as a primary securities law violation against Wheat. But the SEC's scheme liability claims fail as a matter of law because the SEC has not alleged any independent wrongful conduct beyond the alleged omission.

The SEC's primary securities law violations under Section 10(b) of the Exchange Act, Rule 10b-5(a) and (c), and Section 17(a) of the Securities Act fail for several additional reasons—

First, the Complaint fails to plead any fact that could establish that Wheat had a duty to disclose his identity.

Second, the SEC fails to plead an actual material misstatement or material omission. The SEC offers only conclusory allegations to assert that Wheat had voting and dispositive control of YSW's EBET shares and fails to plead facts that could establish that Wheat's identity was material to any investor.

Third, the SEC does not plead scienter or even negligence. The SEC's theory that Wheat sought to conceal his identity because of the LuxeYard Litigations is undercut by the fact that the courts in the underlying litigations found in Wheat's favor—finding that he, and the entities he invested through, committed no securities law violations and that he

was not aware of any securities law violations. Further undermining the SEC's manufactured motive theory is that Wheat disclosed his identity in connection with Oak Grove's EBET shares. Moreover, courts have consistently held that purchasing additional shares during the relevant time period undermines any allegation of scienter. Here, the Complaint acknowledges that Wheat purchased additional EBET shares during the relevant period, thus negating any inference of scienter. The Complaint also fails to plead negligence as there is no factual allegation that Wheat was even aware of the YSW selling shareholder questionnaire—executed by YSW's President—or that Wheat ever saw EBET's S-1 disclosure regarding YSW.

The SEC's remaining secondary claims under Section 20(b) of the Exchange Act and unjust enrichment against YSW and Oak Grove fail because the SEC does not plead a required underlying primary violation of the securities laws. The SEC's Section 20(b) claim also fails because it is on purely conclusory allegations that Wheat "arranged" for and controlled his former attorney in the LuxeYard Litigations—who was President of YSW—to execute YSW's selling shareholder questionnaire. The Complaint, as mentioned above, fails to allege any facts that Wheat was even aware of YSW's selling shareholder questionnaire let alone any facts that could establish that Wheat had control over YSW's President or that Wheat was a culpable participant.

## II.   **FACTUAL BACKGROUND**[1]

The Complaint broadly alleges a scheme orchestrated by Casey through five different issuers and that Casey "either alone or with combinations of his co-schemers" acquired a large quantity of shares "at steep discounts," took the companies public, directed promotional campaigns and then sold stock for substantial profit.  Compl. ¶ 1.  Wheat is alleged to be involved in only one of those issuers—Esports Technologies Inc. n/k/a/ EBET, Inc. ("EBET").  *Id.* ¶ 14.  Wheat is not alleged to have arranged or even been involved in any promotional campaigns, is not alleged to have held a substantial number of shares in EBET, and is not alleged to have controlled EBET.  Nor is Wheat alleged to have agreed, as is alleged against the other defendants, "to acquire, hold, and dispose of the stock of these companies with the common objective of selling shares in the open market at inflated prices . . . ."  *Id.* ¶ 2.  Instead, the SEC alleges that Wheat, along with Casey and Friedlander "concealed themselves" at the time of EBET's IPO because they all

---

[1] The allegations are taken from the Complaint and only well-pled allegations of fact are accepted as true for purposes of this Motion to Dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  In addition, the Court can consider certain documents referenced herein because they are incorporated into the Complaint by reference or are integral to a claim, are items subject to judicial notice, or are matters of public record.  *See Meyers v. Textron, Inc.*, 540 Fed. App'x. 408, 409 (5th Cir. 2013) (affirming district court's review of public records and prior court filings in ruling on motion to dismiss); *see also Izadjoo v. Helix Energy Sols. Grp., Inc.*, 237 F. Supp. 3d 492, 509 (S.D. Tex. 2017)  ("In securities cases, courts may take judicial notice of the contents of public disclosure documents that the law requires be filed with government agencies, such as the SEC, and that are actually filed with the agency."); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) ("not[ing] approvingly . . . that various other circuits have specifically allowed that documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." (internal citation and quotation omitted)).

had been named defendants in the LuxeYard Litigations.  *Id.* ¶¶ 2, 4.  But Wheat did not have a motive to hide the LuxeYard Litigations because the underlying courts found in his (and his entities') favor.  Specifically, a Texas state court made findings of fact that Wheat did not commit any securities law violation and was unaware of any securities law violations.[2]  And in a federal court action, a district court in Nevada dismissed the complaint against Wheat's entity with prejudice noting that the plaintiff could not state a claim against Wheat's entity and denied plaintiff's motion to amend their Complaint to add Wheat as an individual defendant.[3]

The SEC claims the "scheme" continued through at least December 2022.  *Id.* ¶ 4.  In improper group pleading,[4] the SEC alleges that Defendants had roles in these companies that required them to be named as promoters, selling shareholders and/or beneficial owners of more than 5% of these companies' shares.  *Id.* ¶ 3.  However, the Complaint does not assert that Wheat acted as a promoter or was the beneficial owner of more than 5% of EBET's shares.

