# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

SECURITIES AND EXCHANGE
COMMISSION,
    Plaintiff

v.

KEVIN CASEY et al.,
    Defendants

Civil Action No.: 4:24-cv-02971

**ORAL ARGUMENT REQUESTED**

## DEFENDANT JONATHAN FRIEDLANDER AND RELIEF DEFENDANT ESPORTS GROUP, INC.'S MOTION TO DISMISS COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

K&L GATES LLP

Stephen G. Topetzes
(admitted *pro hac vice*)
Stavroula E. Lambrakopoulos
(admitted *pro hac vice*)
1601 K Street, N.W.
Washington, DC  20006
Tel:  202.778.9328
Fax:  202.778.9100
Stephen.topetzes@klgates.com
Stavroula.lambrakopoulos@klgates.com

Beth W. Petronio
Attorney-in-Charge
Texas Bar No. 00797664
Federal Id. No. 29628
1717 Main Street, Suite 2800
Dallas, TX  75201-7342
Tel:  (214) 939.5815
Fax:  (214) 939.5849
Beth.petronio@klgates.com
*Attorneys for Defendant Jonathan Friedlander and Relief Defendant Esports Group, Inc.*

DATED:  February 21, 2025

# TABLE OF CONTENTS

I.  SUMMARY OF ARGUMENT AND ISSUES ...................................................... 1

II. FACTUAL ALLEGATIONS ................................................................................ 4

III. ARGUMENT ..................................................................................................... 7

    A.    STANDARD OF REVIEW ........................................................................ 7

    B.    The Complaint Fails to State Claims under Exchange Act §10(b) and Rule 10b-5 and Securities Act §17(a) ........................................................ 8

            1.    The SEC Failed to Plead Securities Fraud with Required Particularity. ..................................................................................... 9

            2.    The Complaint Does Not Allege that Friedlander Was the "Maker" of the Purported Misrepresentations or Omissions. ......... 12

            3.    Allegations of Scheme Liability are Deficient Since the Alleged Misconduct is the Same as the Subject Misrepresentations and Omissions. ...................................................................................... 14

            4.    The Complaint Fails to Sufficiently Allege that Friedlander's Involvement with the LuxeYard Litigation Would Have Been Material. .................................................................................... 15

            5.    The Complaint Lacks Allegations that Friedlander Engaged in the Conduct at Issue with Requisite Scienter. ............................... 18

    C.    The Reporting Violations Under Exchange Act Sections 13(d) and 16(a) are Belied by the Public Record ...................................................... 22

    D.    Failure to Plead Predicate Claims Requires Dismissal of Exchange Act Section 20(b) Count and Unjust Enrichment Claim Against Relief Defendant Esports ...................................................................................... 24

IV. CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aaron v. SEC*,
446 U.S. 680 (1980) ................................................................................................ 19

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ................................................................................................ 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................. 3, 7

*Bennett v. McDermott Int'l, Inc.*,
855 F. App'x 932 (5th Cir. 2021) ............................................................................ 7

*Brody v. Transitional Hosp. Corp.*,
280 F.3d 997 (9th Cir. 2002) ........................................................................... 16, 17

*Flannery v. SEC*,
810 F.3d 1 (1st Cir. 2015) ...................................................................................... 20

*Hollinger v. Titan Capital Corp.*,
914 F.2d 1564 (9th Cir. 1990), *cert. denied*, 499 U.S. 976 (1991) ........................ 20

*Howard v. SEC*,
376 F.3d 1136 (D.C. Cir 2004) ......................................................................... 18, 21

*Janus Cap. Group, Inc. v. First Derivative Traders*,
564 U.S. 135 (2011) ..................................................................................... 3, 12, 13

*Janvey v. Adams*,
588 F.3d 831 (5th Cir. 2009) ................................................................................. 25

*Klinek v. LuxeYard, Inc.*,
596 S.W.3d 437 (14th Court of App. of Tex. Feb. 13, 2020) ................................. 17

*Knutson v. Harris*,
2018 WL 4281557 (N.D. Tex. Sept. 6, 2018) ....................................................... 24

*Lorenzo v. SEC*,
139 S. Ct. 1094 (2019) ........................................................................................... 12

*LuxeYard, Inc. v. Kevan Casey et al.*,
No. 4:12-cv-02480 (S.D. Tex. Oct. 9, 2012)............................................. 17

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) .................................................................................... 16

*Merck & Co. v. Reynolds*,
559 U.S. 633 (2010) .................................................................................. 19

*Meyer v. Jinkosolar Holdings Co., Ltd.*,
761 F.3d 245 (2d Cir. 2014) ..................................................................... 16

*Meyers v. Textron, Inc.*,
540 Fed. App'x. 408 (5th Cir. 2013)......................................................... 11

*Phillips v. Scientific-Atlanta, Inc.*,
374 F.3d 1015 (11th Cir. 2004) ................................................................ 19

*Public Pension Fund Group v. KV Pharmaceutical Co.*,
679 F.3d 972 (8th Cir. 2012) .................................................................... 14

*Reliable Consultants, Inc. v. Earle*,
517 F.3d 738 (5th Cir. 2008) ...................................................................... 7

*Schott v. Nobilis Health Corp.*,
211 F. Supps. 3d 936 (S.D. Tex. 2016)..................................................... 11

*SEC v. Alomari et al.*,
Case No. 1:24-cv-00172 (D. R.I. May 3, 2024) ....................................... 11

*SEC v. Berry*,
580 F. Supp. 2d 911 (N.D. Cal. 2008) ..................................................... 13

*SEC v. Bio Def. Corp.*,
No. CV 12-11669-DPW, 2019 WL 7578525 (D. Mass. Sept. 6, 2019),
*aff'd sub nom. SEC v. Morrone*, 997 F.3d 52 (1st Cir. 2021) .................... 14

*SEC v. Blackburn*,
15 F. 4th 676 (5th Cir. 2021) .................................................................... 18

*SEC v. Bowen*,
No. 3:22-CV-1415-S, 2023 U.S. Dist. LEXIS 168648 (N.D. Tex. Sept.
21, 2023)...........................................................................................*passim*

*SEC v. Bowen*,
    No. 3:22-CV-1415-S, 2024 U.S. Dist. LEXIS 127132 (N.D. Tex. July
    17, 2024) ............................................................................................................ 8, 9

*SEC v. Caserta*,
    75 F. Supp. 2d 79 (E.D.N.Y. 1999) ............................................................... 22

*SEC v. Felton*,
    No. 3:20-cv-0822-G, 2020 U.S. Dist. LEXIS 225359 (N.D. Tex. Dec. 2,
    2020) ................................................................................................................. 12

