# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE | § | |
| COMMISSION, | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | Civil Action No. 4:24-cv-02971 |
| | § | |
| JONATHAN FRIEDLANDER, *et al.*, | § | |
| *Defendants.* | § | |

## <u>TABITHA'S REPLY IN SUPPORT OF MOTION TO DISMISS</u>

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENTS & AUTHORITIES ..................................................................................... 2

I. THE SEC'S ATTEMPTED SUBSTITUTION WAS UNTIMELY (ALL COUNTS). ............... 2

II. THE CLAIMS DO NOT SURVIVE AND DISGORGEMENT AGAINST TABITHA WOULD
BE UNCONSTITUTIONAL (ALL COUNTS). .................................................................. 2

III. THE SEC FAILS TO PLEAD A PRIMARY SECURITIES LAW VIOLATION UNDER
SECTION 17(A) OR SECTION 10(B) AND RULE 10B-5(A) AND (C) (COUNTS I & II).... 6

    A. The SEC Gets the Law on Scheme Liability Wrong..................................... 6

    B. The SEC Fails to Allege a Distinct Deceptive Act to State Scheme Liability.
............................................................................................................... 8

    C. The Non-Disclosure of the LuxeYard Litigation Cannot Constitute a
Material Misstatement or Omission Made by Kevan. ................................ 12

    D. The SEC Fails to Allege Kevan's Requisite Scienter................................. 14

IV. THE SEC DOES NOT PLEAD AN INDEPENDENT NEGLIGENCE THEORY (COUNT I). 16

V. THE SECTION 13(D) CLAIMS ARE IMPLAUSIBLE (COUNT IV)................................. 17

VI. THE SEC FAILS TO PLEAD A SECONDARY SECTION 20(B) CLAIM (COUNT VII)..... 17

VII. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST THE RELIEF
ENTITIES (COUNT VIII)............................................................................................ 18

CONCLUSION ............................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Receivable Fin. Co.*,
  501 F.3d 398 (5th Cir. 2007) ..................................................................... 4

*In re Baker Hughes Secs. Litig.*,
  136 F. Supp. 2d 630 (S.D. Tex. 2001) ....................................................... 14

*Carlton v. Cannon*,
  184 F.Supp.3d 428 (S.D. Tex. 2016) .......................................................... 16

*In re Dell Inc., Sec. Litig.*,
  591 F. Supp. 2d 877 (W.D. Tex. 2008) ....................................................... 14

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
  2021 WL 12327975 (C.D. Cal. Aug. 30, 2021) ........................................... 11

*Knutson v. Harris*,
  2018 WL 4281557 (N.D. Tex. Sept. 6, 2018) .............................................. 17

*Liu v. SEC*,
  591 U.S. 71 (2020) ............................................................................. 3, 4, 5

*Lorenzo v. SEC*,
  587 U.S. 71 (2019) ................................................................................. 6, 7

*In re Luxeyard Inc.*,
  556 B.R. 627 (Bankr. D. Del. 2016) ............................................................ 13

*Markman v. Whole Foods Market, Inc.*,
  2016 WL 10567194 (W.D. Tex. Aug. 19, 2016) .......................................... 13

*Melder v. Morris*,
  27 F.3d 1097 (5th Cir. 1994) ..................................................................... 16

*Nano Dimension Ltd. v. Murchinson Ltd.*,
  681 F.Supp.3d 168 (S.D.N.Y. 2023) ............................................................ 17

*Prevost v. Gratz*,
  19 U.S. 481 (U.S. 1821) ................................................................................ 3

*SEC v. Barton, et al.*,
No. 3:22-cv-02118-X (N.D. Tex. Sept. 23, 2022) ........................................................ 18

*SEC v. Beck*,
2024 WL 1626280 (C.D. Cal. Mar. 26, 2024) ............................................................ 16

*SEC v. Blackburn*,
15 F.4th 676 (5th Cir. 2021) ........................................................................................ 5

*SEC v. Blatt*,
583 F.2d 1325 (5th Cir. 1978) ..................................................................................... 3

*SEC v. Carter, et al.*,
No. 4:19-cv-00100-ALM-KPJ (N.D. Tex. Jan. 25, 2019) ......................................... 18

*SEC v. Daifotis*,
2011 WL 2183314 (N.D. Cal. June 6, 2011) ............................................................. 12

*SEC v. Farmer*,
2015 WL 5838867 (S.D. Tex. Oct. 7, 2015) .............................................................. 11

*SEC v. Faulkner, et al.*,
No. 3:16-cv-01735-D (N.D. Tex. Aug. 11, 2016) ...................................................... 18

*SEC v. Fiore*,
416 F. Supp. 3d 306 (S.D.N.Y. 2019) .................................................................. 11, 16

*SEC v. Gallagher*,
2023 WL 6276688 (S.D.N.Y. Sept. 26, 2023) ........................................................... 16

*SEC v. Kahlon*,
873 F.3d 500 (5th Cir. 2017) ....................................................................................... 4