---

[2] *See Allatar v. Casey, et al.,* Cause No. 2012-54501 (113th Dist. Ct., Harris Cty., Tex. Apr. 7, 2017) attached as **Exhibit 1** to the Declaration of George Kostolampros ("Kostolampros Decl.").

[3] *See LuxeYard, Inc. v. Kay Holdings, Inc.*, No. 3:15-CV-0357-LRH-WGC, 2016 WL 4941997, at *10 (D. Nev. Sept. 15, 2016) (dismissing complaint on a motion to dismiss without leave to amend).

[4] The Fifth Circuit has long rejected the group pleading doctrine.  *Owens v. Jastrow*, 789 F.3d 529, 537 (5th Cir. 2015); *see also Izadjoo*, 237 F. Supp. 3d at 509 ("A complaint is insufficient if it alleges that 'defendants' as a group knowingly or recklessly made material misrepresentations."); *Sec. & Exch. Comm'n v. Narayan*, No. 3:16-CV-1417-M, 2017 WL 4652063, at *9 (N.D. Tex. Aug. 28, 2017) (recognizing that "'section 10(b) and Rule 10b–5 required plaintiffs to identify the roles of the individual defendants, and describe their involvement'").

As to the specific allegations regarding EBET, the SEC alleges that in May 2020, Casey and Friedlander jointly financed EBET—at the time a privately held company—and then both engaged an underwriter to pursue a reverse merger. *Id.* ¶¶ 89-90. Wheat is not alleged to have been involved with any of those activities. In July 2020, the SEC alleges that Casey, Friedlander, and Wheat provided unsecured loans, which Wheat understood were to be used to prepare the company's financial statements. *Id.* ¶¶ 92, 93. In a conclusory allegation, the SEC asserts that Casey, Friedlander, and Wheat devised how to acquire EBET shares in the name of nominee entities whom they controlled. *Id.* ¶ 94. The SEC alleges that Wheat "approved" the formation of YSW through a nominee officer who was "his personal attorney who represented him in the LuxeYard Litigation." *Id.* ¶¶ 14, 94. Further, the SEC alleges that in September 2020, Casey, Friedlander, and Wheat each negotiated separate domain purchase agreements in which they acquired EBET shares and had their nominees sign the agreements with their nominee entity as the contracting party. *Id.* ¶¶ 98-100. The YSW/EBET domain purchase agreement was executed by Chandler Weeks, YSW's President and Wheat's attorney in the LuxeYard Litigations. *See* YSW/EBET Domain Purchase Agreement attached as Kostolampros Decl. **Exhibit 2**. In or about December 2020, Wheat is alleged to have bought additional shares of EBET from a founder of EBET. *Id.* ¶ 106.

The SEC alleges, again in an improper group pleading, that Casey, Friedlander, and Wheat "continued to take steps toward forming and launching" EBET as a publicly traded company. *Id.* ¶ 102. The SEC goes on to list a handful of invitations Wheat was included on with titles of "Weekly Board Update," "Weekly Catchup," and "Board Member

Interview," but the SEC offers no allegation that Wheat had any actual role in taking EBET public, that he even attended any of the few meetings or calls he was invited to, or that he even responded to the emails acknowledging receipt. *Id.* ¶¶ 102-05. Notably, the SEC alleges that Casey and Friedlander (not Wheat) "controlled the structure and timing of [EBET's] IPO, which took place in April 2021"—seven months after the YSW/EBET domain purchase agreement. *Id.* ¶ 107. The Complaint similarly alleges that Casey and Friedlander—not Wheat—paid for EBET stock promotions. *Id.* ¶¶ 118-23.

In connection with EBET's registration statement, which was filed with the SEC on March 10, 2021, the SEC alleges that EBET received from YSW a selling shareholder questionnaire, which named only Weeks as President of YSW. *Id.* ¶ 109; EBET's S-1 Disclosure, attached as Kostolampros Decl. **Exhibit 3**. The SEC claims that the YSW selling shareholder questionnaire was false and misleading in stating that Weeks (YSW's President) was the only control person with dispositive and voting control over the shares and omitted that Wheat had dispositive control. *Id.* ¶ 112. But the Complaint never alleges—nor could it allege—that Wheat directed Weeks (YSW's President) to execute the YSW selling shareholder questionnaire, that Wheat reviewed the questionnaire, or that Wheat was even aware of it. Additionally, the Complaint offers only conclusory allegations that Wheat had dispositive control of YSW's EBET shares. Compl. ¶ 14 (alleging Wheat "had control over the disposition of securities [YSW] held"), ¶ 112 (alleging that "Wheat had dispositive control" over YSW's EBET shares). The SEC alleges that EBET's SEC Form S-1 registration statement, which included the domain

purchase agreements as attachments, was false and misleading in that it did not name Wheat as having dispositive control over YSW's EBET shares.  Compl. ¶ 113.

The SEC asserts that Casey and Friedlander (not Wheat) paid for EBET stock promotions into which they sold EBET stock.  The SEC further alleges that Casey, Friedlander, and Wheat purchased additional shares in EBET's IPO.  *Id.* ¶ 117.  The SEC does not identify how many shares Wheat purchased or how that purchase was made (*i.e.*, which entity).