*SEC v. Felton*,
    No. 3:20-CV-0822-G, 2021 U.S. Dist. LEXIS 108566 (N.D. Tex. June
    10, 2021) ........................................................................................................... 20

*SEC v. Gane*,
    No. 03-61553-CIV-SEITZ, 2005 WL 90154 (S.D. Fla. Jan. 4, 2005) ...................... 19

*SEC v. Kelly*,
    817 F. Supp. 2d 340 (S.D.N.Y. 2011) ............................................................. 13

*SEC v. Killion*,
    No. H-16-621, 2017 U.S. Dist. LEXIS 173209 (S. D. Tex. Mar. 24,
    2017) ......................................................................................................... 9, 12, 14

*SEC v. McNulty*,
    137 F.3d 732 (2d Cir. 1998) ........................................................................... 20

*SEC v. Narayan*,
    No. 3:16-cv-1417-M, 2017 WL 4652063 (N.D. Tex. Aug. 28, 2017) ........................ 8

*SEC v. Rio Tinto PLC*,
    2019 U.S. Dist. LEXIS 43986 (S.D.N.Y. Mar. 18, 2019), *aff'd on other
    grounds,* 41 F.4th 47 (2d Cir. 2022) .............................................................. 13

*SEC v. Rio Tinto PLC*,
    41 F.4th 47 (2d Cir. 2022) .............................................................................. 14

*SEC v. RPM Int'l, Inc.*,
    282 F. Supp. 3d 1 (D.D.C. 2017) ..................................................................... 9

*SEC v. Seghers*,
    298 F. App'x. 319 (5th Cir. 2008) ................................................................. 19

*SEC v. Verges*,
716 F. Supp. 3d 456 (N.D. Tex. 2024)................................................................*passim*

*Shaw v. Digital Equipment Corp.*,
82 F. 3d 1194 (1st Cir. 1996)..................................................................... 16

*In re Solar Winds Corp. Sec. Litig.*,
595 F. Supp. 3d 573 (W.D. Tex. 2022)..................................................... 12

*Sonnier v. State Farm*,
509 F.3d 673 (5th Cir. 2007) ....................................................................... 7

*Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*,
365 F.3d 353 (5th Cir. 2004) ................................................................... 18

*Steadman v. SEC*,
603 F.2d 1126 (5th Cir. 1979) *aff'd*, 450 U.S. 91 (1981) .....................15, 16

*Sundstrand Corp. v. Sun Chem. Corp.*,
553 F.2d 1033 (7th Cir. 1977), *cert. denied*, 98 U.S. 224 (1977) ............. 20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ..............................................................................18, 21

*TSC Indus. Inc. v. Northway, Inc.*,
426 U.S. 438 (1976) ..............................................................................15, 16

*WPP Luxembourg Gamma Three Sari v. Soot Runner, Inc.*,
655 F.3d 1039 (9th Cir. 2011) ................................................................ 14

**Statutes**

Securities Exchange Act of 1934 § 10(b), 15 U.S.C. §78j(b) ...................*passim*

Securities Exchange Act of 1934 § 13(d), 15 U.S.C. §78m(d) .............................2, 4, 22

Securities Exchange Act of 1934 § 16(a), 15 U.S.C. §78p(a).......................................... 2

Securities Exchange Act of 1934 § 20(b), 15 U.S.C. §78t(b) ...............................2, 4, 24

Securities Act of 1933 § 17(a), 15 U.S.C. §77q(a) ....................................*passim*

**Rules**

Securities Exchange Act of 1934 Rule 10b-5, 17 C.F.R. § 240.10b–5.....................*passim*

17 CFR §§229.507........................................................................................ 24

Securities Exchange Act of 1934 Rule 13d-1, 17 C.F.R. §240.13d-1 ............................. 2

Securities Exchange Act of 1934 Rule 16d-3, 17 C.F.R. §240.16a-3 .............................. 2

Defendant Jonathan Friedlander ("Friedlander"), and Relief Defendant Esports Group, Inc. ("Esports"), by and through their undersigned attorneys, hereby move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), because it fails to state a claim upon which relief can be granted, and pursuant to Rule 9(b) for failure to plead fraud with particularity.

## I.     SUMMARY OF ARGUMENT AND ISSUES

In a sweeping 170-paragraph Complaint filled with conclusory allegations and improper group pleading, the SEC alleges that Friedlander engaged in securities fraud and reporting violations through a stock manipulation scheme led by Kevan Casey, who is now deceased.  The SEC claims that Casey schemed with others to cheaply acquire stock in private companies which was sold at values inflated by stock promoters hired to tout the companies during their initial public offerings ("IPOs").  Casey is  alleged to have engaged in such manipulation of the stock price of five (5) companies.  The SEC claims that Friedlander was involved with respect to only one of those companies – EBET, Inc. – which Friedlander helped launch as a public company, and in which he and Esports, a family-owned company that he is alleged to have controlled, invested.

Few of the allegations in the Complaint involve Friedlander and Esports.  The Complaint does not allege that Friedlander made any misrepresentations or omissions to prospective or actual investors in EBET regarding the company's operations, assets, liabilities, financials, stock value or future.  The SEC also does not allege any fraud with respect to EBET's business or operations.  Friedlander is not alleged to have served as an officer or director of EBET or of Esports, the purported nominee investor.  Nor is

Friedlander alleged to have played any role or had any involvement in the preparation and filing of EBET's public disclosures and registration documents. Notably, Friedlander is not charged by the SEC with manipulation of EBET stock.

Rather, the case against Friedlander involves alleged misrepresentations or omissions arising from the absence of any disclosure of his personal involvement as a shareholder in EBET based on his purported control of Esports. In particular, the SEC theorizes that Friedlander concealed his purported ownership of Esports to prevent potential investors from learning that EBET was "controlled" by persons who had been sued for alleged stock manipulation a decade earlier by investors in another public company, LuxeYard Inc. (the "LuxeYard Litigation"). To that end, Friedlander is accused of failing to file public forms disclosing that he was a beneficial owner of more than five (5) percent of EBET's outstanding stock, and, as part of a group including Casey, a control person owning more than ten (10) percent of EBET's stock. The SEC also alleges Friedlander's purported control of Esports' shares in EBET was not disclosed in the selling shareholders list in EBET's registration statement ("Form S-1") or the related Selling Shareholder Questionnaire.