*SEC v. Killion*,
2017 WL 7052310 (S.D. Tex. Mar. 24, 2017) ........................................................... 12

*SEC v. Mapp*,
2017 WL 5230358 (E.D. Tex. Nov. 9, 2017) .............................................................. 8

*SEC v. Mapp*,
240 F.Supp.3d 569 (E.D. Tex. 2017) ........................................................................... 8

*SEC v. McKnight, et al.*,
No. 3:23-cv-00641-L (N.D. Tex. Mar. 23, 2023) ...................................................... 18

*SEC v. Mueller*,
2024 WL 400897 (W.D. Tex. Jan. 11, 2024) ................................................. 7

*SEC v. Narayan*,
2017 WL 4652063 (N.D. Tex. Aug. 28, 2017) ............................................... 8

*SEC v. Page*,
2024 WL 4468040 (E.D.N.Y. Sept. 13, 2024) .......................................... 9, 10

*SEC v. Rio Tinto plc*,
41 F.4th 47 (2d Cir. 2022) .............................................................................. 7

*SEC v. Stack*,
2024 WL 4199017 (5th Cir. Sept. 16, 2024) ................................................. 4

*SEC v. Stubos*,
634 F. Supp. 3d 174 (S.D.N.Y. 2022) ......................................................... 10

*SEC v. Verges*,
716 F. Supp. 3d 456 (N.D. Tex. 2024) .................................................... 7, 10

*SEC v. Verges, et al.*,
No. 3:23-cv-02146-D (N.D. Tex. Sept. 26, 2023) ...................................... 18

*SEC v. World Tree Fin., L.L.C.*,
43 F.4th 448 (5th Cir. 2022) ......................................................................... 3

*Stephens v. Uranium Energy Corp.*,
2016 WL 3855860 (S.D. Tex. July 15, 2016) .............................................. 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ..................................................................................... 15

*U.S. v. Hall*,
48 F. Supp. 2d 386 (S.D.N.Y. 1999) .......................................................... 12

## Statutes & Other Authorities

Black's Law Dictionary (12th ed. 2024) ........................................................ 13

Fed. R. Civ. P. 9(b) ....................................................................................... 13

Fed. R. Civ. P. 12(b)(6) ................................................................................... 1

Fed. R. Civ. P. 25 .................................................................................... 1, 2, 6

Securities Exchange Act of 1933 ................................................................*passim*

Securities Exchange Act of 1933 ................................................................*passim*

Pursuant to Rule 12(b)(6), Defendant and Widow Tabitha Casey ("**Tabitha**"), in her capacities as executor of Kevan Casey's estate and trustee of the Casey Living Trust, as well as Relief Defendants Vertical Holdings, LLC, Dover Hill, LLC, GSK Strategies, LLC, and Carmel Ventures, LLC files this reply brief in support of her motion to dismiss ("**Motion**") (Dkt. 116) the Amended Complaint brought by the SEC.[1]

## PRELIMINARY STATEMENT

The SEC's opposition brief (the "**Opposition**") (Dkt. 117) does not address the failures that warrant dismissal of the Amended Complaint. The Opposition ignores Tabitha's arguments; concedes key facts; injects new factual allegations to try to cure the Amended Complaint; attempts to re-paint established U.S. Supreme Court precedent on scheme liability; and finally, does not dispute that its entire theory hinges on the supposed non-disclosure of decade old litigation in which Kevan Casey ("**Kevan**") prevailed on every claim asserted against him.

At the outset, the SEC misconstrues the Motion and demonstrates its fundamental misunderstanding of the law by erroneously contending "[r]egardless of the outcome of [the M]otion, this case will proceed to discovery against Casey . . .." Opp. at p. 6. The SEC ignores that the non-survivability and constitutionality of the SEC's disgorgement, as well as Rule 25's mandate, sought dismissal of all "the SEC's claims against Tabitha should be dismissed." Mot. at p. 17; *see also* Tabitha's Proposed Order, Dkt. 116-2 ("all claims

---

[1] Capitalized terms having the meanings set forth in the Motion and any references to page numbers are to the ECF stamped filing page numbers. Tabitha adopts the arguments made by the other defendants in connection with their motions to dismiss the Amended Complaint to the extent that they are applicable.

against Defendant Tabitha Casey, and Relief Defendants Vertical Holdings, LLC, Dover Hill, LLC, GSK Strategies, LLC, and Carmel Ventures, LLC are dismissed with prejudice").

The SEC's Amended Complaint is defective for several, independent reasons. Namely, the Opposition confirms that the SEC's strained theory hinges on a purported omission related to the LuxeYard litigation. Not only did Kevan prevail in the lawsuit in every claim adjudicated against him, but also, that sole factual predicate cannot constitute the SEC's omnibus source of (i) misrepresentation, (ii) motive, and (iii) deceptive or manipulative conduct for scheme liability. Dismissal of Tabitha is warranted.