The SEC generally asserts that Oak Grove and YSW received and sold EBET shares during the alleged scheme that continued through December 2022.  *Id.* ¶¶ 4, 10.  Nowhere in the Complaint does the SEC allege when YSW or Oak Grove sold any EBET shares.  Instead, the Complaint asserts that Wheat sold EBET shares on the second day of EBET's public trading.  *Id.* ¶ 123.  The SEC alleges that Oak Grove was formed in 2013 (7 years before any alleged involvement of Wheat with EBET), that Wheat is Oak Grove's sole officer, and that Oak Grove was an EBET shareholder from at least April 2021 (which is at EBET's IPO).  *Id.* ¶ 14.  The SEC offers no other allegations regarding Oak Grove and offers no allegations that there were any misstatements or omissions relating to Oak Grove.

Undermining the SEC's motive and scheme theory is the fact that Wheat disclosed his identity in an Oak Grove selling shareholder questionnaire executed in January 2022 and EBET disclosed to investors Wheat's identity in an S-1 Filing soon after.  Specifically, as part of an offering of EBET preferred shares, Wheat executed a selling shareholder questionnaire on behalf of Oak Grove in which Wheat affirmed that he had voting control

of Oak Grove's EBET shares.[5]  EBET subsequently disclosed selling shareholders in its Form S-1 filed with the SEC on January 19, 2022.[6]  That S-1 filing disclosed that "Robert Wheat has voting and dispositive power over the shares of Oak Grove Asset Management."[7]  The S-1 filing also disclosed Casey as having voting and dispositive control over the shares of Relief Defendant Carmel Ventures.[8]

The SEC asserts three claims against Wheat: violations of Section 17(a) of the Securities Act (First Claim), Section 10(b) of the Exchange Act (Third Claim) and a secondary claim under Section 20(b) of the Exchange Act (Seventh Claim).  The SEC also asserts an unjust enrichment claim against Oak Grove and YSW (Eighth Claim).

## III.  <u>STANDARD OF REVIEW</u>

On a Fed. R. Civ. P. 12(b)(6) motion, the Court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff.  *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F. 3d 673, 675 (5th Cir. 2007).  To be well-pled, a complaint must contain facts sufficient to state a claim for relief that is plausible on its face.  *Iqbal*, 556 U.S. at 678.  Conclusory statements made in a complaint, however, are "not entitled to the assumption of truth." *Id.* at 664.

Federal securities fraud claims are subject to the heightened pleading requirements of Rule 9(b), which requires the complaint to state with particularity the circumstances

---

[5] Oak Grove Selling Shareholder Questionnaire, executed on January 10, 2022, attached to the Kostolampros Decl. **Exhibit 4**.
[6] *See* EBET S-1, filed with SEC on January 19, 2022, attached to the Kostolampros Decl. **Exhibit 5**.
[7] *Id.* at 12.
[8] *Id.*

constituting fraud. *Sec. & Exch. Comm'n v. Killion,* Civil Action No. H-16-621, 2017 WL 7052310, at \*5 (S.D. Tex. Mar. 14, 2017); *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. This requirement applies to federal securities law claims.") (internal quotation marks omitted). To state a fraud claim with particularity, the plaintiff must state facts showing the who, what, where, when, and how of the fraud. *Sec. & Exch. Comm'n v. Mapp,* No. 4:16-CV-246, 2016 WL 5870576, at \*3 (E.D. Tex. Oct. 7, 2016).

## IV. **ARGUMENT**

### A. The SEC Fails to Plead a Violation of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) Thereunder.

Section 10(b) of the Exchange Act, Rule 10b-5(a) and (c), and Section 17(a) of the Securities Act prohibit fraudulent statements and fraudulent schemes in connection with the offer and sale of securities. *See* 15 U.S.C. § 78j(b); 17 C.F.R. §§ 240.10b-5(a), 10b-5(c); *see also* 15 U.S.C. § 77q(a). As mentioned above, the Supreme Court's decision in *Janus* precludes liability under Rule 10b-5(b) for individuals who are not the "makers" of the alleged misstatements. Here, the SEC is not claiming (nor could it) that Wheat was the "maker" of any material misstatement or omission. Wheat was neither an officer, director, or employee of EBET, nor was he involved in the drafting of EBET's S-1 disclosure. The SEC also fails to allege that Wheat ever saw, or had any role in drafting, EBET's S-1 filing. Apparently, in an effort to avoid the strictures of the Supreme Court's ruling in *Janus*, the SEC asserts "scheme liability" claims against Wheat under Rule 10b-5(a) and (c), and

pursuant to Section 17(a)(1) and (3) of the Securities Act. *See id.* The SEC also asserts a Section 17(a)(2) claim, which makes it a violation to obtain money by means of an untrue material statement or material omission. Compl. ¶ 137. Claims under Rule 10b-5(a) and (c) and Section 17(a)(1) require a showing of scienter and claims under Sections 17(a)(2) and (3) require a showing of negligence. *See Aaron v. Sec. & Exch. Comm'n*, 446 U.S. 680,701-02 (1980).

As set forth below, the SEC's primary securities law claims fail because the Complaint fails to allege facts that could establish a violation.