The SEC charges Friedlander with violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10-5 thereunder, Section 17(a) of the Securities Act of 1933 ("Securities Act"), Exchange Act Section 20(b), as well as reporting violations of Exchange Act Sections 13(d) and 16(a), and Rules 13d-1 and 16d-3. The SEC named Esports as a relief defendant to recover alleged proceeds of the purported fraud through an unjust enrichment theory. As to Friedlander, the SEC seeks

draconian relief with dramatic consequences in the form of a permanent injunction, civil monetary penalties, disgorgement, trading restrictions and a lifetime bar from service as an officer or director of a public company.

However, the SEC's Complaint fails to "state a claim for relief that is plausible on its face" as required by the U. S. Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and should be dismissed for several reasons:

- The sparse factual allegations and rank group pleading as to Friedlander's alleged involvement in purported fraud do not meet the heightened pleading standard of Fed. R. Civ. Proc. 9(b) which requires that his culpability be pled with particularity.

- The securities fraud claims also fail because the SEC does not allege – for it cannot – that Friedlander was the "maker" of any of the alleged misstatements or omissions, as required by the U.S. Supreme Court in *Janus Cap. Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). None of the documents at issue in this omissions case is alleged to have been authored, prepared, reviewed or even authorized by Friedlander.

- The SEC cannot bypass its failure to allege that Friedlander was the "maker" of the subject misstatements or omissions by alleging scheme liability because the Complaint lacks the required allegations of misconduct independent of the underlying misrepresentations and omissions.

- The alleged undisclosed information regarding the LuxeYard Litigation would not have been material to any investor. The LuxeYard Litigation involved alleged investment failures that took place nearly a decade before the EBET IPO, Friedlander was never found liable by any court, and any litigation was dismissed as to him without any admissions of wrongdoing.

- The Complaint lacks allegations that would support a finding that Friedlander acted with scienter – *i.e.* intentional or highly reckless conduct – or, at minimum, negligently. Friedlander engaged in good faith efforts to grow EBET as a company and was not involved in the company's disclosure decisions or the preparation and filing of EBET's registration statement.

- The alleged reporting violations fail to state any viable claim under Exchange Act §§13(d) and 16(a) and related rules because they are devoid of asserted facts demonstrating that Friedlander controlled the disposition of Esports' shares in EBET, and because undisputed public records identify Friedlander's *father* as the President and owner of Esports.

- The absence of alleged facts sufficient to support primary violations of the predicate anti-fraud provisions is fatal to plaintiff's secondary liability claims that Friedlander violated Exchange Act §20(b) and that relief defendant Esports was unjustly enriched.

These pleading deficiencies require dismissal for failure to state a claim as to Friedlander and Relief Defendant Esports.

## II.　　FACTUAL ALLEGATIONS[1]

Few factual allegations in the Complaint relate to Friedlander.  In relevant part, the SEC alleges that Friedlander was involved in a scheme with Casey and Wheat to manipulate the stock of one of the five companies at issue.  (Compl. ¶¶1-7).  The SEC alleges that, starting in May 2020, Friedlander worked together with Casey and Casey's underwriter to acquire an online gaming company to jointly finance and take public. (*Id.* ¶89).  Unsuccessful in locating a public shell company they could acquire to effect a reverse merger, they allegedly tapped a Belize private company to take public as EBET through an IPO.  (*Id.* ¶89-91).  On or about July 23, 2020, Casey, Friedlander and Wheat are alleged to have invested their own funds in the form of loans to the Belize company to upgrade the company's books and records and financial statements to comply with IPO requirements. (*Id.* ¶92).  The Complaint alleges that Casey, Friedlander and Wheat set up

---

[1]  The Complaint's factual allegations are summarized herein for the purpose of the instant motion, but they remain disputed and are neither conceded nor waived.

"nominee" companies they each controlled in order to secretly invest in EBET without prospective investors learning that EBET was controlled by persons who previously had been sued by LuxeYard's investors alleging stock manipulation. (*Id.* ¶39-40, 97, 112). Friedlander allegedly set up Esports as his "nominee" company. (*Id.* ¶94).

During July and August 2020, Casey, Friedlander and Wheat are alleged to have worked through their respective nominee companies to purchase internet domain names that Friedlander identified for about $30,000 to $48,000 each, which they in turn sold to the Belize company for common stock, warrants and a convertible debenture issued to each nominee. (*Id.* ¶95, 97-98, 100). Again, through the signatures of their nominees as contracting parties, they allegedly memorialized these transactions with Domain Purchase Agreements with the Belize company, effective September 1, 2020, which were publicly disclosed in EBET's Form S-1. (*Id.* ¶99). In relevant part, the SEC contends that Friedlander, in exchange for the sale of the domain names and the personal services and efforts he would provide to take EBET public, received through Esports: a promissory note for $700,000 which would be convertible to 1,400,000 EBET shares; a warrant to buy an additional 635,000 shares at an exercise price of $.30 per share; and, $375,000 in cash. (*Id.* ¶¶98-99, 113). Casey and Wheat allegedly obtained similar amounts through their nominee companies. (*Id.*). The SEC claims that the compensation received by Casey, Friedlander, and Wheat was "exorbitant" in relation to the value of the domain names and the services they provided, alleging that the 1,400,000 shares alone were valued at $2.8 million, based on a $2 per share pre-IPO price. (*Id.* ¶101).

Together with Casey and Wheat, Friedlander is also alleged to have communicated with the underwriter, EBET officers, and Ahmed Alomari, a stock promoter recommended by an EBET officer, regarding the IPO, the timing of the approval of the listing of EBET shares by Nasdaq, and the desired target sales price of the IPO shares. (*Id*. ¶¶102-107).  Around December 2020, Casey, Friedlander and Wheat are also alleged to have bought additional discounted shares of EBET from a founder of EBET, and entered into an agreement with EBET to convert part of the previously-issued convertible debentures into 519,277 shares each of EBET pre-IPO stock. (*Id*. ¶106).  By an agreement allegedly drafted by Casey and Friedlander, these shares were registered through the IPO, while the pre-IPO shares of EBET's founders, directors and investors remained "locked up" from trading for several months.  (*Id.* ¶107).

The SEC alleges that the selling shareholder table in EBET's Form S-1 and the related Selling Shareholder Questionnaire submitted on behalf of Esports failed to disclose that Esports' shares were controlled by Friedlander.  (*Id*. ¶¶110-14).  The SEC also contends that Friedlander should have been deemed a beneficial owner of EBET because his and Esports' shares combined exceeded five (5) percent of EBET's outstanding stock and, combined with stock issued to Casey and his nominee companies, exceeded ten (10) percent of the outstanding stock.  (*Id*. ¶¶146-48, 154).  But Friedlander did not file any forms with the SEC reflecting beneficial ownership.  (*Id.* ¶¶150, 154).