## ARGUMENTS & AUTHORITIES

### I. THE SEC'S ATTEMPTED SUBSTITUTION WAS UNTIMELY (ALL COUNTS).

Rule 25 informs courts what to do when a party to a pending lawsuit dies. The SEC's attempt to substitute was 43 days late. In sum, the SEC failed to file a motion to substitute "within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed." Fed. R. Civ. P. 25(a). The Opposition does not, and cannot, dispute that Rule 25 is dispositive as to all claims asserted against Tabitha.

### II. THE CLAIMS DO NOT SURVIVE AND DISGORGEMENT AGAINST TABITHA WOULD BE UNCONSTITUTIONAL (ALL COUNTS).

The SEC has not pled any factual basis for relief against Tabitha. Again, the SEC has not pled (and would be unable to prove) that any "ill-gotten gains" flowed from Kevan or the Relief Entities to Tabitha. *See* Am. Compl. ¶ 9. To permit disgorgement in this context would constitute an impermissible penalty.

200 years ago, the Supreme Court in *Prevost v. Gratz* condemned what the SEC is doing here:

> The most that can fairly be expected in such cases, if the parties are living, from the frailty of memory, and human infirmity, is, that the material facts can be given with certainty to a common intent; and, if the parties are dead, and the cases rest in confidence, and in parol agreements, the most that we can hope is to arrive at probable conjectures, and to substitute general presumptions of law, for exact knowledge. Fraud, or breach of trust, ought not lightly to be imputed to the living; for the legal presumption is the other way; and as to the dead, who are not here to answer for themselves, it would be the height of injustice and cruelty to disturb their ashes, and violate the sanctity of the grave, unless the evidence of fraud be clear, beyond a reasonable doubt.

19 U.S. 481, 498 (U.S. 1821). And again, the Supreme Court in *Liu v. SEC* cautioned courts against expanding disgorgement in ways that "test the bounds of equity practice," such as "by . . . imposing joint-and-several disgorgement liability, and declining to deduct even legitimate expenses from the receipts of fraud" and that disgorgement could turn the remedy into a penalty that is "at odds" with traditional equitable principles requiring "individual liability for wrongful profits." 591 U.S. 71, 85, 90 (2020). The Fifth Circuit has held that "*Liu* is a seminal case that has, and will continue to, shape disgorgement awards." *SEC v. World Tree Fin., L.L.C.*, 43 F.4th 448, 466 (5th Cir. 2022).

Contrary to *Liu*, the SEC urges this Court to adopt the blanket rule: "the Fifth Circuit has expressly addressed whether a SEC claim for disgorgement is remedial and held that it is." Opp. at p. 9. But the SEC's position is belied by a long line of Fifth Circuit precedent, including its own authority. *See, e.g.*, *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978) ("The court's power to order disgorgement extends only to the amount with interest by which the defendant profited from his wrongdoing. Any further sum would constitute a

penalty assessment.");[2] *SEC v. Kahlon*, 873 F.3d 500, 509 (5th Cir. 2017) ("The court's power to order disgorgement extends only to the amount with interest by which the defendant profited from his wrongdoing. Any further sum would constitute a penalty assessment."). "Disgorgement wrests ill-gotten gains ***from the hands of a wrongdoer***. It is an equitable remedy ***meant to prevent the wrongdoer from enriching himself*** by his wrongs." *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 413 (5th Cir. 2007) (quoting *SEC v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993)) (emphasis added). The SEC's disgorgement authority is not unlimited as the SEC suggests. It is a context-specific analysis and pleadings do matter.

"Holding [Tabitha] liable for funds [s]he did not keep or benefit from does not constitute a reasonable approximation of a defendant's unjust enrichment, as required by *Liu* and [] precedent." *SEC v. Stack*, 2024 WL 4199017, at *3–4 (5th Cir. Sept. 16, 2024) ("On remand, the district court should recalculate a proper disgorgement award plus interest limited to the funds that Stack received and benefited from.").

The SEC admits the "requirement that disgorgement be [i] limited to net profits and [ii] an award for victims." Opp. at p. 9 (citing *Liu*, 591 U.S. 71). But the SEC continues to lump all Defendants together. *See id.* ("The $56 million figure referenced in the Complaint is alleged to be the amount by which defendants 'profited.'"). This is particularly problematic when the Amended Complaint names four Defendants (both those accused of wrongdoing and those not accused of any wrongdoing, like Tabitha) and 9

---

[2] *See* Opp. at p. 8 (citing *Blatt*, but omitting "[a]ny further sum would constitute a penalty assessment.").

Relief Defendants; yet the SEC attempts to attribute the alleged "$56 million figure referenced in the Complaint" as to every Defendant without distinction. Further underscoring this pleading deficiency, as the Motion stated, "[t]he SEC's disclosures do not provide any 'computation' of any amount [of ill-gotten gains] as to any Defendant." Mot. at p. 17. The SEC does not respond to (or reference) its deficient Rule 26 Initial Disclosures but again makes the general assertion to the "$56 million figure referenced in the Complaint." Opp. at p. 9. The SEC fails to satisfy *Liu*'s first requirement. *Accord SEC v. Blackburn*, 15 F.4th 676, 682 (5th Cir. 2021) (affirming district court disgorgement order where district court "individually assessed each defendant's gain").