### 1. The SEC's Scheme Liability Claims Fail Because the SEC Does Not Allege Any Independent Fraudulent Conduct Beyond Alleged Omissions.

The SEC's scheme liability claim as to Wheat rests on alleged omissions that Wheat, along with Casey and Friedlander "schemed to evade [] disclosure requirements" ***by concealing their names*** because each had been named defendants in the LuxeYard Litigations. Compl. ¶¶ 3-4. Unlike its claims against Casey or Friedlander, the SEC does not assert a claim under Rule 10b-5(b) against Wheat for making a material misstatement or omission. The SEC, however, relies on the very same allegations it relies on for its misrepresentation/omission claims as to Casey and Friedlander to assert its scheme liability claim. *Id.* ¶¶ 140-41.

The SEC's scheme liability claim is a brazen attempt to back-door a misrepresentation/omission claim into a scheme liability claim and, as such, should be dismissed. *See e.g. Killion*, 2017 WL 7052310, at *9 (finding "no 'scheme' can be discerned for which liability attaches apart from the alleged misrepresentations and

misleading omissions"); *Sec. & Exch. Comm'n v. Mapp*, 240 F. Supp. 3d 569, 585 (E.D. Tex. 2017) ("The Commission may not use subsections (a) and (c) of Rule 10b-5 as a back door for liability."); *Sec. & Exch. Comm'n v. Farmer*, 4:14-cv-2345, 2015 WL 5838867, at *14 (S.D. Tex. Oct. 7, 2015) (holding that "'courts must scrutinize [a scheme liability claim] to ensure that misrepresentation or omission claims do not proceed under the scheme liability rubric.'") (citation omitted). Scheme liability under Rule 10b-5(a) and (c) and Section 17(a) prohibits "the employment of any device, scheme, or artifice to defraud; and the engaging in any act, practice, or course of business that operates or would operate as a fraud or deceit on any person." *Narayan*, 2017 WL 4652063, at *3. Courts in this Circuit have questioned whether the Fifth Circuit even recognizes scheme liability. *See Mapp*, 240 F.Supp.2d at 585 ("This 'scheme liability theory [is] recognized by a few courts . . . but not by the Fifth Circuit, itself, which, . . . limit[s] the reach of § 10(b) and Rule 10b–5 to a material misrepresentation or omission where there is a recognized duty to disclose.'") (*quoting In re Enron Corp. Sec., Derivative & ERISA Litig.,* 586 F. Supp. 2d 732, 793 (S.D. Tex. 2008)). Nevertheless, courts, including within this Circuit, have consistently recognized that scheme liability requires something more than allegations of misstatements or omissions. *Narayan*, 2017 WL 4652063 at *7 (holding that "a proper pleading of scheme liability requires that the complaint allege conduct beyond misrepresentations or omissions").

Here, the SEC's scheme liability claim as to Wheat is based on alleged omissions that Wheat, along with Casey and Friedlander, purportedly "schemed to evade [] disclosure requirements" to conceal their names because each had been named defendants in the

LuxeYard Litigations. Compl. ¶¶ 3-4. The SEC claims that each evaded these disclosures (i.e., disclosing their identities) by "structuring their stock acquisitions through pass-through nominee entities . . .." *Id.* ¶ 3. The Complaint also alleges that the selling shareholder questionnaires executed on behalf of Relief Defendants Vertical Holdings (Casey), Dover Hill (Casey), Esports Group (Friedlander), and YSW Holdings (Wheat) "omitted the material information that Casey, Friedlander and Wheat had dispositive control." *Id.* ¶¶ 108-12. The SEC goes on to assert that EBET's S-1 disclosures omitted this very same information. *Id.* ¶ 113.

The SEC's scheme liability claim as to Wheat rests on alleged omissions and, therefore, must be dismissed under this Circuit and other court decisions. In *Killion*, this Court dismissed scheme liability claims where the SEC did not allege "any independent wrongful conduct" other than alleged material misstatements and omissions. 2017 WL 7052310, at *8. There, the SEC alleged that defendants entered into certain contracts that were highly contingent and posed serious risks that were not disclosed. *Id.* at 9. The Court found that the "heart of the SEC's scheme to defraud allegations are that Defendants made untrue statements of material fact and material misleading omissions of facts in public statements and filings regarding the contracts . . .." *Id.* Similarly, in *Narayan*, the court dismissed scheme liability claims because the SEC failed to establish any independent wrongful conduct beyond the alleged misrepresentations. 2017 WL 4652063, at *10. There, the SEC's scheme allegations included payments of finder's fees to Narayan, "Ponzi-like" payments to investors, backdated documents, and disguised payments to Narayan as "sham loans." *Id.* at *7. The court there found the SEC's allegations

insufficient to state a scheme liability claim because each allegation did not rise to independently actionable conduct beyond alleged omissions and misrepresentations. *Id.* at *10. The *Narayan* court further explained —

> If the scheme is to keep something concealed from investors—namely, [defendant's] conflict of interest and receipt of investment funds—it is unclear how the SEC can claim a "fraudulent scheme" that is not equivalent of pleading fraud by omission . . .. Here, where the core misconduct is clearly [defendant's] misrepresentations . . . "it [is] improper to impose primary liability . . . by designating the alleged fraud a 'manipulative device' rather than a 'misstatement.'"