Once the EBET IPO became effective, its shares were priced at $6 per share on the first day of trading on April 15, 2021.  (*Id.* ¶¶120-22).  Following the stock promotion efforts of Alomari, the share price "soared" by 800 percent in the first two days of

trading. (*Id*. ¶122).  On the second trading day, Casey, Friedlander and Wheat allegedly sold shares in the open market through their nominees, with Friedlander allegedly selling 72,900 of Esports' shares for $3.1 million.  (*Id*. ¶123).  Casey, Friedlander, and Wheat, are also alleged to have purchased varying amounts of IPO shares, which they started selling in the public market.  (*Id*. ¶117).

## III.   ARGUMENT

### A.   STANDARD OF REVIEW

For a Rule 12(b)(6) motion to dismiss, the Court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Sonnier v. State Farm,* 509 F.3d 673, 675 (5th Cir. 2007).  To withstand such a motion, the SEC needs to plead sufficient facts "to state a clam to relief that is plausible on its face." *Twombly*, 550 US at 570; *Reliable Consultants, Inc. v. Earle,* 517 F.3d 738, 742 (5th Cir. 2008).  That is, the SEC must allege "more than a sheer possibility that a defendant has acted unlawfully." *Bennett v. McDermott Int'l, Inc.*, 855 F. App'x 932, 938 n.4 (5th Cir. 2021).  A court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."  *SEC v. Bowen,* No. 3:22-CV-1415-S, 2023 U.S. Dist. LEXIS 168648 at *7 (N.D. Tex. Sept. 21, 2023) ("*Bowen I*") (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *SEC v. Verges*, 716 F. Supp. 3d 456, 465 (N.D. Tex. 2024) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009)).  *See SEC v. Bowen*, No. 3:22-CV-1415-S, 2024 U.S. Dist. LEXIS 127132, at *5 (N.D. Tex. July 17, 2024) ("*Bowen II*").

**B.** **The Complaint Fails to State Claims under Exchange Act §10(b) and Rule 10b-5 and Securities Act §17(a)**

To sustain its claim under Exchange Act §10(b) and Rule 10b-5, the SEC must plead that Friedlander "directly or indirectly" and "in connection with the purchase or sale of any security": (a) employed a "device, scheme, or artifice to defraud;" (b) made an "untrue statement of a material fact"; or (c) engaged in an "act, practice, or course of business which operates or would operate as a fraud or deceit upon any person[.]" *Verges*, 716 F. Supp. 3d at 466 (*citing* 17 C.F.R. § 240.10b-5(a)-(c)) (quotation marks omitted). The SEC's claims involve allegations of both "scheme liability" under Rule 10b-5(a) and (c) which are based on "deceptive conduct", and Rule 10b-5(b) claims which are based on "deceptive statements or omissions". Texas federal courts require the pleading of a scheme that "encompasses conduct distinct from the misrepresentations or omissions that give rise to Rule 10b-5(b) liability." *Verges*, 716 F. Supp. 3d at 466; *SEC v. Narayan*, No. 3:16-cv-1417-M, 2017 WL 4652063, at *7 (N.D. Tex. Aug. 28, 2017).

The SEC also purports to assert claims under Securities Act §17(a) which, similar to Rule 10b-5, makes it unlawful to: (1) "employ any device, scheme, or artifice to defraud" under §17(a)(1); (2) "obtain money or property" by using material misstatements or omissions under §17(a)(2); or (3) "engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser" under §17(a)(3). 15 U. S. C. § 77q; *Verges*, 716 F. Supp. 3d at 467. Like Rule 10b-5(a) and (c), to sustain findings that Friedlander violated Securities Act §17(a)(3) under a scheme liability theory, the SEC must allege and establish a course of fraudulent

conduct that goes beyond the omission. *SEC v. RPM Int'l, Inc.*, 282 F. Supp. 3d 1, 31-32 (D.D.C. 2017) (in-house counsel's proactive efforts to conceal criminal investigation and *qui tam* complaint went beyond the misrepresentation in the company's public filing); *Verges*, 716 F. Supp. 3d at 466; *SEC v. Killion*, No. H-16-621, 2017 U.S. Dist. LEXIS 173209, at *9 (S. D. Tex. Mar. 24, 2017) (dismissal of scheme liability claims under Rule 10b-5(a) and (c) for failure to plead conduct "apart from the alleged misrepresentations and misleading omissions"). For several reasons, the Complaint falls short of the pleading standards for the securities fraud claims against Friedlander.

### 1. The SEC Failed to Plead Securities Fraud with Required Particularity.

Rule 9(b) sets a heightened pleading standard that requires a plaintiff to "state with particularity the circumstances constituting fraud or malice." At minimum, Rule 9(b) requires "allegations of the particulars of time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Bowen II* at *7 (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)). In other words, the SEC must plead "the who, what, when, where, and how" of the alleged fraud. *Id. (quoting Williams v. WMX Techs., Inc.,* 112 F.3d 175, 179 (5th Cir. 1997)).

The Complaint's vague and conclusory allegations as to Friedlander fall woefully short of the "who, what, when, where, and how" of his alleged fraud. The Complaint asserts that defendants took steps to hide from investors that the persons controlling EBET also had been the subject of investor lawsuits alleging decade-old misconduct respecting LuxeYard stock. (Compl. ¶¶39-40, 97, 112). As relates to Friedlander, the

Complaint alleges that EBET's registration statement and an underlying shareholder questionnaire failed to disclose that Friedlander was in control of an EBET shareholder. (*Id.* ¶¶110-14).  Aside from that omission for which Friedlander was not responsible (*supra* 12-14), the Complaint is devoid of allegations of any other alleged misconduct by him related to these omissions.  He is not alleged personally to have uttered any misstatement or prepared, authored or reviewed any document containing a material misstatement or omission.

Instead, the few references to Friedlander in the Complaint generally constitute conclusions and group pleading.  At most, the Complaint alleges certain steps that defendants *collectively* undertook to: (i) work with Casey's underwriter to take EBET public through a reverse merger with a public shell or, when unsuccessful, an IPO of a private company; (ii) loan their own funds to help EBET prepare its financial statements for that IPO; (iii) obtain internet domain names for EBET through nominee companies; (iv) resell those domain names to EBET in exchange for cheap stock in excess of the value of the domain names; and, (v) following activities by a stock promoter that entered into a "Consulting Agreement" with EBET, collectively sell EBET stock for millions of dollars.  (*See* Compl. ¶¶89, 92, 94-95, 97-98, 100, 110-15, 118).  The Complaint does not include any particulars as to the dates and prices of Friedlander's transactions or his resulting profits.  None of this alleged conduct is *per se* unlawful or fraudulent.  And the SEC's allegations *do not specify any affirmative action by Friedlander* to perpetrate the disclosure fraud he is accused of committing.