The SEC also fails to satisfy *Liu*'s second requirement. The SEC generally avers that "the Complaint identifies the investors who were victimized by the alleged conduct." Opp. at pp. 9–10 (citing Am. Compl. ¶ 1). The Amended Complaint does not provide any more specificity or any identifiable investors. *See* Am. Compl. ¶ 1 (". . . harming investors who were deprived of disclosures required by law to ensure fair and open access to material information about the companies, their promoters, and the persons involved in these companies' registered securities."). But crucially, the SEC does not make assurances that any amount sought to be disgorged will be "awarded for victims." *Blackburn*, 15 F.4th at 682 ("the issue *Liu* left open"). Instead, the SEC would have the Court strip a grieving widow of any money she has left and fill up the Treasury's coffers—all without any allegations of wrongdoing as to Tabitha, without pleading each Defendant's ill-gotten gains, and without assurances that the sought disgorgement is to be distributed to identifiable victims.

Again, this is a novel instance where: "(i) a defendant died; (ii) an estate untimely substituted by Rule 25; (iii) no allegation that any 'ill-gotten gains' flowed to the estate; (iv) no identifiable victims; and (v) the amount sought to be recovered is not proportionate to any alleged harm." Mot. at p. 17. In this context and as plead, the SEC's sought disgorgement against Tabitha is punitive as a matter of law rather than remedial. Accordingly, the SEC's claims against Tabitha should be dismissed.

## III.  THE SEC FAILS TO PLEAD A PRIMARY SECURITIES LAW VIOLATION UNDER SECTION 17(A) OR SECTION 10(B) AND RULE 10B-5(A) AND (C) (COUNTS I & II).

### A.  The SEC Gets the Law on Scheme Liability Wrong.

The SEC mischaracterizes the Motion and the law to the Court. At the outset, the SEC falsely and misleadingly states that "[r]elying on outdated caselaw, [Tabitha] contends that the Fifth Circuit does not recognize scheme liability claims." Opp. at p. 12 (citing Mot. at p. 12). This ignores the Motion's recitation of the elements for scheme liability claims from a recent 2024 case, and its holding that the pleading of a scheme must "encompass[] conduct distinct from the misrepresentations or omissions that give rise to Rule 10b-5(b) liability." Mot at pp. 17–18 (quoting *SEC v. Verges*, 716 F. Supp. 3d 456, 466 (N.D. Tex. 2024)). Here, the SEC's scheme liability claim is an improper attempt to back-door an omission claim into a scheme liability claim and should be dismissed.

The SEC's assertion that "the proper response is 'so what?'" is concerning and reflects its misunderstanding of *Lorenzo v. SEC*, 587 U.S. 71 (2019). Opp. at p. 14. In *Lorenzo*, the Supreme Court allowed a scheme liability claim based on an omission to proceed because the SEC also alleged additional wrongful conduct, specifically that the

defendant disseminated the misstatements at issue. *Lorenzo*, 587 U.S. at 82. There, the Court's decision hinged on the fact that the defendant knowingly "sent false statements directly to investors, invited them to follow up with questions, and did so in his capacity as vice president of an investment banking company." *Id.* at 79. Here, unlike *Lorenzo*, the SEC does not allege, nor could it, that Kevan disseminated any false statements.

The Second Circuit expressly rejected the SEC's expansive reading of *Lorenzo*: whether "misstatements and omissions form the basis for scheme liability." *SEC v. Rio Tinto plc*, 41 F.4th 47, 53 (2d Cir. 2022). The court recognized that there may be "leakage" between the subsections of 10(b), but "the divisions between the subsections remain distinct." *Id.* at 49. There must be "something extra" which in *Lorenzo* (and unlike here) was the defendant's direct dissemination of misstatements to investors. "*Lorenzo* signaled that it was not giving the SEC license to characterize every misstatement or omission as a scheme." *Id.* at 54.

District courts in the Fifth Circuit have followed post-*Lorenzo* have held that the SEC must allege acts beyond omissions to plead a scheme liability claim. *See Verges*, 716 F. Supp. 3d at 466 (noting Texas district courts follow Second, Eighth, and Ninth Circuits, holding a scheme liability claim must encompass conduct distinct from misrepresentation or omission giving rise to Rule 10b-5(b) liability); *SEC v. Mueller*, 2024 WL 400897, at *8 (W.D. Tex. Jan. 11, 2024) ("[A]n actionable scheme liability claim also requires something *beyond* misstatements and omissions, such as dissemination.") (quoting *Rio Tinto*, 41 F.4th at 48 (emphasis in original)).