*Id.* (internal citations omitted). Courts within other Circuits similarly have found that scheme liability claims require more than alleged misstatements or omissions. *See Sec. & Exch. Comm'n v. Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir. 2022) (explaining that "an actionable scheme liability claim also requires something *beyond* misstatements and omissions, such as dissemination."); *Sec. & Exch. Comm'n v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011) (holding that "because the SEC's scheme liability claim is premised on a misrepresentation and neither defendant 'made' a misstatement as *Janus* requires, the SEC's claim under subsections (a) and (c) of Rule 10b-5 must be dismissed"*); Rutstein v. Viva 5 Grp., LLC,* No. 8:24-CV-02417-WFJ-AAS, 2025 WL 500559, at *5 (M.D. Fla. Feb. 14, 2025) ("Misleading statements and omissions only create scheme liability in conjunction with conduct beyond those misrepresentations or omissions."); *Takata v. Riot Blockchain, Inc.*, No. CV182293GCRLS, 2023 WL 7133219, at *11 (D.N.J. Aug. 25, 2023) (holding "courts have routinely rejected the [plaintiff's] attempt to bypass the

elements necessary to impose 'misstatement' liability under subsection (b) by labeling the alleged misconduct a 'scheme' rather than a 'misstatement.'").

### 2. The Complaint Fails to Plead a Duty to Disclose.

In *Mapp*, the court recognized that the Fifth Circuit "limit[s] the reach of §10(b) and Rule 10b-5 to a material misrepresentation or omission where there is a recognized duty to disclose." 240 F.Supp.2d at 585. The court went on to hold that a duty to disclose is also required under the scheme liability provisions of Section 17(a). *Id.* at 586. The court further found that the SEC failed to plead facts sufficient to show that the defendant had a fiduciary relationship with investors that could establish a duty to disclose that he received compensation from the issuer. *Id.* at 581-82. Similarly here, the SEC does not allege, nor are there any allegations in the Complaint that could establish, that Wheat had a duty to disclose his individual identity relating to YSW's EBET shares. Wheat is not alleged to have violated the reporting obligations under Sections 13(d) or 16(a) of the Exchange Act, which require beneficial owners of 5% and 10% of stock, respectively, to file certain reporting forms with the SEC. *See* Compl. ¶¶ 145-56. Thus, there is no allegation within the Complaint that Wheat had any disclosure obligations and, therefore, the SEC's scheme liability claim should be dismissed.

### 3. As to Section 17(a)(2), the SEC Fails to Plead Facts That Could Establish That Wheat Obtained Money by Means of a Material Misstatement or Omission.

Section 17(a)(2) of the Securities Act makes it unlawful to "to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact . . . ." 15 U.S.C. § 77q(a)(2). The SEC, however, fails to allege a material

misstatement or omission relating to Wheat. The securities laws *require the issuer* (*i.e.*, EBET) to disclose selling shareholders and to disclose any one with voting or investment control of that selling shareholder within the registration statement. *See* 17 C.F.R. § 229.507; *see also Manual of Publicly Available Telephone Interpretations*, SEC (5/11/2018) (requiring a company to identify "the person or persons who have voting or investment control over the company's securities that the entity owns.")*.* EBET did exactly that—EBET disclosed YSW as a selling shareholder and disclosed that Chandler Weeks (YSW's President) had voting and investment control over YSW's EBET shares. Compl. ¶ 109; EBET S-1, filed with SEC on March 10, 2021, attached as Kostolampros Decl. **Exhibit 3** at Resale-4 (disclosing Chandler Weeks as having voting and dispositive control of YSW's EBET shares).

In a purely conclusory allegation, the SEC claims that Wheat had dispositive control over YSW's EBET shares without any allegations of when Wheat had purported control, or how Wheat had the control. Compl. ¶ 14 (alleging that Wheat "had control over the disposition of securities [YSW] held"), ¶ 112 (alleging that Wheat "had dispositive control" over YSW's EBET shares); *see Mapp,* 2016 WL 5870576, at *3 (holding Rule 9(b) requires a plaintiff to state facts showing the who, what, where, when, and how of the fraud). Such conclusory allegations should be disregarded by the Court. *Tuchman*, 14 F.3d at 1067 ("conclusory allegations or unwarranted deductions of fact" not accepted as true). The SEC also offers the conclusory allegation that YSW "did not take any actions in disposing EBET securities that were not approved by Wheat." Compl. ¶ 14. This

allegation reads in the passive voice because there are simply no allegations that Wheat directed the sale of YSW's EBET shares or could direct the sale.

Moreover, the SEC fails to plead materiality. The SEC's theory is that Wheat did not disclose his identity because he was named as a defendant in the LuxeYard Litigations. Compl. ¶ 4. But the SEC does not offer any allegation as to why any EBET investor would find that information material, let alone any allegation demonstrating the import of Wheat's identity (who was not an officer, director or even employee of EBET and not alleged to have been a control person of EBET) and the fact that he was a defendant in the LuxeYard Litigations. In *Sec. & Exch. Comm'n v. Bowen*, 3:22-cv-1415-S, 2023 WL 6166780 (N.D. Tex. Sept 21, 2023), the SEC alleged that the underlying offering documents did not mention defendant Bowen's name nor disclose Bowen as the company's Chief Operating Officer in order to prevent investors from learning about Bowen's prior securities law violations. *Id.* at *2. Specifically, several years earlier the SEC sanctioned Bowen, issuing an order barring Bowen from selling securities without being registered as a broker dealer. *Id.* There, where the import of the information at issue was clear, the court still found that "the SEC has not plausibly alleged a material omission." *Id.* at *6.