Moreover, some of the SEC's allegations are contradictory and inconsistent as to Friedlander.  For example, the Complaint alleges that Friedlander communicated with the stock promoter, Ahmad Alomari, whom he and Casey allegedly had hired in connection with the EBET offering at the recommendation of an EBET officer.  (*Id*. ¶¶105-18).  Casey and co-defendant Adrian James are alleged to have hired Alomari over two years before the EBET offering in connection with the other companies at issue in the Complaint. (*See, e.g.* Compl. ¶44 (CNS); ¶56 (Soliton)).  But, in a related securities fraud case brought by the SEC against Alomari in federal court in the District of Rhode Island, the SEC alleges that ***Casey and James*** arranged for issuers, including EBET, to hire and pay Alomari to engage in stock promotion activities on their behalf, and Friedlander ***is not even mentioned***.[2]  The Complaint is riddled with similar vague and conclusory allegations devoid of any particulars as to Friedlander.

This lack of particularity as to Friedlander matters.  It is not enough to group plead allegations that attempt to paint Friedlander as a "participant" in the fraud without reference to his own particular actions.  The omission of such necessary details leaves Friedlander unable to admit or deny particular allegations, assert affirmative defenses, or determine the availability of crossclaims or third-party claims.  Such conclusory "group"

---

[2]  *See* Compl., *SEC v. Alomari et al.*, Case No. 1:24-cv-00172, ¶¶38, 47, 50-53 (D. R.I. May 3, 2024) (App. at Ex. 1).  The Court may consider on a motion to dismiss documents that are integral to or relied on in the complaint and take judicial notice of court pleadings and public disclosure documents required to be filed with government agencies.  *Meyers v. Textron, Inc.*, 540 Fed. App'x. 408, 409 (5th Cir. 2013); *Schott v. Nobilis Health Corp.*, 211 F. Supps. 3d 936, 947 (S.D. Tex. 2016).  Those documents cited herein are found in the attached Appendix and cited as "App. at Ex. ___".

pleading is insufficient as a matter of law, and Rule 9(b) requires that the Complaint be dismissed. *Verges*, 716 F. Supp. 3d at 465; *SEC v. Felton*, No. 3:20-cv-0822-G, 2020 U.S. Dist. LEXIS 225359, at \*14-21 (N.D. Tex. Dec. 2, 2020) (dismissing complaint where "conclusory averments of fraud" failed to plead fraud with particularity).

    **2.    The Complaint Does Not Allege that Friedlander Was the "Maker" of the Purported Misrepresentations or Omissions.**

In a case alleging a misstatement or omission under Section 10(b) and Rule 10b-5, the Supreme Court requires that the defendant be the "maker" of the statement – that is, "the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *In re Solar Winds Corp. Sec. Litig.*, 595 F. Supp. 3d 573, 586 (W.D. Tex. 2022) (quoting *Janus*, 564 U.S. at 142); *see Lorenzo v. SEC*, 139 S. Ct. 1094, 1100 (2019) (defendant was not a "maker" despite being involved in drafting the document since it was his boss who had "ultimate authority" over the content, form and communication of the statement at issue); *Bowen I*, 2023 U.S. Dist. LEXIS 168648 at \* 11 (dismissing Rule 10b-5 claim for failure to plausibly allege that defendant was the "maker" of the alleged misstatements); *Killion*, 2017 U.S. Dist. LEXIS 173209, at \*17-18 (applying *Janus* to hold executive accountable if he had ultimate authority over statement, signed, ratified or approved it, or it was attributed to him).

To sustain claims of primary liability under Section 10(b), it is not enough to plead allegations of "[m]ere knowledge" or aiding and abetting someone else's violation. *Bowen I* at \*12-13 (quoting *Felton*, No. 3:20-cv-0822-G, 2020 U.S. Dist. LEXIS 225359, at \*17-18). Indeed, "vague allegations that a defendant reviewed and edited a document"

fall short. *Bowen I* at *12 (quotation omitted); s*ee also*, *SEC v. Berry,* 580 F. Supp. 2d 911, 922 (N.D. Cal. 2008) (SEC's conclusory pleadings that defendant "reviewed" and "discussed" the filings at issue are insufficient to plead with particularity defendant's role in the alleged fraud).[3]

Friedlander is not alleged to have prepared or participated in the preparation of any of the filings and documents at issue. Nor is he alleged to be an officer or director of EBET or in any position of authority or in control of the company's SEC filings or its public disclosures. He is not listed on the Form S-1 as being a member of management or a director of EBET. The Form S-1 reflects that it was filed and prepared by EBET's counsel and signed by EBET's Chief Executive Officer, its interim Chief Financial Officer and its directors.[4] Friedlander also is not alleged to have prepared or completed the Selling Shareholder Questionnaire. While he is alleged to have provided a completed questionnaire to his father (Compl. ¶109), the SEC does not contend that his father executed or submitted that questionnaire. Instead, the SEC alleges that the questionnaire was signed and submitted to EBET by Friedlander's wife (*Id.* ¶111), and there are no

---

[3] While the Fifth Circuit has not ruled on whether *Janus* applies to require pleading that defendant was a "maker" of the alleged misstatement or omission for liability under Securities Act §17(a), other courts have required such a pleading as consistent with the purpose of both statutes to impose the same requirements for purchasers, offerors and sellers of securities. *See e.g. SEC v. Kelly*, 817 F. Supp. 2d 340, 345 (S.D.N.Y. 2011); *SEC v. Rio Tinto PLC*, 2019 U.S. Dist. LEXIS 43986, at *56 (S.D.N.Y. Mar. 18, 2019), *aff'd on other grounds,* 41 F.4th 47 (2d Cir. 2022). Such treatment is warranted here as well.

[4] EBET Form S-1 Registration Statement (Mar. 10, 2021),
https://www.sec.gov/Archives/edgar/data/1829966/000168316821000854/esports_s1.htm
(App. at Ex 2).

allegations that Friedlander provided it to her or filled it out. In actuality, the questionnaire reflects that Esports was the selling shareholder, and while Ms. Nicole Dumas, Friedlander's wife, signed it, she did so on behalf of Esports in her capacity as its CEO. The Form S-1 correctly lists Esports as the selling shareholder.[5]

### 3. Allegations of Scheme Liability are Deficient Since the Alleged Misconduct is the Same as the Subject Misrepresentations and Omissions.