## B.    The SEC Fails to Allege a Distinct Deceptive Act to State Scheme Liability.

The SEC attempts to denigrate the Fifth Circuit's holding in *Regents of University of California v. Credit Suisse First Boston (USA), Inc.*—that "deceptive" acts under Section 10(b) are only those in which "a defendant fail[s] to satisfy a duty to disclose material information to a plaintiff"—as "a case discussing the reliance requirement of a private securities class action" that "is not applicable here."  Opp. at pp. 13–14.  But district courts in the Fifth Circuit routinely rely on *Regents*' narrow definition of "deceptive acts" in SEC enforcement actions.  *See, e.g.*, *SEC v. Narayan*, 2017 WL 4652063, at *6 n.4 (N.D. Tex. Aug. 28, 2017) ("'[D]eception' within the meaning of § 10(b) requires that a defendant fail to satisfy a duty to disclose material information to a plaintiff.");  *SEC v. Mapp*, 240 F.Supp.3d 569, 585 (E.D. Tex. 2017) (same);  *SEC v. Mapp*, 2017 WL 5230358, at *5 (E.D. Tex. Nov. 9, 2017) (same).

This is not the first time the SEC has attempted to thrust an overly-expansive definition on the court.  In *Regents*, the Fifth Circuit reversed the district court and found that the "district court's definition of 'deceptive acts,'" which in turn adopted the SEC's *amicus curiae* position, "sweeps too broadly."  *Id.*  The Fifth Circuit held that "the SEC's proposed test"—that "primary liability attaches to anyone who engages in a transaction whose principal purpose and effect is to create a false appearance of revenues"—"(by which we are not bound) is too broad to fit within the contours of § 10(b)."  *Id.* at 386–87.  The SEC's Opposition re-urges its overly broad definition and ignores precedent set by *Regents*.  *See id.*, 482 F.3d at 390 (quoting *Hundahl v. United Benefit Life Ins. Co.*, 465 F.

Supp. 1349, 1360 (N.D. Tex. 1979) (Higginbotham, J.) ("manipulative acts" means "creating the false impression that certain market activity is occurring when in fact such activity is unrelated to actual supply and demand").

Here, the SEC attempts to clarify in its Opposition that the following two "examples" are the purported deceptive or manipulative acts the Amended Complaint relies on—neither is cognizable under *Regents*:

(1)     Kevan's use of nominees to hold shares; and

(2)     Kevan's alleged stock promotion "while failing to disclose selling or an intent to sell those shares."

*See* Opp.at pp. 14–16.

First, none of the cases cited by the SEC stand for the broad proposition that "defendant's use of nominees to hold and sell their shares is deceptive conduct that creates" scheme liability. Opp. at p. 15. For example, in *SEC v. Page*, the SEC extensively alleged that the defendant "coordinated with another person to author false and misleading opinion letters to enable stock certificates in these stocks to be issued without a restricted legend that would prevent the shares from being deposited with a broker dealer and sold to investors in the public market," at the defendant's "direction, the nominees transferred the unrestricted stock to foreign entities for the purpose of selling them, the transfers taking place via entities that included the Corporate Defendants," and "used tactics, such as making manipulative purchases and sales of stock and hiring boiler room operators to pressure investors into purchasing stocks—without disclosing that he had hired them and had ownership interests in those stocks—to inflate the price of the stocks so he could sell

them at a profit." 2024 WL 4468040, *7 (E.D.N.Y. Sept. 13, 2024).[3] The use of nominees

is legal, is not inherently deceptive, and serve numerous legitimate purposes.

Here, the alleged purpose of nominees was to help Kevan conceal his identity from

investors and distance himself from the LuxeYard Litigation. Opp. at p. 15. But use of

nominees was not an independent and inherently deceptive act apart from his alleged

failures to disclose. Moreover, the SEC's theory that Kevan used nominees to hide the

LuxeYard Litigation makes no sense when Casey Nominee # 1 is also alleged to be a co-

defendant in the LuxeYard Litigation and was also alleged to be identified by name in the

published appellate opinion. *See* Am Compl. ¶¶ 41, 77.

Second, without supporting authority, the SEC argues that it was an independently

deceptive act for Kevan to sell, or intend to sell stock during Soliton's promotional

campaign. Opp. at pp. 15–16. Here, the Amended Complaint is clear that the alleged

promoter was ***hired and compensated by Soliton*** shortly after its IPO to "introduce the

company" to investors. Am. Compl. ¶¶ 59–60, 66. The promoter promoted Soliton

through truthful communications obtained directly from Soliton. *See* Am. Compl. ¶¶ 61,

64, 91. The promoter was initially compensated by Soliton in shares and later received

---

[3] The SEC's other cited cases include detailed allegations in support of a scheme liability finding, not (as the SEC does here) the use of nominees standing alone. *See SEC v. Stubos*, 634 F. Supp. 3d 174, 201 (S.D.N.Y. 2022) (finding "something extra" where the defendant "directed Sharp Group traders via encrypted messages to strategically buy stock to inflate its price, and then secretly sold his stock without making the disclosures required by federal law and while pumping up the price of the stock through misleading disclosures made by stock promoters paid with money from him that was funneled through intermediary nominees"); *Verges*, 716 F.Supp.3d at 469 (detailing a "complex series of transactions," "strategically and deceptively timed," "in close coordination with [defendant]," "to capitalize on his efforts to 'pump' the value of the penny stock companies' shares," including $12.5 million in kickbacks).