Here, unlike in *Bowen,* there is no underlying sanction issued in an order by the SEC or even a finding of fact against Wheat or any entity associated with Wheat. Instead, the litigation the SEC claims Wheat attempted to hide—the LuxeYard Litigations—actually ***found in favor of Wheat*** and the entities he invested through. It is implausible that any EBET investor would find Wheat's identity material where the underlying courts found in his favor.

17

Further, the Complaint does not allege facts that could establish that Wheat obtained money "*by means of*" a material misstatement or omission. The SEC merely alleges that Wheat sold shares on the second day of EBET's public trading without identifying a causal link between the alleged omission regarding Wheat's identity as to YSW's EBET shares and Wheat's sales. Compl. ¶ 123; *see Sec. & Exch. Comm'n v. Mahabub*, 343 F. Supp. 3d 1022, 1043 (D. Col. 2018) (setting forth that in order to establish a 17(a)(2) violation, the SEC must plead "a causal link between the violator's deceptive statements and receipt of money or property"); *see also Sec. & Exch. Comm'n v. Syron*, 934 F. Supp. 2d 609, 637 (S.D.N.Y. 2013) (dismissing 17(a)(2) claim because SEC's allegations were a "tenuous connection" between the alleged misstatement and the defendant's receipt of money and requiring there be a "closer causal relationship" than what the SEC alleged).

### 4. The SEC Fails to Allege Scienter Under Section 10(b) and Section 17(a)(1).

To establish violations under Section 10(b) of Exchange Act and Rule 10b-5 thereunder as well as under Section 17(a)(1) of the Securities Act, the SEC must plead scienter. *Aaron*, 446 U.S. at 701. Scienter is the "mental state embracing intent to deceive, manipulate or defraud" and may be established by showing intentional or severely reckless conduct. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976); *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 961 (5th Cir. 1981). Severe recklessness is defined as (1) an extreme departure from the standards of ordinary care or (2) a present danger of misleading buyers or sellers of securities that is either known to the defendant or is so obvious that the defendant must have been aware of it. *See Bowen*, 2023 WL 6166780, at *7. Alleged facts

are sufficient to support an inference of fraudulent intent if they either (1) "show a defendant's motive to commit securities fraud," or (2) "identify circumstances that indicate conscious behavior on the part of the defendant." *Id.* (quoting *Tuchman*, 14 F.3d at 1068). Here, the SEC does not allege any facts that establish Wheat's motive or that he acted with severe recklessness.

As to its motive allegations, the SEC offers that Wheat sought to conceal his identity because of the LuxeYard Litigations. The SEC's motive theory fails for several reasons. First, as mentioned above, the courts in the LuxeYard Litigations found in favor of Wheat. Thus, Wheat had no motive to conceal his involvement in the LuxeYard Litigations. Second, the SEC claims that in July 2020 Wheat created a nominee entity, YSW, to hold EBET shares as part of a scheme to conceal his identity. Compl. ¶¶ 14, 94, 96. The SEC, however, recognizes that Wheat also purchased EBET shares through another entity, Oak Grove, which was formed in 2013 (7 years before any investment in EBET) and for which Wheat is the sole shareholder and officer. *Id*. ¶ 14. The fact that Oak Grove was formed years earlier than the alleged scheme here and that Wheat is identified as its sole shareholder and officer further undercuts the SEC's motive theory.

Third, as set forth above, Wheat disclosed his identity in the Oak Grove selling shareholder questionnaire executed in January 2022 and EBET disclosed to investors Wheat's identity in an S-1 Filing soon after. In that Oak Grove selling shareholder questionnaire Wheat affirmed that he had voting control of Oak Grove's EBET shares.[9]

---

[9] Kostolampros Decl. **Exhibit 4**.

EBET subsequently disclosed selling shareholders in its Form S-1 filed with the SEC on January 19, 2022, including disclosing that "Robert Wheat has voting and dispositive power over the shares of Oak Grove Asset Management." [10] The S-1 filing also disclosed Casey as having voting and dispositive control over the shares of Relief Defendant Carmel Ventures. These disclosures are fatal to the SEC's motive theory—it shows that the SEC's motive theory is implausible. Moreover, the SEC claims that the purported scheme related to EBET continued through December 2022, but Wheat's, along with Casey's, identities were disclosed to EBET investors in January 2022—well before the alleged scheme ended.