Attempting to bypass the "maker" requirement, the SEC alleges that Friedlander was part of a "scheme" to engage in securities fraud, together with Casey and Wheat. Again, the SEC's pleadings fall short due to the utter absence of specific allegations sufficient to support any independent wrongful conduct by Friedlander beyond the subject alleged misrepresentations and omissions. *See SEC v. Rio Tinto PLC*, 41 F.4th 47, 49 (2d Cir. 2022) ("[A]n actionable scheme liability claim also requires something beyond misstatements and omissions, such as dissemination.")*; Killion*, 2017 U.S. Dist. LEXIS 173209, at * 8-9 *(citing Lentell v. Merrill Lynch & Co.,* 396 F.3d 161, 177 (2d Cir. 2005)); *WPP Luxembourg Gamma Three Sari v. Soot Runner, Inc.*, 655 F.3d 1039, 1057 (9th Cir. 2011); *Public Pension Fund Group v. KV Pharmaceutical Co.*, 679 F.3d 972, 987 (8th Cir. 2012). It is thus insufficient to allege that the defendant was a "participant" in the scheme which produced the misstatements or omissions; rather, allegations of "other wrongful conduct" are required. *SEC v. Bio Def. Corp.*, No. CV 12-

---

[5] *See* Esports Selling Shareholder Questionnaire. (App. at Ex. 3).

11669-DPW, 2019 WL 7578525, at *25 (D. Mass. Sept. 6, 2019), *aff'd sub nom. SEC v. Morrone*, 997 F.3d 52 (1st Cir. 2021).

This is fatal to the SEC claims. While the Complaint groups Friedlander with the other defendants in alleging that they collectively took steps to develop and take EBET public through an IPO, none of that conduct would amount to anything unlawful. There is simply nothing unlawful about an investor or his family choosing to form a limited liability company as an investment vehicle, or working to prepare a private company for a public offering with help from lawyers, underwriters, and stock promoters. Allegations that Friedlander effected Esports' sale of the internet domain names to EBET in return for higher-valued pre-IPO stock through a publicly disclosed Domain Purchase Agreement, also do not amount to violation. Friedlander's alleged communications regarding the pricing of the offering with a stock promoter also were not prohibited by any law. There are no allegations that EBET was a sham company with fraudulent financial statements and no operations. At most, the allegations narrating Friedlander's efforts on behalf of the EBET offering consist of the type of activities common in any going-public transaction of a microcap company.

**4.    The Complaint Fails to Sufficiently Allege that Friedlander's Involvement with the LuxeYard Litigation Would Have Been Material.**

Even if fraud were adequately alleged here, which it is not, the Complaint fails to plead the materiality of any alleged misstatement or omission and thus falls short of pleading an essential element under the antifraud provisions of the federal securities laws. *TSC Indus. Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976); *Steadman v. SEC*, 603 F.2d

1126, 1130 (5th Cir. 1979) *aff'd*, 450 U.S. 91 (1981).  An "omitted fact is material if there is a substantial likelihood that a reasonable [investor] would consider it important in deciding how to [invest]."  *TSC Indus. Inc.*, 426 U.S. at 449; *Steadman*, 603 F.2d at 1130. In other words, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."  *TSC Indus. Inc.*, 426 U.S. at 449.  The statement or omission at issue must be significant and "[i]t is not enough that a statement is false or incomplete, if the misrepresented fact is otherwise insignificant."  *Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988).

Whether something is important to an investor does not mean that it is material. *Meyer v. Jinkosolar Holdings Co., Ltd.*, 761 F.3d 245, 250 (2d Cir. 2014) ("no duty to disclose a fact . . . merely because a reasonable investor would very much like to know that fact.") (internal quotation marks omitted).  There is no requirement under the federal securities laws to "disclose any and all material information."  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011).  Instead, the duty is to make the statements "in the light of the circumstances under which they were made, not misleading."  17 C.F.R. § 240.10b–5(b); *see Brody v. Transitional Hosp. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) ("No matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not.").  Mere silence is not misleading.  *Basic*, 485 U.S. at 239 n.17; *see also Shaw v. Digital Equipment Corp.*, 82 F. 3d 1194, 1202 (1st Cir. 1996) ("The proposition that silence, absent a duty to disclose, cannot be actionably misleading, is a fixture in federal securities law.").  For an omission

"[t]o be actionable under the securities laws," it also "must be misleading; in other words it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody*, 280 F.3d at 1006.

The undisclosed alleged connection between Friedlander and the LuxeYard Litigation would not have been material to any investor. The investments at issue in the various LuxeYard lawsuits took place nearly a decade before the EBET IPO. Friedlander was never found liable by any court and all litigation related to LuxeYard was dismissed as to him without any admissions of wrongdoing well before the EBET IPO.[6] None of this rises to an adjudication of misconduct by Friedlander in particular, and certainly nothing that would be material years later to EBET investors.

Even so, the Complaint does not allege that Friedlander concealed his identity from the prospective EBET investors he was invited to meet. (Compl. ¶104). Further, Esports' publicly-filed corporate documents identify Friedlander's father Mervyn as the incorporator, president and director of Esports from July 13, 2020 until June 2024.[7] Given identical last names, basic internet searches could have identified their connection and the lawsuits brought by LuxeYard investors against various persons including Friedlander. Undisclosed information about an unrelated proceeding that was readily

---

[6] *See e.g.,* Order, *LuxeYard, Inc. v. Kevan Casey et al.*, No. 4:12-cv-02480 (S.D. Tex. Oct. 9, 2012) (App. at Ex. 4). The appellate opinion cited in the Complaint involved a case in which Friedlander was previously dismissed as a party without any adjudication as to him. *See Klinek v. LuxeYard, Inc.*, 596 S.W.3d 437 (14th Court of App. of Tex. Feb. 13, 2020).