additional shares from Defendant James and Kevan to continue distribution of truthful communications about Soliton. *Id.* ¶¶ 66, 90–91. This was a lawful promotional campaign to educate investors about a newly public and ultimately, successful company.[4]

Further, the cases cited by the SEC are inapposite.[5] For instance, in *SEC v. Farmer*, the court held that summary judgment was proper because the defendant "played a leading role in ***every aspect*** of [the company's] affairs that were pertinent to setting up and executing a pump-and-dump scheme." 2015 WL 5838867, at *14–16 (S.D. Tex. Oct. 7, 2015) (emphasis added). The court in *Farmer* did not rule in favor of the SEC on the scheme liability claims because the defendant was heavily involved in the initial public offering process. Rather, the court held that the defendant, who had *de facto* control over the issuer, engaged in two distinct deceptive acts: (i) manipulating the IPO by engaging in sham transactions or straw purchases (which created the false appearance of *bona fide* purchases); and (ii) disseminating false information about the issuer's business endeavors. *Id.* at *15. Here, the SEC has not alleged that Kevan engaged in sham transactions.

Courts "have uniformly rejected the premise that lawfully engaging a promotional firm, without misleading information dissemination, is 'manipulation' of a stock price in violation of securities laws." *In re Genius Brands Int'l, Inc. Sec. Litig.*, 2021 WL

---

[4] *See* Mot. at p. 24 (Soliton "never traded materially below its $5 IPO price and was sold approximately two years later to AbbVie, Inc., one of the world's largest biotech companies, in an all-cash deal priced at $22.60 per share").

[5] This case is a far cry from *SEC v. Fiore*, in which the court found deceptive conduct where there was rampant market manipulation, including marking the close, matched and wash trades, and painting the tape, combined with a misleading promotional campaign designed to falsely reflect the level of market interest in the stock. 416 F. Supp. 3d 306 (S.D.N.Y. 2019).

12327975, at *7 (C.D. Cal. Aug. 30, 2021); *see also Stephens v. Uranium Energy Corp.*, 2016 WL 3855860, at *14 (S.D. Tex. July 15, 2016) ("A company may advertise or promote its stock without violating the securities laws."); *SEC v. Daifotis*, 2011 WL 2183314, at *9 (N.D. Cal. June 6, 2011) (recognizing in dismissing a scheme liability claim that "marketing of an ultra-short bond fund was not inherently deceptive conduct"); *U.S. v. Hall*, 48 F. Supp. 2d 386, 387 (S.D.N.Y. 1999) (finding company may hire legitimate stock promoters to educate public).

Accordingly, because the SEC fails to identify a cognizable deceptive act, distinct from the alleged misstatement, the SEC's claims under Rules 10b-5(a) and (c) and Section 17(a)(1) and (a)(3) must be dismissed. *See SEC v. Killion*, 2017 WL 7052310, at *9 (S.D. Tex. Mar. 24, 2017) (dismissing scheme liability claims where "no 'scheme' can be discerned" beyond alleged misrepresentations and omissions).

### C. The Non-Disclosure of the LuxeYard Litigation Cannot Constitute a Material Misstatement or Omission Made by Kevan.

The SEC does not dispute that its case hinges on its "primary allegation [] that Kevan 'deliberately concealed his involvement from the investing public for a specific reason: the LuxeYard Litigation." Mot. at p. 10 (quoting Am. Compl. ¶ 38). This theory is particularly nonsensical here, where: (i) the SEC admits "the court rejected the only claim brought against Kevan Casey personally"; (ii) Kevan was the "prevailing" party under law and commonsense; (iii) the SEC still fails to identify any precedent establishing that prevailing in litigation is a disclosable event material to investors; (iv) the SEC injects new allegations in its Opposition and its general reference to "38 private lawsuits" does

not satisfy Rule 9(b); and (v) the primary lawsuit that the SEC's entire theory hinges on was recently dismissed for want of prosecution.[6]

First, the SEC expressly concedes that "the only claim directly against Kevan Casey was whether he made misstatements, or caused harm, to one individual plaintiff" was rejected by the court. *See* Opp. at p. 19. The SEC further concedes that Kevan settled a lawsuit with an entity, without any reference to terms of settlement or any findings of wrongdoing. *See id.*

Second, the SEC alleges that Kevan was "far from 'prevailing'" because he settled, Opp. at p. 19. But "none of the settling defendants admitted liability in connection with the underlying action, and [Kevan] testified that he settled in order to, among other things, avoid the cost of litigation." *In re Luxeyard Inc.*, 556 B.R. 627, 634 (Bankr. D. Del. 2016). And as to the case that was adjudicated, Kevan was the "prevailing party" as to all claims asserted against him. *See* Black's Law Dictionary (12th ed. 2024) ("A party in whose favor a judgment is rendered."); *see also* Dkt. 78-2 at p. 2 (finding plaintiff was "not entitled to any recovery from [Kevan] Casey.").