Additionally, the SEC offers only conclusory allegations that Wheat acted "knowingly or recklessly." Compl. ¶¶ 137, 143. The SEC does not allege (nor could it allege) that Wheat ever saw EBET's S-1 disclosures regarding YSW's EBET shares or that he was even aware of YSW's selling shareholder questionnaire. Nor are there allegations that Wheat even knew that YSW's President (who was Wheat's lawyer in the LuxeYard Litigations) executed the selling shareholder questionnaire on behalf of YSW. *See id.* ¶ 94. In addition, the fact that Wheat used his personal attorney who represented him in the LuxeYard Litigations as the purported nominee officer of YSW undermines scienter. *Howard v. Sec. & Exch. Comm'n*, 376 F.3d 1136, 1147 (D.C. Cir. 2004) (noting that "reliance on the advice of counsel need not be a formal defense; it is simply evidence of good faith, a relevant consideration in evaluating a defendant's scienter").

---

[10] Kostolampros Decl. **Exhibit 5**.

Further negating scienter, Wheat invested additional funds in EBET during the relevant period. *See id.* ¶ 117. "When a defendant 'increase[s] his holdings of [company] stock . . . during the [c]lass period,' it 'negates any inference [of scienter].'" *Carlton v. Cannon*, 184 F.Supp.3d 428, 481 (S.D. Tex. 2016); *see also In re Tyson Foods, Inc. Sec. Litig.*, 275 F. Supp. 3d 970, 1002 (W.D. Ark. 2017) (finding that purchasing additional shares during relevant period "is inconsistent with an inference of scienter, because when a defendant has insider knowledge of wrongdoing it is in his financial interest to deplete his reservoir of stock holdings before the wrongdoing becomes public."); *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004) (finding "that the Individual Defendants, in almost every instance, *increased* their [] holdings during the Class Period [is] wholly inconsistent with fraudulent intent.").

### 5. The SEC Fails to Allege That Wheat Acted Negligently in Order to Establish a Violation of Section 17(a)(2) or (3).

To state a cause of action under Sections 17(a)(2) or Section 17(a)(3), the SEC must allege that Wheat acted with negligence. *Aaron*, 446 U.S. at 701-02. Negligence under the securities laws is defined as the failure to exercise reasonable care or competence. *See Sec. & Exch. Comm'n v. Hughes Cap. Corp.*, 124 F.3d 449, 453-54 (3rd Cir. 1997). In *Sec. & Exch. Comm'n v. Berry*, 580 F. Supp. 2d 911, 925 (N.D. Cal. 2008), the court dismissed the SEC's negligence claims under Sections 17(a)(2) and (3) where the SEC only alleged that plaintiff "reviewed" the alleged misstatements, which the court found "is insufficient by itself to establish liability." *Id.* at 925. Here, as mentioned in the scienter discussion above, there is no allegation that Wheat ever reviewed the YSW selling

shareholder questionnaire nor is there any allegation that Wheat was even aware of that selling shareholder questionnaire.  Similarly, the SEC does not allege that Wheat ever saw or reviewed EBET's S-1 disclosures.  Accordingly, without any allegation that Wheat ever reviewed, saw, or was even aware of EBET's disclosures or YSW's selling shareholder questionnaire, the SEC cannot make any showing that Wheat acted negligently.

**B.  The SEC Fails to Plead a Control Liability Claim Under Section 20(b) of the Exchange Act.**

At the outset, because the SEC does not plead a primary securities law violation, the SEC's secondary claim under Section 20(b) fails.  *See Knutson v. Harris,* 3:17-CV-2618-BK, 2018 WL 4281557, at *6 (N.D. Tex. Sept. 6, 2018) (dismissing control liability claim under Section 20(b) of the Exchange Act where plaintiff failed to plead a primary securities law violation under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder).

The SEC's Section 20(b) claim also fails for several additional reasons.  Section 20(b) of the Exchange Act provides: "It shall be unlawful for any person, directly or indirectly, to do any act or thing which it would be unlawful for such person to do under the provisions of this chapter or any rule or regulation thereunder through or by means of any other person."  15 U.S.C. § 78t(b).  As Justice Breyer recognized in *Janus*, there is a "dearth of authority construing Section 20(b)." *Janus*, 564 U.S. at 158 (Breyer, J., dissenting).  The only Circuit Courts to directly address Section 20(b) have held that it requires a showing that a controlling person knowingly used the controlled person to commit an illegal act.  *See Sec. & Exch. Comm'n v. Coffey,* 493 F.2d 1304, 1318 (6th Cir. 1974) ("Under section 20(b), there must be shown to have been knowing use of a controlled

person by a controlling person before a controlling person comes within its ambit."); *Myzel v. Fields*, 386 F.2d 718, 739 (8th Cir. 1967) (holding that Section 20(b) applies only to controlling persons and that "[t]o hold otherwise would vitiate the plain meaning of Section 20(b), that one cannot do indirectly through another what he cannot do himself"); *Cohen v. Citibank, N.A.*, 954 F. Supp. 621, 630 (S.D.N.Y. 1996) (quoting *Moss v. Morgan Stanley*, 553 F. Supp. 1347, 1362 (S.D.N.Y. 1983) *aff'd* 719 F.2d 5 (2d Cir. 1983)) (holding that Section 20(b) "requires showing that a 'controlling person knowingly used the controlled person to commit the illegal act.'").  In addition, some courts have also required a showing that defendants "were culpable participants in the fraudulent scheme." *Sec. & Exch. Comm'n v. Zavodchikov*, 16-cv-845, 2019 WL 3451501, at *4 (D.N.J. July 31, 2019); *see also In re RenovaCare, Inc. Sec. Litig.*, 2:21-cv-13766, 2024 WL 2815034, at *28 (D.N.J. June 3, 2024).