[7] *See* Esports Articles of Incorporation (Wyoming Sec. of State July 13, 2020) (App. at Ex. 5).

discoverable is insufficient to plead materiality. *See Bowen I*, 2023 U.S. Dist. LEXIS 168648, at *18-19 (SEC failed to plead materiality of omission in offering materials regarding unrelated SEC enforcement action imposing industry bar on defendant). It would stretch credulity to conclude that EBET's investors would have found material that a fellow investor who was neither an officer or director of EBET nor integral to its success had been sued by LuxeYard investors over long-ago investments without any finding of liability as to him.[8]

### 5. The Complaint Lacks Allegations that Friedlander Engaged in the Conduct at Issue with Requisite Scienter.

The Complaint fails to plead the requisite scienter to establish violations under Exchange Act §10(b) or Securities Act §17(a)(1). Specifically, the SEC has failed to allege adequately that Friedlander acted with "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193-94 n. 12 (1976)). The SEC must plead facts that reflect the defendant had "awareness of wrongdoing" or "knowledge of wrongdoing." *Howard v. SEC*, 376 F.3d 1136, 1142 (D.C. Cir 2004). On a motion to dismiss, "an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs,* 551 U.S. at 314; *Southland Sec. Corp. v. Inspire Ins.*

---

[8] *Compare SEC v. Blackburn*, 15 F. 4th 676, 680-81 (5th Cir. 2021) (founder's prior criminal history and allegations of misappropriation in lawsuit were material due to his leadership role in the company including appointing officers and directors, paying company bills with his stock proceeds, and communicating with foreign government on company's behalf).

*Solutions, Inc.*, 365 F.3d 353, 366 (5th Cir. 2004). Scienter must be found as to "each defendant and with respect to each alleged violation of the statute." *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1017-18 (11th Cir. 2004).

Scienter requires that the alleged misstatement or omission was made recklessly or with fraudulent intent and mere negligence will not suffice. *See Merck & Co. v. Reynolds*, 559 U.S. 633, 648-49 (2010) ("A plaintiff cannot recover without proving that a defendant made a material misstatement with an intent to deceive—not merely innocently or negligently.").[9] In the case of a non-disclosure or omission, in order to prove scienter, "it is not enough to simply show that the defendant was aware of an undisclosed fact that a court later determines is material. Rather, a plaintiff must show that the defendant was aware of both of [the] materiality [of the undisclosed fact] and that its non-disclosure would likely mislead investors." *SEC v. Gane*, No. 03-61553-CIV-SEITZ, 2005 WL 90154, at *15 (S.D. Fla. Jan. 4, 2005) (scienter not proven because failure to recognize an omission was negligent but not severely reckless) (citation and internal quotation marks omitted).

A showing of scienter must rest upon proof of either actual knowledge or, at the least, extreme recklessness "that is only one step down from intent" and demonstrates reckless disregard for the truth – that is, conduct that is "highly unreasonable" or "an

---

[9] Negligence is sufficient to establish liability under Securities Act §§17(a)(2) and 17(a)(3), and scienter is not required. *Aaron v. SEC*, 446 U.S. 680, 697 (1980) (§17(a)(3)); *SEC v. Seghers*, 298 F. App'x 319, 327 (5th Cir. 2008) (§17(a)(2)). Nevertheless, none of the alleged conduct amounts to any showing of negligence by Friedlander and these claims also should be dismissed.

extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Sundstrand Corp. v. Sun Chem. Corp.*, 553 F.2d 1033, 1045 (7th Cir. 1977), *cert. denied*, 98 U.S. 224 (1977) (citation omitted); *SEC v. McNulty,* 137 F.3d 732, 741 (2d Cir. 1998); *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1569 (9th Cir. 1990), *cert. denied*, 499 U.S. 976 (1991); *Bowen I*, 2023 U.S. Dist. LEXIS 168648, at *21; *SEC v. Felton*, No. 3:20-CV-0822-G, 2021 U.S. Dist. LEXIS 108566, at *23 (N.D. Tex. June 10, 2021) (*citing Nathenson v. Zonagen Inc.*, 267 F.3d 400, 408 (5th Cir. 2001)).

Moreover, "[q]uestions of materiality and scienter are connected. If it is questionable whether a fact is material or its materiality is marginal, that tends to undercut the argument that defendants acted with the requisite intent or extreme recklessness in not disclosing the fact." *Flannery v. SEC*, 810 F.3d 1, 9, 11-12 (1st Cir. 2015) (internal citations and quotation marks omitted) (where evidence weighing against materiality also weighed against scienter).

In this case, where materiality has not been established or is questionable at best, the Complaint fails to allege that Friedlander participated in any of the purported fraudulent misstatements or omissions with the requisite scienter. The Complaint does not allege that Friedlander participated in the preparation or filing of the Form S-1, or the Selling Shareholder Questionnaire that was ultimately submitted on behalf of Esports. The Complaint also lacks any credible allegation that Friedlander was aware of or had any intent to deceive anyone through the alleged omissions at issue in these documents.

Nor do any of the allegations amount to a pleading of extreme recklessness with respect to these omissions. There are no allegations that he engaged in any communications with the other defendants regarding efforts to hide from investors their involvement in the LuxeYard Litigation. Instead, the Complaint strains to draw a nefarious inference that such scheming occurred from the creation by each of the individual defendants of limited liability companies as vehicles to invest in the EBET IPO and to acquire and sell the domain names to EBET. While such an inference might be "reasonable" or "plausible" in a given context, in the absence of other allegations, it is not "cogent and at least as compelling as any opposing inference of nonfraudulent intent" as the Supreme Court requires. *Tellabs*, 551 U.S. at 314. Establishing a family-owned limited liability company as the vehicle to participate in an IPO investment is not abnormal or illegal. There are many non-fraudulent considerations including tax and liability issues that could reasonably motivate that approach.

Further, the Form S-1 reflects on its face that it was prepared by EBET's counsel. Friedlander acted in good faith reliance on EBET's counsel with respect to the IPO and preparation of related public filings, as well as with EBET's issuance of securities to Esports. Similarly, the transaction for the purchase and resale of internet domain names by Esports was fully disclosed in the Form S-1 prepared by the attorney and the related Domain Purchase Agreement was incorporated as an exhibit. Good faith reliance on accountants, auditors, and counsel is evidence of good faith that negates scienter. *See Howard*, 376 F.3d at 1147 ("[R]eliance on the advice of counsel . . . is simply evidence of

good faith, a relevant consideration in evaluating a defendant's scienter."); *SEC v. Caserta*, 75 F. Supp. 2d 79, 94 (E.D.N.Y. 1999).

The Complaint does not allege who directed that the Esports shares be sold and how, or whether any proceeds were distributed to Friedlander. Instead, the Complaint makes only general allegations that 72,900 shares of EBET were sold on the second day of trading by an entity Friedlander controlled. There is no allegation that the sales proceeds were ever transferred to Friedlander personally, that the warrants were ever exercised or that the debenture was ever converted. While the Complaint does allege some sales by Friedlander of stock he purchased on the open market, there are no specifics as to time, date of purchase and sale, or amount of his alleged profit. These generalized assertions are insufficient to establish scienter based on Friedlander's motive or opportunity to engage in the fraud due to the benefits he purportedly would receive. *Verges*, 716 F. Supp. 3d at 471-72 (pleading general profit motive without allegations of "concrete benefits" to be realized is insufficient to establish scienter).