Third, despite the repeated assertions in the Motion, the SEC still fails to respond to and identify any precedent that requires disclosure of success that prevailing in litigation is a disclosable event material to investors. *See generally* Opp. (failing to distinguish Motion's authority: (i) *Markman v. Whole Foods Market, Inc.*, 2016 WL 10567194, at *8

---

[6] Attached hereto as **Exhibit A** is *Alattar, Khaled, et al., v. Casey, Kevan, et al.*,113th Judicial District of Harris County's signed order dated June 13, 2025, dismissing the case for want of prosecution.

(W.D. Tex. Aug. 19, 2016); and (ii) *In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d 877, 911 n.4 (W.D. Tex. 2008)).

Fourth, the SEC introduces in its Opposition the new allegation that "[Tabitha]'s assertion that Kevan Casey was the 'prevailing' party in the LuxeYard Litigation is premised on a cherry-picked victory in just one (out of 38) LuxeYard-related private lawsuits in federal and state courts across four states." Opp. at p. 19.[7]  The Amended Complaint provides no particulars regarding which and whether any of these 38 lawsuits across four states involved Kevan as a party or made any claims against him.  *See* Am. Compl. ¶ 39.

Finally, the primary lawsuit that the SEC's entire theory hinges on was recently completely dismissed for want of prosecution on June 13, 2025.  *See* Ex. A.  It is unclear how a case that was ultimately dismissed for want of prosecution could ever constitute a material disclosure for the investing public that the SEC is intended to protect—let alone the lynchpin of a $56 million disgorgement case.

### D.     The SEC Fails to Allege Kevan's Requisite Scienter.

To meet its pleading burden for fraud under Exchange Act Section 10(b) and Securities Act Section 17(a)(1), the SEC must allege facts as to Kevan that give rise to an inference of scienter.  The SEC does not dispute its circular reasoning and "relies on a manufactured motive theory that Kevan sought to conceal his identity because of the

---

[7] A party may not introduce in its brief allegations that have not been pled in its live pleading.  *See In re Baker Hughes Secs. Litig.*, 136 F. Supp. 2d 630, 646 (S.D. Tex. 2001) ("it is axiomatic that [a] Complaint cannot be amended by the briefs in opposition to a motion to dismiss").

LuxeYard litigation." Mot. at p. 25. The Amended Complaint says as much. *See* Am. Compl. ¶ 38.

In its Opposition, the SEC attempts to divert attention from this circular deficiency by arguing the sufficiency of its pleadings regarding Kevan's use of a legal nominees, coupled with allegations that he had expressed concerns about being identified with Casey as a "group," and domain name transactions with EBET. Opp. at pp. 21–22. But these thin assertions are inadequate to establish that Kevan acted with "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193–94 n.12 (1976)). On a motion to dismiss, "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.

Importantly, it is clear from the Amended Complaint that Kevan's identity was known to EBET's officers and founders with whom he is alleged to have dealt in the course of assisting the company with its IPO, as well as with respect to a publicly-disclosed Domain Purchase Agreement. Based on the Amended Complaint's allegations, Kevan was invited by EBET to meet with prospective investors and openly participated in discussions with the underwriters and EBET founders and officers regarding the IPO. *See* Am. Compl. ¶¶ 114–15. Kevan is not alleged to have been involved in preparing, authoring, reviewing, approving, or signing EBET's registration statement or any of the company's disclosures to its potential investors. *See* Am. Compl. ¶ 118 ("In drafting the registration statement, EBET used . . .."). The Amended Complaint thus lacks any credible allegation that Kevan

was aware of or had any intent to deceive anyone through the alleged omissions at issue in these documents. Nor do any of the allegations amount to a pleading of extreme recklessness with respect to these omissions.

The SEC also ignores Fifth Circuit case law holding that scienter cannot be inferred simply from Kevan's sale of stock, efforts to enhance the value of a security through truthful stock promotions, or assistance in public filings. *See*, *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994) (holding that a motive to successfully bring to fruition offerings and enhance the value of securities was insufficient to establish inference of fraud). In contrast to *Recycle Tech* and other authority cited by the SEC,[8] investing in an issuer as Kevan did, negates any purported intent to defraud investors. *See Carlton v. Cannon*, 184 F.Supp.3d 428, 481 (S.D. Tex. 2016) (increasing stock holdings during the relevant period negates scienter).

Accordingly, the SEC fails to adequately allege Kevan's scienter to state a claim.