In *Dennis v. General Imaging, Inc.*, 918 F.2d 496 (5th Cir. 1990), the Fifth Circuit generally addressed Section 20 of the Exchange Act, including quoting subsections (a)-(c), as "impos[ing] derivative liability upon controlling persons." *Id.* at 508.  The Fifth Circuit also held that in order to plead a Section 20 claim, "plaintiff must prove that 1) each had actual power or influence over the controlled person and 2) each induced or participated in the alleged violation." *Id.*  Culpable participation clearly requires "something more than negligence." *See Hochfelder*, 425 U.S. at 209 n.28 (holding that "something more than negligence" is required for each provision of the 1934 Act).

Here, the Complaint does not provide any factual allegations that could support a finding that Wheat controlled Weeks, President of YSW, in executing YSW's selling

shareholder questionnaire. Instead, the SEC relies on purely conclusory allegations to establish its Section 20(b) claim. Compl. ¶ 94 (alleging the Friedlander and Wheat "set up . . . nominee entities with nominee officers whom they controlled . . ."); *id.* ¶ 165 (alleging that Wheat "arranged" for his lawyer to "sign a false shareholder questionnaire"); *id.* ¶¶ 94, 99 (alleging that Wheat "used his personal lawyer" as his "nominee officer" at YSW and that Wheat "had his nominee sign the Domain Purchase Agreement" as a contracting party with EBET); *id.* ¶14 (alleging that YSW did not act without Wheat's approval in disposing of EBET securities). Nowhere does the SEC allege that Wheat directed or even had the ability to direct the conduct of Weeks. Moreover, as set forth above, the SEC does not plead any facts that could support a finding of negligence, let alone conduct above negligence to demonstrate that Wheat was a culpable participant.

## C. The Complaint Fails to State an Unjust Enrichment Claim Against YSW and Oak Grove.

An unjust enrichment claim requires showing that one party "'has obtained a benefit from another by fraud, duress, or the taking of an undue advantage.'" *Digital Drilling Data Sys., LLC v. Petrolink Svcs., Inc.*, 965 F.3d 365 (5th Cir. 2020) (internal citations omitted). The SEC alleges that both YSW and Oak Grove should be "disgorge[d]" of the "proceeds they received as a result of the Defendants' violations of the federal securities laws" under the theory of unjust enrichment. Compl. ¶ 170. But this allegation suffers the same problem as the SEC's Section 20(b) allegations against Wheat: there can be no unjust enrichment without an actual securities violation from which the enrichment stems. *See Sec. & Exch. Comm'n v. Lemelson*, 355 F. Supp. 3d 107, 110 (D. Mass. Jan. 23, 2019)

(explaining that an unjust enrichment claim depended on another substantive violation's existence when considering a motion to dismiss). Without any well-pleaded securities violations against Wheat, *see supra* Sections I and II, YSW and Oak Grove could not unjustly enrich themselves from a securities violation. Moreover, the Complaint does not allege when either entity sold shares and therefore fails to identify how either YSW or Oak Grove benefitted from any purported violation of the securities laws. The Complaint is especially weak in alleging that Oak Grove is a proper relief defendant because there are no allegations that demonstrate how Oak Grove benefited from any alleged securities law violation nor are there allegations showing how the Court could overlook the corporate form and seek disgorgement resulting from legitimate stock transactions on behalf of Oak Grove. *See Janvey v. Adams*, 588 F.3d 831, 835 (5th Cir. 2009) (affirming dismissal because defendants were not proper relief defendants where defendants had "sufficient legitimate ownership interests" in the proceeds).

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed.

Dated: February 21, 2025

**VENABLE LLP**

*/s/ George Kostolampros*

George Kostolampros
(*admitted pro hac vice*)
Ana L. Jara
(*admitted pro hac vice*)
Maxwell H. Weiss
(*admitted pro hac vice*)
600 Massachusetts Ave, NW
Washington, D.C. 20001
Tel: (202) 344-4426
Fax: (202) 344-8300
Email: GKostolampros@Venable.com

*Counsel for Defendant Robert Wheat and Relief Defendants Oak Grove Asset Management, Inc. and YSW Holdings, Inc.*

## CERTIFICATE OF CONFERENCE

I, George Kostolampros, certify that on December 23, 2024, I met and conferred telephonically with counsel for Plaintiff Securities and Exchange Commission regarding Defendant Robert Wheat and Relief Defendants Oak Grove Asset Management, Inc. and YSW Holdings, Inc.'s grounds for dismissal of the Complaint. However, the parties were unable to resolve the issues raised in this motion and accordingly, they remain disputed and opposed.

*/s/ George Kostolampros*
George Kostolampros

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2025, a true and correct copy of the foregoing was served on all counsel of record in accordance with the Federal Rules of Civil Procedure via the Court's ECF system.

*/s/ George Kostolampros*
George Kostolampros