## C.    The Reporting Violations Under Exchange Act Sections 13(d) and 16(a) are Belied by the Public Record

The alleged reporting violations fail to state any viable claim under Exchange Act Sections 13(d) and 16(a) and related rules as they are contradicted by publicly filed corporate records. Public filings reveal that Esports is a legally-formed limited liability company under the laws of the state of Wyoming which was established on July 13, 2020 by Mervyn Friedlander, the defendant's father, who listed his role as President and was

issued the articles of incorporation by the state of Wyoming.[10]  In a subsequent Annual Report filing for June 8, 2021, Mervyn Friedlander is identified as the President, Secretary and Treasurer of Esports, while attorney Chandler Weeks (the filer who signed the report) is identified as Esports' Fiscal Agent or Treasurer.[11]  The corporate documents filed on behalf of Esports do not reflect any replacement of Mervyn by Jonathan Friedlander as President and a Director of Esports until the filing of a June 19, 2024 Annual Report, well-after the events at issue here.[12]

Beyond conclusory allegations that Friedlander controlled Esports behind the curtain, and that he negotiated contracts on behalf of Esports (Compl. ¶12), the SEC fails to allege any indicia of actual control by Friedlander over the EBET shares that were issued to Esports.  Without such allegations, the Complaint falls short in pleading that these shares should have been consolidated with shares individually purchased by Friedlander and other defendants for the purpose of calculating beneficial ownership and triggering filing requirements for their EBET securities transactions.  Again, the ownership calculation set forth in the S-1 selling shareholder table was prepared by non-party EBET and there are no allegations that Friedlander had any involvement or any contact with that process.  That calculation as to Esports is consistent with the corporate

---

[10] *See* Esports Articles of Incorporation (Wyoming Sec. of State July 13, 2020) (App. at Ex. 5).

[11] *See* Esports 2021 Annual Report (Wyoming Sec. of State June 8, 2021) (App. at Ex. 6).

[12] *See* Esports 2024 Annual Report (Wyoming Sec. of State June 19, 2024) (App. at Ex. 7).

records filed with the Wyoming Secretary of State at that time, and the Selling Shareholder Questionnaire that was executed by Ms. Dumas on behalf of Esports. The SEC does not allege that Friedlander's father or his wife did not serve in the management of Esports or lacked authority to act on behalf of Esports, including with respect to the disposition of EBET shares. As reflected in the Form S-1, the Domain Purchase Agreement with EBET was executed on behalf of Esports as the seller by its president, and the resulting compensation of common stock, warrants and the convertible debenture was issued to Esports, the properly disclosed selling shareholder of EBET.[13] The disclosure forms were thus compliant with applicable law. *See* 17 CFR §§229.507.

## D. Failure to Plead Predicate Claims Requires Dismissal of Exchange Act Section 20(b) Count and Unjust Enrichment Claim Against Relief Defendant Esports

The Exchange Act §20(b) charge against Friedlander rests on an allegation that he "knowingly or recklessly" arranged for Ms. Dumas, whom he had named as a "purported officer and director" of Esports, to execute a "false" Selling Shareholder Questionnaire on behalf of Esports. (Compl. ¶¶163-64). This claim is derivative of the defective predicate securities fraud charges. The absence of a primary violation claim of the predicate securities fraud claims is fatal to this secondary liability claim. *See Knutson v. Harris*, 2018 WL 4281557, at *6 (N.D. Tex. Sept. 6, 2018) (dismissing §20(b) action for failure to plead the predicate §10(b) claim).

---

[13] Domain Purchase Agreement, at Ex. 10.8 of EBET Form S-1 (Mar. 10, 2021) (App. at Ex. 8).

The SEC's claims for unjust enrichment against Relief Defendant Esports also fail. The SEC does not allege facts that would permit this court to pierce the corporate veil of the entity to access a corporation's assets due to the purported misconduct of an individual defendant. Beyond the conclusory allegation that Friedlander had "dispositive control" over Esports' stock ownership in EBET, the Complaint pleads absolutely no facts that would allow a court to overlook the corporate form and seek disgorgement of proceeds resulting from legitimate stock transactions on behalf of Esports. *Janvey v. Adams*, 588 F.3d 831, 834-5 (5th Cir. 2009) (affirming dismissal of claims since relief defendants had a "legitimate ownership interest"). The claims for secondary liability cannot be sustained.

## IV.    CONCLUSION

The Complaint is devoid of allegations to tie Friedlander to alleged fraud or inaccurate disclosures associated with trading in EBET securities. For the foregoing reasons, the Court should dismiss all counts of the Complaint asserted against Friedlander and Relief Defendant Esport, with prejudice. A proposed order is attached hereto.

Dated:     February 21, 2025

Respectfully submitted,

K&L GATES LLP

By:   */s/Stephen G. Topetzes*
Stephen G. Topetzes
(admitted *pro hac vice*)
Stavroula E. Lambrakopoulos,
(admitted *pro hac vice*)
1601 K Street, N.W.
Washington, DC 20006
Tel: 202.778.9328
Fax: 202.778.9100
Stephen.topetzes@klgates.com
Stavroula.lambrakopoulos@klgates.com

Beth W. Petronio
Attorney-in-Charge
Texas Bar No. 00797664
Federal Id. No. 29628
1717 Main Street, Suite 2800
Dallas, TX 75201-7342
Tel: (214) 939.5815
Fax: (214) 939.5849
Beth.petronio@klgates.com
*Attorneys for Defendant Jonathan*
*Friedlander and Relief Defendant*
*Esports Group, Inc.*

## CERTIFICATE OF CONFERENCE

I hereby certify that on January 8, 2025, I and co-counsel Stephen G. Topetzes met and conferred by video conference with counsel for Plaintiff Securities and Exchange Commission regarding Defendant Jonathan Friedlander's and Relief Defendant Esports Group, Inc.'s grounds for dismissal of the Complaint as to them. However, the parties were unable to resolve the issues raised in this motion and accordingly, they remain disputed and opposed.

*/s/Stavroula E. Lambrakopoulos*
Stavroula E. Lambrakopoulos

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of February 2025, a copy of the foregoing Defendant Jonathan Friedlander and Relief Defendant Esports Group, Inc.'s Motion to Dismiss Complaint and Memorandum of Points and Authorities in Support thereof, Appendix, and proposed order were served on all counsel of record in accordance with the Federal Rules of Civil Procedure via the Court's ECF system.

*/s/ Stavroula E. Lambrakopoulos*
Stavroula E. Lambrakopoulos, Esq.