## IV.    THE SEC DOES NOT PLEAD AN INDEPENDENT NEGLIGENCE THEORY (COUNT I).

The SEC does not dispute that a "tag-along claim" will fail for the same reasons afflicting a Rule 10b-5(c) claim, with the exception of the requisite mental state. Mot. at pp. 27–28. Rather than refute that "the SEC fail[ed] to identify any negligence-based

---

[8] The SEC's citation to *SEC v. Beck*, 2024 WL 1626280, at *8 (C.D. Cal. Mar. 26, 2024) is inapposite. The *Beck* defendant was a stock promoter issuing fraudulent press releases and reports through emails and Twitter as part of an illegal scalping scheme to recommend the stock without disclosing his intention to sell his shares. Other cases cited by the SEC are also irrelevant here as they involve stock promoters directly touting companies to prospective investors in which they had acquired stock or defendants who directly paid for those promotions while also engaging in various market manipulation practices such as scalping, "painting the tape" or "marking the close." *See, e.g.*, *SEC v. Gallagher*, 2023 WL 6276688, at *12 (S.D.N.Y. Sept. 26, 2023); *Fiore*, 416 F. Supp. 3d at 321.

theory against Kevan," (*id.* at p. 28), the SEC asserts "adequate allegations of scienter also constitute adequate allegations of negligence." Opp. at p. 24. In other words, the SEC admits that it is not alleging an independent negligence-based theory.

## V.     THE SECTION 13(D) CLAIMS ARE IMPLAUSIBLE (COUNT IV).

The SEC argues that there are sufficient allegations to establish that Casey and Defendants James and Friedlander, with their respective investments, were a "group" requiring disclosure under Section 13(d). Opp. at pp. 24–28. As an initial matter, the SEC does not refute that the purpose of Section 13(d) "is to alert the marketplace to every large, rapid aggregation or accumulation of securities . . . which might represent a potential shift in corporate control." *Nano Dimension Ltd. v. Murchinson Ltd.*, 681 F.Supp.3d 168, 180 (S.D.N.Y. 2023) (citing *GAF Corp. v. Milstein*, 453 F.2d 709, 717 (2d Cir. 1971)).

Accordingly, the SEC's Section 13(d) claim against Kevan with respect to Soliton and EBET should be dismissed.

## VI.    THE SEC FAILS TO PLEAD A SECONDARY SECTION 20(B) CLAIM (COUNT VII).

Because the SEC does not plead a primary securities law violation, the SEC's secondary claim under Section 20(b) fails. *See Knutson v. Harris*, 2018 WL 4281557, at *6 (N.D. Tex. Sept. 6, 2018) (dismissing control liability claim under Section 20(b) where plaintiff failed to plead a primary securities law violation). The SEC does not attempt to distinguish *Knuston* and instead, only relies on out of circuit law. *See* Opp. at p. 28.

**VII. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST THE RELIEF ENTITIES (COUNT VIII).**

Despite the Opposition's contention to the contrary, the SEC does not state a claim for "Unjust Enrichment," under Texas common law, as plead by the Amended Complaint.

SEC enforcement actions brought in federal courts in Texas explicitly invoke "Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)(5)]" and seek "Disgorgement From Relief Defendants."[9] They do not, as the SEC did here, assert a separate cause of action for "unjust enrichment," under Texas common law.

## <u>CONCLUSION</u>

For the foregoing reasons, Tabitha and the Relief Entities should be dismissed from the case with prejudice and granted such other and further relief to which they are justly entitled.

---

[9] *See, e.g.*, *SEC v. McKnight, et al.*, No. 3:23-cv-00641-L, Dkt. 1 at ¶¶ 153–55 (N.D. Tex. Mar. 23, 2023); *SEC v. Faulkner, et al.*, No. 3:16-cv-01735-D, Dkt. 22 at ¶¶ 200–04 (N.D. Tex. Aug. 11, 2016); *SEC v. Barton, et al.*, No. 3:22-cv-02118-X, Dkt. 1 at ¶¶ 115–18 (N.D. Tex. Sept. 23, 2022); *SEC v. Verges, et al.*, No. 3:23-cv-02146-D, Dkt. 1 at ¶¶ 80–84 (N.D. Tex. Sept. 26, 2023); *SEC v. Carter, et al.*, No. 4:19-cv-00100-ALM-KPJ, Dkt. 1 at ¶¶ 70–73 (N.D. Tex. Jan. 25, 2019).

Dated: July 8, 2025.                 Respectfully submitted,

*/s/ Jason S. Lewis*

Jason S. Lewis (Attorney-In-Charge)
  Texas Bar No. 24007551
  S.D. Tex. Bar No. 430226
  Jason.Lewis@us.dlapiper.com
Ryan D. Lantry
  Texas Bar No. 24125130
  S.D. Tex. Bar No. 3857421
  Ryan.Lantry@us.dlapiper.com
**DLA PIPER LLP (US)**
1900 N. Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 743-4500
Facsimile: (214) 743-4545

***ATTORNEYS FOR TABITHA CASEY
AS EXECUTOR OF KEVAN CASEY'S
ESTATE AND TRUSTEE OF CASEY
LIVING TRUST***

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 8, 2025, a true and correct copy of the foregoing document was delivered via the Court's electronic filing system to all counsel of record.

*/s/ Jason S. Lewis*
Jason S. Lewis