**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

_____

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JONATHAN FRIEDLANDER, ADRIAN JAMES, | ) | |
| ROBERT WHEAT, and TABITHA CASEY AS THE | ) | |
| EXECUTOR OF THE ESTATE OF KEVAN CASEY | ) | |
| AND TRUSTEE OF THE CASEY LIVING TRUST, | ) | |
| | ) | Civil Action No. 24-cv-2971 |
| Defendants, | ) | |
| | ) | |
| VERTICAL HOLDINGS, LLC, DOVER HILL, | ) | |
| LLC, GSK STRATEGIES, LLC, CARMEL | ) | |
| VENTURES, LLC, ALS INVESTMENTS, LLC, | ) | |
| HIGHBRIDGE CONSULTANTS, LLC, ADRIAN | ) | |
| JAMES AS THE TRUSTEE OF THE ASJ | ) | |
| LIVING TRUST, ESPORTS GROUP, INC., | ) | |
| OAK GROVE ASSET MANAGEMENT, INC., | ) | |
| and YSW HOLDINGS, INC., | ) | |
| | ) | |
| Relief Defendants. | ) | |

_____

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S**
**APPENDIX OF FACTUAL SUPPORT FOR ITS MOTION FOR PARTIAL**
**SUMMARY JUDGMENT**

Plaintiff Securities and Exchange Commission ("SEC") submits the following

appendix of factual support for its motion for partial summary judgment, filed herewith.

This appendix details the undisputed facts referenced in the SEC's motion, which are

referenced as paragraphs of the following statement of facts ("SOF") and also contains a

table of contents to the evidentiary record filed herewith.

1

**Relationships Between the Defendants and Their Prior Business Dealings**

1.      When they worked together on Soliton, Casey and James had a close personal and professional relationship, having previously worked together to take two other microcap issuers (Moleculin Biotech Inc. and CNS) public.  Ex. 10 at 39:18-43:10 Ex. 1 at 91:25-92:14, 93:7-10, 146:10-147:1, 245:15-19.[1]  When they worked together on EBET, Casey and Friedlander had a long-standing personal and professional relationship, having worked together on numerous companies since 2012.  Ex. 11 at 22:15-18, 24:15-25:10, 26:9-18; Ex. 1 at 337:4-12; Ex. 113 at 3-4, 9-10.

2.      Between 2004 and 2010, Casey routinely identified himself in SEC filings as an officer, director, 10% shareholder, or affiliate of public companies and filed at least 35 beneficial ownership forms with the SEC.  Ex. 17 ¶51.

3.      On January 7, 2013, LuxeYard, Inc. ("LuxeYard") filed a Form 8-K with the SEC publicly stating that it had sued "Casey and his associates for manipulation of the Company's stock price."  Ex. 115.  In 2017, a trial court entered judgment for LuxeYard on its claim that Casey and others conspired in Casey's violations of his fiduciary duties as LuxeYard's undisclosed control person.  That judgment, which was affirmed in October 2019, described Casey's misconduct, including fraud, and listed ways in which Casey controlled LuxeYard and used Friedlander in a pump-and-dump scheme.  Ex. 113 (*Klinek v. LuxeYard, Inc.*, No. 14-1700899-cv, 2019 WL 5565964 (Tex. App. Oct. 29, 2019), *superseded by* 596 S.W.3d 437 (Tex. App. Feb. 13, 2020).  The

---

[1] Exhibits ("Ex.") cited herein are listed in the table of contents below.  Citations are to exhibit numbers and pages of the pdf exhibit, or for transcripts, to the page and line numbers of the transcript.  References to these facts will appear in the legal argument section of the SEC's motion as "SOF ¶XX."

published opinions identified Friedlander as a participant in the misconduct with Casey. *See id.* Wheat was also a defendant in parts of the LuxeYard litigation. Ex. 121.

4.      Casey faced persistent lawsuits and subpoenas from LuxeYard's former CEO after the LuxeYard litigation. Casey viewed these efforts as harming his relationships with other companies. Ex. 1 at 49:6-17. To avoid the former LuxeYard CEO finding out about his involvement with other companies, Casey sought to conceal his involvement from public disclosure. *Id.* Further, multiple brokers closed Casey's accounts after learning of the LuxeYard litigation. *Id.* at 30:19-33:8. In 2018-2019, James knew of Casey's involvement in the LuxeYard litigation and that it was damaging to Casey's reputation. Ex. 10 at 43:12-47:11.

5.      Casey controlled the purchases and sales of stock made by Vertical Holdings LLC ("Vertical"). Ex. 1 at 34:18-35:2, 36:18-38:6, 46:15-47:9, 48:2-49:4. Casey is also the owner, indirectly, of Triple G Ventures, Carmel Ventures, GSK Strategies ("GSK"), and Dover Hill. *Id.* at 23:8-24:13.

**Casey Was an Undisclosed Promoter of CNS Pharmaceuticals.**

6.      In 2017, a professor with whom Casey had previously worked to take Moleculin public sought Casey's help in founding a new company to develop a particular drug. Casey agreed to work with the professor and the company they co-founded became CNS. Ex. 6 at 148:2-7, 150:9-15, 159:14-16, 163:25-164:3. Casey also helped select CNS' first CFO and other officers, directors and scientific advisory board members. Ex. 1 at 115; Ex. 6 at 155:5-19; Exs. 18, 92.

7.      Casey, through Vertical and another entity he controlled, provided initial

3

funding of over $56,000 to CNS through promissory notes that were convertible into CNS shares upon an initial public offering ("IPO"). Exs. 90, 91. Through GSK, Casey entered into a consulting agreement with CNS through which he received cash and stock warrants to provide "services and advice related to company operations, investor relations, marketing, corporate structure, financing and the public markets." Ex. 93.

8. Casey helped CNS become a public company. He provided comments on draft SEC filings, advised on press releases, introduced and met with the company's brokers who were soliciting investors, and introduced CNS to consultants, including James, who organized a crowdfunding campaign. Casey also negotiated stock promoter Ahmed Alomari's ("Alomari") agreement to promote CNS' stock. Exs. 94-102.

9. CNS stock began publicly trading on November 8, 2019 when its Form S-1 registration statement became effective. Neither that S-1 nor any other SEC filing in 2020 or 2021 disclosed Casey's role in CNS as a promoter, his relationship with CNS, or his ownership of CNS shares. Ex. 116 at 6-10, Ex. 17 ¶¶11-12.

10. In 2020 and 2021, Casey sold nearly 2 million CNS shares in the public market through accounts he controlled. Overall, Casey earned profits of about $2.85 million from his sales of CNS stock during that time. Ex. 17 ¶14.

**Casey and James Were Undisclosed Consultants and Selling Shareholders of Soliton.**

11. Casey and James worked closely with Soliton's management to take that company public. The CEO of Moleculin and Soliton approached Casey and James jointly to see if they would finance the company and work to take it public. The CEO

4

wanted Casey and James to be a "team of shareholders" based on his previous experience working with them.  Ex. 7 at 47:24-50:23; Ex. 1 at 175:20-177:7, 180:15-181:2; Ex. 2 at 121:6-122:5.

12.    Casey and James each invested $125,000 in Soliton by signing the same Note Purchase Agreement.  Ex. 19.  Their debt was convertible into Soliton stock in a "Qualified Offering."  *Id.*, ¶2.2.  The agreement required Soliton to use its best efforts to commence a public securities offering within 90 days.  *Id.* ¶7.6.

13.    In July and August 2018, Casey and James together negotiated with the CEO over the compensation they would receive for their services to Soliton.  Exs. 20, 21.  Ultimately, Casey and James decided not to be compensated but rather to advance their common goal to take Soliton public and later sell their shares.  Ex. 1 at 177:20-178:16, 200:20-201:2, 243:23-244:24; Ex. 2 at 55:6-24, 125:20-23, 191:18-192:1.

14.    Casey and James played a substantial role in the IPO process.  They worked together with Soliton executives to select the underwriter for the IPO, recruit investors, coordinate the timing and terms of pre-IPO financings, and formulate marketing efforts and investor materials.  Ex. 1 at 194:25-198:19, 203:17-207:1, 212:11-23, 220:2-8, 222:17-21; Ex. 2 at 216:13-217:12, 218:23-222:9; Ex. 7 at 144:4-145:2, 146:11-149:13; Exs. 22-28.  Between June 2018 and the February 2019 IPO, Casey and James together participated in at least 27 meetings with Soliton management to discuss aspects of the IPO process, including meetings with the underwriter on "IPO Strategy" and "IPO Timing and Assignments."  Ex. 22; Ex. 2 at 218:2-22.

15.    The price and volume of the Soliton IPO exactly matched the minimum

requirements of a "Qualified Offering" under the Note Purchase Agreement so that Casey and James were able to convert their notes to Soliton shares in the IPO. *Compare* Ex. 117 *with* Ex. 19 ¶2.2, Ex. 123 at 1.

16.     In 2018, Casey and James simultaneously sold the same number of Soliton shares at the same discounted price to Wilson Rondini, a broker, to induce him to assist Soliton in going public. Ex. 29 at 3-4, 8-10. Casey and James sold shares to Rondini because they "agreed" they would benefit from Rondini offering Soliton stock. Ex. 1 at 236:5-21, 243:23-244:24. Casey and James also simultaneously sold the same number of shares to an entity Friedlander controlled to compensate him for losses in Moleculin. Ex. 29 at 5-7, 11-13; Ex. 1 at 239:18-240:23, 244:25-245:19; Ex. 11 at 49:3-23.

17.     After Soliton's IPO, Casey and James simultaneously entered into identical consulting agreements with Soliton, through entities they controlled, by which they received the same compensation for the same enumerated set of services. Exs. 30, 31; Ex. 1 at 23:8-24:11; 26:12-19; 34:18-24; Ex. 10 at 14:19-15:11.

18.     According to Soliton's CEO, Casey and James were critical to Soliton's success and, without Casey and James, Soliton's underwriter would not have succeeded in accomplishing Soliton's IPO. Ex. 12 at 42:18-23, 48:20-24, 61:1-8.

19.     In March 2019, Casey and James approached stock promoter Alomari to promote Soliton's stock at the time when their shares were becoming unrestricted. Casey and James timed their share sales with Alomari's promotions, and Alomari promised to "make it happen for you guys." Exs. 32, 63; Ex. 8 at 83:21-84:9, 89:4-93:4.

20.     On group emails and text messages, Casey, James and Alomari negotiated the compensation Alomari would receive, both from Soliton and from Casey and James selling stock to Alomari.  Exs. 32, 64.  On March 8, 2019, with input from James, Alomari began promoting Soliton, touting a target price of $7 when Soliton was trading under $5.  Exs. 65, 103; Ex. 17 ¶18.

21.     In April 2019, Alomari signed a consulting agreement with Soliton by which he would receive 25,000 shares of restricted Soliton stock.  Ex. 33.  Casey and James then agreed to trade Alomari those 25,000 shares for 22,000 shares of their own unrestricted stock through identical "Option Agreements" drafted by Casey on behalf of both him and James.  Exs. 34, 35, 104, 105.  In May and June 2019, Casey and James each transferred 11,000 unrestricted shares to Alomari, in exchange for an option to purchase 12,500 shares of Alomari's restricted stock.  Exs. 35, 66.

22.     In May and June 2019, Casey and James shaped Soliton's press and marketing strategy, directed Alomari's promotional efforts, and sold Soliton shares into those promotions, generating proceeds of $3.4 million for Casey and $3.1 million for James.  Exs. 22, 37, 106, 107; Ex. 2 at 218:23-219:14; Ex. 17 ¶¶24a, 27a.  Alomari's promotions of Soliton stock did not disclose Casey or James' intent to sell.  Ex. 67.

23.     On August 9, 2019, Casey and James again asked Alomari to promote Soliton shares.  Alomari, Casey and James spoke and together agreed that Alomari would be compensated via Casey and James forgoing the Option Agreements by which Alomari would otherwise be required to turn over to Casey and James the 25,000 shares he had received from Soliton (then worth about $225,000).  Ex. 36 at 3-5; Ex. 8 at 216:16-220:4;

7

Ex. 1 at 326:9-329:3; Ex. 2 at 342:1-374:4; Ex. 17 ¶19. The next day, James told Soliton's CEO, copying Casey, to send Alomari press materials "for Monday morning. He [Alomari] is going to cover it to his database." Ex. 38; Ex. 10 at 195:9-20.

24.    Two days later, Alomari sent out multiple promotions of Soliton stock. Exs. 39, 68, 69; Ex. 8 at 224:10-225:24. Alomari's promotions of Soliton stock did not disclose Casey or James' intent to sell or his compensation by Casey and James. *Id*.

25.    Between August 15-30, 2019, James sold 96,800 shares of Soliton in the public markets. In September and October 2019, Casey sold about 267,000 shares of Soliton stock and James sold about 318,000 shares. These sales generated total proceeds of $4 million for James and $3.3 million for Casey. Ex. 17 ¶¶24b, c, 27b-d. Some of the shares they sold had been registered in the August 6, 2019 Form S-1. *Id*. ¶¶25, 28.

26.    Casey and James jointly provided two more rounds of financing to Soliton by each purchasing shares on June 19, 2019 and on October 11, 2019. Exs. 70-72, 73 at 2, 74 at 2. Casey purchased his shares through Vertical and James purchased his shares through The ASJ Living Trust, Vanguard Financial Trust, and ALS Investments LLC. Those shares were registered with the SEC for public resale through the filing of Form S-1 Registration Statements filed on August 6, 2019 and November 8, 2019. Exs. 73, 74.

27.    Casey directed his friend and LuxeYard co-defendant Tommy Lee Allen to act as the control person of Vertical in connection with these Soliton transactions so that Allen, rather than Casey, would be named in the Form S-1s as the person controlling Vertical. Ex. 1 at 49:6-17, 270:24-271:3; 271:23-272:25, 278:10-16. Casey also asked

8

Allen to use his middle name rather than his first name on related documents to further obscure Allen's connection to LuxeYard.  *Id.* at 259:3-25; Ex. 5 at 62:15-63:8.

28.    Soliton sent "selling shareholder questionnaires" to Casey for the June and October transactions.  Ex. 40 at 3; Ex. 41 at 6.  The questionnaires, which stated they would be relied upon by Soliton to prepare the Form S-1s, required disclosure of the "Full Legal Name of Natural Control Person (which means a natural person who directly or indirectly alone or with others has power to vote or dispose of the securities covered by this Questionnaire)" and any "material relationship with the Company [] during the past three years."  Ex. 40 at 1, 3; Ex. 41 at 4, 6.

29.    The questionnaires signed by Allen were not accurate because Allen did not have dispositive control over Vertical's Soliton shares. He did not have access to Vertical's brokerage accounts, and did not have any role in its purchase or sale of shares.  Ex. 5 at 74:4-22, 90:8-16; Ex. 1 at 50:16-52:3, 265:20-271:3, 271:7-19.  The questionnaires also left blank required statements about Casey's multiple relationships with Soliton, including his prior financings, his consulting agreement or his extensive involvement in taking Soliton public, described above.  Ex. 40 at 3; Ex. 41 at 6.

30.    In June 2019, Soliton's counsel sent James and Allen a draft of the August Form S-1.  Ex. 75.  The draft stated that the selling stockholders, ALS Investments and Vertical, had not had any material relationship with Soliton in the past three years.  *Id.* at 6.  James forwarded the email to Casey, recognizing Casey as the beneficial owner of Vertical's shares.  Ex. 10 at 130:2-10.  Soliton's Form S-1 filed in November 2019 contained the same language regarding the lack of any material relationship between

James and Casey and Soliton in the prior three years. Ex. 74. Prior to the filing of the November 2019 Form S-1, James received from Soliton's counsel a draft of the November Form S-1. Ex. 76. James understood that Soliton's counsel was relying on James to provide accurate information to be included in the Forms S-1. Ex. 10 at 143:24-144:2. Despite the extensive involvement James and Casey had with financing, and consulting for, Soliton, neither James nor Casey told counsel to disclose the relationship with Soliton. *Id.* at 131:6-23.

31.    Soliton's November 2019 S-1 inaccurately identified Jonathan Camarillo as the sole person with "voting control and investment discretion" over the shares James owned through ALS Investments LLC. Ex. 74 at 6. This statement was in the S-1 because James told Soliton's counsel that Camarillo was the manager of ALS Investments. Ex. 76; Ex. 10 at 143:24-144:2; Ex. 13 at 85:17-20, 86:4-19.

32.    At best, Camarillo was a co-manager of ALS Investments and shared voting control and investment discretion over these Soliton shares with James. Ex. 10 at 146:23-147:2, 147:12-19. There is no documentation granting Camarillo such authority and no evidence that Camarillo ever exercised such discretion. *Id.* at 27:15-19, 139:7-10, 144:13-25. James acknowledges that ALS Investments was "his entity." *Id.* at 23:13-24:3; Ex. 42 at 3 (James seeking information on "my entities"). ALS Investments' brokerage statements were sent to James, not Camarillo, and Camarillo did not trade in that account. Ex. 2 at 290:12-15; Ex. 14 at 39:9-15, 64:6-65:13. All of the money invested by ALS Investments in Soliton belonged to James. Ex. 10 at 152:16-21. Shortly before James' representation to Soliton's counsel that Camarillo was the manager of ALS

10

Investments, James – not Camarillo – was interacting with Soliton regarding the terms on which he made the October investment in Soliton.  Exs. 77, 78; Ex. 10 at 138:21-139:6.  James described Camarillo's role of "manager" as one of learning from and observing him.  *Id.* at 151:10-152:3.

33.     As a result of the information Casey provided in the questionnaires and James provided to Soliton's counsel, Soliton's Forms S-1 filed in August and November 2019 did not disclose Casey and James' multiple relationships with Soliton, including their Consulting Agreements and their efforts to take Soliton public.  Ex. 73 at 3, 5; Ex. 74 at 4, 6.

34.     Soliton's August and November 2019 Forms S-1 did not disclose that Casey and James were a group owning more than 5% of its shares.  *Id.*

35.     Soliton's November Form S-1 was effective on November 22, 2019.  Ex. 118.  From November 22 to 27, 2019, James sold approximately 13,300 Soliton shares for approximately $149,000 in proceeds.  Ex. 17 ¶27e.

36.     Casey and James, in their own names or their entities, together owned more than five percent of Soliton's outstanding shares between February and December 2019.  At no time did Casey or James file a Schedule 13D disclosing that fact.  Ex. 17 ¶¶20, 22.

**Casey and Friedlander Were Undisclosed Promoters and Selling Shareholders of EBET.**

37.     Casey and Friedlander worked with the management of EBET and its predecessors (collectively "EBET") to finance and take that company public.  Ex. 1 at 337:13-338:24, 344:9-23; Ex. 3 at 72:11-73:11, 109:11-22.  Friedlander and Casey

11

worked together on capitalizing EBET, with Casey to "guide the way" on taking it public. Ex. 11 at 17:11-20, 29:10-19.  EBET's co-founder and President, Keith Williams, was Friedlander's employee.  Ex. 15 at 10:20-11:7, 15:12-16:7; Ex. 11 at 52:4-12, 62:10-23.

38.	In the summer of 2020, Casey and Friedlander engaged an underwriter with whom Casey had worked many times, Boustead Securities, to find a NASDAQ-listed shell company with which EBET could reverse merge to become publicly traded. Exs. 43, 50 at 2-3; Ex. 1 at 343:16-345:7; Ex. 3 at 74:24-78:1, 82:6-20.  Casey and Friedlander took the lead with Boustead in finding a reverse-merger candidate for EBET, with Williams' involvement limited to speaking with one candidate.  Ex. 11 at 83:21-84:24, 163:11-164:8; Ex. 15 at 83:7-15, 83:15-84:11, 84:12-16.  During that process, Casey and Friedlander told Boustead that they were "concerned about the 3pc reporting requirement and being classified as acting as a group potentially."  Ex. 79; Ex. 11 at 91:19-94:23.  After several attempts at finding a shell failed, Casey (copying Friedlander) encouraged Williams to pursue an IPO strategy and to form a new US corporation that became EBET.  Ex. 44 at 4; Ex. 1 at 390:3-391:3; Ex. 3 at 125:16-126:23; Ex. 15 at 83:7-85:11.  Williams followed that direction.  Ex. 119.

39.	In July and August 2020, Casey, Friedlander, and Wheat simultaneously provided financing to EBET in the same amounts.  On July 23, 2020, Casey, Friedlander, Wheat and Williams each loaned $15,000 each to EBET for the audit work necessary to take the company public.  Ex. 80; Ex. 11 at 98:19-100:17; Ex. 9 at 45:1-46:9, 69:15-70:1. On August 20, 2020, Casey, Friedlander and Wheat each loaned EBET approximately $33,000, via promissory notes, all with the same terms.  Ex. 81 at 1, 6, 11.  Casey

negotiated the promissory notes for one of the loans on behalf of Friedlander.  Ex. 11 at 107:13-108:18.

40.     Contemporaneously, EBET needed internet domain names for its business. Ex. 11 at 128:15-130:24.  Rather than loan EBET additional money to buy the domains, Casey, Friedlander and Wheat purchased them through entities they controlled and immediately sold them to EBET so that they could obtain shares in the company, and other forms of consideration.  The terms of the three simultaneous Domain Purchase Agreements were discussed by Casey and Friedlander but largely negotiated by Casey, and were substantially identical.  Ex. 82, Ex. 11 at 152:16-21, 153:16-23, 170:15-171:18; Ex. 15 at 93:1-15.  Williams signed the three Agreements for EBET.  Ex. 82 at 9, 19, 30.

41.     On July 22, 2020, through his entity Esports Group Inc., Friedlander bought www.esportsbook.com from a third party for $48,000.  Ex. 83; Ex. 11 at 137:1-22.  On September 1, 2020, Friedlander sold that domain to EBET via a promissory note that was convertible into 1.4 million shares of EBET, a 5-year warrant to buy 635,000 shares at $0.30 per share and a $375,000 cash payment within 5 years.  Ex. 82 at 1, 2 ¶¶2.1, 2.2.

42.     Through his entity Dover Hill, on July 28, 2020, Casey paid $37,500 to a third party for the domain www.esportsgames.com.  Ex. 84 at 3; Ex. 11 at 147:13-16, 149:3-14, 172:19-22.  While Casey approved the purchase, Williams negotiated the deal for Casey and Friedlander coordinated the negotiations with Williams and Casey.  Exs. 85, 84 at 3, 108.  On September 1, 2020, Casey sold that domain to EBET via a promissory note that was convertible into 1.4 million shares of EBET, a five-year warrant to purchase 745,000 shares of EBET at $0.30 per share and a $300,000 cash payment

13

within five years.  Ex. 82 at 11, 12 ¶¶2.1, 2.2.

43.    Through his entity YSW Holdings, Wheat bought three domains from Williams personally on August 27, 2020 for $18,075.  Ex. 45; Ex. 9 at 74:23-75:6, 71:-20-72:16.  Wheat understood that the domains would be used by EBET.  *Id.* at 70:1-12.  On September 1, 2020, Wheat caused YSW Holdings to sell the three domains to EBET via a promissory note convertible into 1.4 million shares of EBET and a five-year warrant to purchase 635,000 shares of EBET at $0.30 per share.  Ex. 82 at 23, 24 ¶¶2.1, 2.2.

44.    Casey took the lead in negotiating the terms of the Domain Purchase Agreements and sent Friedlander a draft on August 24, 2020.  Ex. 84 at 4-5; Ex. 11 at 153:9-23, 170:15-22; Ex. 15 at 93:1-15.  Casey stated that the compensation he received in the Domain Purchase Agreement was for both the domain and the services he provided before EBET's IPO.  Ex. 1 at 371:16-372:20.

45.    On July 15, 2020, EBET sold shares to multiple purchasers, including an entity owned by Casey, for $1.50 per share.  Ex. 46 at 1, 3.  On September 12, 2020, Casey told Friedlander that EBET was selling $4 million worth of shares at $2 per share in a pre-IPO financing round that "has been upsized based on demand," and Friedlander expressed the view that the IPO price would be $5 per share.  Ex. 86 at 1; Ex. 1 at 377:3-378:3.  On September 30, 2020, EBET offered its shares to multiple purchasers for $2 per share and raised $4 million.  Ex. 87 at 1-2.  Using even the lower July share price, and focusing on the convertible shares alone, Casey, Friedlander and Wheat each received stock valued at over $2.1 million ($1.50 per share x 1.4 million shares) for investments of less than $48,000 each.

46.    On October 13, 2020, Casey, Friedlander and Wheat again invested in EBET stock by purchasing shares from Blackchip Holdings LLC, an entity controlled by an EBET founder, Gary Hosman, via three substantially identical agreements.  Ex. 88; Ex. 11 at 199:23-201:12, 204:11-205:11.  Through entities they controlled, Friedlander and Wheat each purchased the same number of shares (354,277), and Casey purchased 474,277 shares.  Ex. 88 at 2, 5, 8.

47.    In preparation for the IPO, Casey, Friedlander, and Wheat each converted their promissory notes so that each could register 4.9% of EBET's registered class of shares as part of the Form S-1.  Exs. 47, 48 at 7-8; Ex. 3 at 134:3-135:3.

48.    Casey and Friedlander controlled the capital structure of EBET leading up to its IPO in April 2021.  Exs. 49, 50 at 5-10, 51.  They also decided that their own shares should be registered as part of the IPO while shares of the founders and officers should be locked up for several months.  Ex. 44 at 1-4; Ex. 1 at 385:9-388:7; Ex. 3 at 120:19-123:13.  Casey and Friedlander drafted this lockup language and sent it to EBET's CFO to incorporate into EBET's IPO offering documents.  Ex. 44 at 4 (9/23/20).

49.    Boustead, the IPO underwriter, also took direction from Casey and Friedlander several times, including about how to allocate pre-IPO shares with Rondini, another broker Casey introduced to the deal.  Ex. 50 at 2, 4-6; Ex. 1 at 383:12-24.  Boustead also discussed and confirmed with Casey and Friedlander the marketing expectations for EBET vendors, the allocation of IPO shares, and the IPO date and strategy.  Ex. 50 at 5-6, 8-10.

15

50.    Casey and Friedlander participated in numerous "weekly update" calls with EBET's management from September 2020 through the IPO in April 2021.  Ex. 52; Ex. 1 at 396:13-397:1; Ex. 11 at 209:4-14.  Casey and Friedlander interacted frequently with EBET's management on a range of subjects, including IPO strategy and the Form S-1.  Exs. 88, 89; Ex. 11 at 211:22-212:5; Ex. 1 at 398:16-399:9.

51.    EBET sent Casey and Friedlander "selling shareholder questionnaires" to be filled out for Casey, Friedlander, and Wheat's entities that owned EBET shares.  Ex. 53.  The questionnaires stated, and Friedlander understood, that EBET would rely on the questionnaire responses to prepare its Form S-1.  *Id.* at 4; Ex. 11 at 222:5-24, 225:14-21.

52.    Casey owned EBET shares through two entities he controlled, Dover Hill and Vertical.  Casey filled out the questionnaires and then caused the questionnaires for those two entities to be signed by Ryan Cravey.  Ex. 54.  The questionnaires inaccurately listed Cravey, rather than Casey, as the only person with power to vote or dispose of those entities' EBET shares, when Casey at all times exercised that sole authority.  Ex. 55; Ex. 4 at 43:23-48:3, 45:10-21; 46:16-22, 49:20-50:4, 53:22-54:19; Ex. 1 at 24:14-25, 26:12-19, 34:18-35:2, 36:8-38:6, 46:20-47:9, 48:12-15, 50:25-52:3, 53:3-15, 60:4-61:16, 64:3-16.  The signed questionnaires also failed to disclose the numerous relationships between Casey and EBET.  Ex. 55 at 3, Ex. 56 at 4.

53.    The Form S-1 Registration Statement filed by EBET in April 2021 incorporated the questionnaire responses.  Ex. 48 at 7-8; Ex. 13 at 96:21-98:9.  EBET's Form S-1 was misleading because it did not disclose Casey's role in the company as a promoter, his dispositive control over the EBET shares held by his entities, his role in the

16

Domain Purchase Agreements negotiation, the compensation component of the Domain Purchase Agreement, or his role in taking EBET public. Ex. 48 at 5-8; *see supra* ¶¶38-39, 40-45, 47-51, 54. The S-1 also portrayed the Selling Shareholders controlled by Casey, Friedlander and Wheat as independent of each other, rather than associates who worked together to take EBET public. Ex. 48 at 7-8; *see supra* SOF ¶¶40, 46, 50-51.

54.    EBET's Form S-1 registered for resale 374,277 shares Casey owned through Vertical and 45,000 shares he owned through Dover Hill. Ex. 48 at 7. Casey, through Vertical, was also allocated 141,667 EBET shares in its IPO. Exs. 109, 110.

55.    Casey introduced Alomari to EBET and facilitated Alomari's promotion of EBET stock near the IPO. Ex. 1 at 409:17-410:10; Ex. 8 at 436:6-23. Alomari worked with EBET's marketing firm to set up promotions, and after corresponding with Casey and Friedlander about the timing of the IPO, promoted EBET stock through social media posts, including multiple posts on Twitter and an investor chatroom on its first day of public trading. Exs. 57 at 2-3, 58 at 2, 59, 111; Ex. 8 at 448:22-455:1, 463:20-466:13; Ex. 1 at 412:10-413:6. On the eve of the IPO, Casey sent Alomari information about EBET. Alomari responded: "Ok let's [expletive deleted] go," to which Casey responded "Yepper." Ex. 59 at 2.

56.    On April 15, 2021, EBET's shares began trading publicly, on the NASDAQ Capital Market, headquartered in New York. Ex. 48 at 4; Ex. 120; Ex. 17 ¶29. During EBET's first two days of public trading, its stock price increased over 700%. Ex. 17 ¶29. Casey and Friedlander were together in person in those first few days of EBET's public trading, and were excited about how the stock was performing amidst their stock sales.

17

Ex. 16 at 31:2-5, 32:7-8, 36:5-17, 52:5-8, 67:25-68:9, 69:1-10, 89:2-4.

57.    On EBET's second day of trading, Casey (through Vertical) sold 191,667 shares for proceeds of about $7.8 million and Friedlander (through Esports Group) sold 72,900 shares for proceeds of about $3 million.  Ex. 17 ¶¶37a, 40.  Some of the shares sold by Casey and Friedlander were those registered in EBET's S-1.  *Id.*

58.    Shortly after its IPO, EBET had 13,048,769 shares outstanding, 1% of which equaled 130,488 shares.  Ex. 17 ¶32.

59.    Between April 15, 2021 and June 29, 2021, Casey sold 393,460 EBET shares stock through Vertical accounts at brokers based in Nebraska and California.  Ex. 17 ¶37b, Exs. 110, 112.  There were no registration statements or Forms 144 filed for those sales.  Ex. 17 ¶38.

60.    In 2021 to 2023, Casey, through three entities he controlled (Dover Hill, Triple G Ventures and Vertical), traded EBET shares for total profits of over $16 million.  Ex. 17 ¶36.  In 2021, Friedlander, through Esports Group, traded EBET shares for total profits of about $2.5 million.  *Id.* ¶39.

61.    Casey and Friedlander, in their own names or through entities they controlled, together owned more than 5% of EBET's outstanding shares on many dates between April and April 2022, and over 10% on the day of the IPO.  *Id.* ¶34.  At no time did Casey or Friedlander file Schedule 13D or Forms 3 or 4 disclosing those facts.  *Id.* ¶35.  Also, on April 15, 2021, Casey owned over five percent of EBET's outstanding shares.  *Id.* ¶34.  Casey did not file a Schedule 13D disclosing that fact.  *Id.* ¶35.

**Casey Was an Undisclosed Beneficial Owner of Volcon.**

18

62.     Volcon began trading publicly on October 6, 2021 and its shares were registered with the Commission under Section 12 of the Exchange Act from that time through July 2025.  *Id.* ¶¶41-42.  James was a co-founder of Volcon.  Ex. 2, 31:13-14.

63.     In October 2020, Casey signed a Consulting Agreement with Volcon that entitled him to a warrant to purchase Volcon shares in exchange for finding investors for Volcon.  Ex. 122, Ex. 2, 498:17-501:22.  In October 2021, Casey, through Vertical, Dover Hill and Triple G Ventures, purchased over 7.52% of Volcon's outstanding shares and later acquired additional shares.  Ex. 60 at 2, Ex. 17 ¶43, Ex. C.  By October 8, 2021, Casey owned 9.42% of Volcon's common stock, and continued to own 5% or more through December 17, 2021.  *Id.*

64.     At no time did Casey file a Schedule 13D with the SEC regarding his ownership of Volcon shares.  Ex. 17 ¶44.

65.     Between 2021 and 2022, Casey sold about 1.7 million shares of Volcon into the market through his entities for proceeds of about $1.7 million.  Ex. 17 ¶45.

**Casey Was an Undisclosed Beneficial Owner of Sidus Space.**

66.     Sidus Space began trading publicly on December 14, 2021 and its shares were registered with the Commission under Section 12 of the Exchange Act from that time through the present.  Ex. 17 ¶¶46, 47.

67.     Through Vertical and Triple G Ventures, Casey owned 16.7% of Sidus Space's stock on December 14, 2021, the date of its IPO.  *Id.* ¶48.  Combined with shares that Casey acquired from James, Casey controlled 19.9% of Sidus Space's shares at the time of its IPO, and purchased additional shares between December 15 and 31, 2021.

19

From December 14, 2021 to May 5, 2022, Casey and his entities owned 10% or more of

Sidus Space's registered shares.  *Id.* ¶¶48-49.

68.    Casey did not file a Form 3 or 4 or Schedule 13D with the SEC disclosing

his ownership of Sidus Space shares.  Ex. 1, 487:25-488:5, 489:21-23; Ex. 17 ¶50.

**Descriptions of Exhibits**

| Testimony | | | |
|---|---|---|---|
| **Exhibit #** | **Date of Document** | **Witness** | **Pages Cited** |
| 1 | 12/05/2023 | Investigative Testimony ("IT") of Kevan Casey | 23-24, 26, 30-38, 46-53, 60, 64, 91-93, 115, 146-147, 175-78, 180-181, 195-198, 200-201, 203-207, 212, 220, 222, 236, 239-240, 243-245, 259, 265-272, 278, 326-329, 337, 338, 343-345, 371-372, 377-378, 383, 385-388, 390-391, 396-399, 409-410, 412-413, 483-484, 487-489, 495-496 |
| 2 | 11/30/2023 | IT of Adrian James | 31, 55, 121-122, 125, 191-92, 216-222, 290, 342-347, 498-501 |
| 3 | 11/15/2023 | IT of Jonathan Friedlander | 72-78, 82, 109, 120-123, 125-126, 134-135 |
| 4 | 10/11/2023 | IT of Ryan Cravey | 43-50, 53-54 |
| 5 | 10/11/2023 | IT of Tommy Lee Allen | 62-63, 74, 90 |
| 6 | 08/02/2023 | IT of Waldemar Priebe | 148, 150, 155, 159, 163-164 |
| 7 | 07/19/2023 | IT of Walter Klemp | 47-50, 144-149 |
| 8 | 06/20/2023 | IT of Ahmed Alomari | 83-84, 89-93, 216-220, 224-225, 436, 448-455, 463-466 |
| 9 | 01/30/2024 | IT of Robert Wheat | 45-46, 69-72, 74-75 |
| 10 | 04/10/2026 | Deposition Testimony of Adrian James | 14-15, 23-24, 27, 39-47, 130-132, 138-139, 143-144, 146-147, 151-152, 195 |
| 11 | 04/14/2026 | Deposition Testimony of Jonathan Friedlander | 17, 22, 24-26, 29, 49, 52, 62, 83-84, 91-94, 98-100, 107-108, 128-130, 137, 147, 149, 152-153, 163-164, 170-172, 199-201, 204-205, 209, 211-212, 222, 225 |

| 12 | 04/07/2026 | Deposition Testimony of Walter Klemp | 42, 48, 61, 140 |
|---|---|---|---|
| 13 | 05/29/2026 | Deposition Testimony of Cavas Pavri | 85, 86, 96-98 |
| 14 | 05/06/2026 | Deposition Testimony of Jonathan Camarillo | 39,64-65 |
| 15 | 04/01/2026 | Deposition Testimony of Keith Williams | 10-11, 15-16, 83-85, 93 |
| 16 | 05/01/2026 | Deposition Testimony of Nicole Dumas | 31-32, 36, 52, 67-68, 69, 89 |

| Declarations | | | |
|---|---|---|---|
| **Exhibit** | **Date** | **Description** | |
| 17 | 07/13/2026 | Declaration of Ryan Murphy, SEC Accountant, with Exhibits A-E | |

| Testimony Exhibits | | | |
|---|---|---|---|
| **Exhibit** | **Date of Document** | **Description** | **Bates Numbers** |
| 18 | 01/02/2018 | Investigative Testimony ("IT") Exhibit 433, Email from James to Priebe and others regarding CNS Board | WPRIEBE-0001417 |
| 19 | 04/02/2018 | Excerpt of IT Exhibit 146, Soliton Note Purchase Agreement | ABV-SOL0000342-372 |
| 20 | 07/13/2018 | IT Exhibit 147, Email from James to Casey regarding terms of Soliton Consulting Agreements | WK-SEC-0007101 |
| 21 | 08/12/2018 | IT Exhibit 148, Email from Bisson to Klemp regarding terms for Casey/James to provide funding to Soliton | WK-SEC-0007028 |
| 22 | Various | IT Exhibit 164, Compilation of meetings between James, Casey and Soliton management | N/A |
| 23 | 05/02/2018 | IT Exhibit 443, Email from Klemp to Bisson, copying Casey, regarding retaining consultant for Soliton | CASEY0032387 |
| 24 | 04/25/2018 | IT Exhibit 153, Text message change between Casey and Klemp regarding draft offering document | WK-SEC-0081535 |
| 25 | 06/02/2018 | IT Exhibit 441, Email chain among Klemp, Bisson, Casey, and James regarding description of Soliton regulatory strategy for offering document | CASEY0015806 |

21

| 26 | 03/04/2019 | IT Exhibit 360, Meeting invite among Casey, James, Soliton executives for Mar. 4, 2019 call | AJ010198 |
|---|---|---|---|
| 27 | 03/22/2019 | IT Exhibit 361, Meeting invite among Casey, James, Soliton executives for Mar. 28, 2019 call | AJ018345 |
| 28 | 08/23/2019 | IT Exhibit 362, Meeting invite among Casey, James, Soliton executives for Aug. 23, 2019 call | AJ018389 |
| 29 | 04/04/2019 | Excerpt of IT Exhibit 324, Computershare Forms to transfer Soliton stock | SEC-COMPSHARE-E-0001522-1539 SEC-COMPSHARE-E-0002124-2138 |
| 30 | 02/19/2019 | IT Exhibit 149, Consulting Agreement between GSK Strategies and Soliton | CASEY0007454-60 |
| 31 | 02/19/2019 | IT Exhibit 158, Consulting Agreement between Highbridge Consultants and Soliton | AJ005848-5853 |
| 32 | 03/08/2019 | IT Exhibit 79, Email chain among Alomari, Casey, James regarding Soliton social media outreach | AA-0003650 |
| 33 | 04/29/2019 | IT Exhibit 86, Consulting Agreement between MCM Consulting and Soliton | ABV-SOL0001916-21 |
| 34 | 05/07/2019 | IT Exhibit 88, Text message chat between Casey and Alomari regarding stock option agreement | AA-0010898-901 |
| 35 | 05/13/2019 | IT Exhibit 89, Stock Option Agreement between MCM Consulting and ASJ Living Trust | AA-0002656-83 |
| 36 | 08/09/2019 | IT Exhibit 102, Text message chain between Alomari and Sundar regarding Alomari arrangement with Casey, James | AA-0008134-39 |
| 37 | 05/17/2019 | IT Exhibit 159, Email from James to Klemp regarding media promotion for Soliton | WK-SEC-0030609-15 |
| 38 | 08/10/2019 | IT Exhibit 103, Email from James to Bisson, Alomari, Casey regarding Alomari's coverage of Soliton press | AA-0002979 |
| 39 | 08/12/2019 | IT Exhibit 104, Text message showing Aug. 2019 Alomari promotions for Soliton | AA-0003864 |
| 40 | 06/24/2019 | IT Exhibit 276, Selling Stockholder Questionnaire for Vertical Holdings | CASEY0007448-50 |

| 41 | 10/09/2019 | IT Exhibit 280, Signature page to Soliton Securities Purchase Agreement for Vertical Holdings | CASEY0003518-23 |
| 42 | 04/03/2019 | IT Exhibit 365, Email chain among Bisson, Smith, James regarding transfer of Soliton shares from ALS Investments | SEC-COMPSHARE-E-0011234-28 |
| 43 | 07/22/2020 | IT Exhibit 331, Email chain among Casey, Friedlander, Boustead, others regarding EBET merger candidates | SEC_B-03418_000431-33 |
| 44 | 08/25/2020 to 12/28/2020 | IT Exhibit 336, WhatApp chat among Casey, Friedlander, Williams regarding EBET | SEC_B-03418_F_012381-91 |
| 45 | 08/26/2020 | IT Exhibit 487, Invoice to YSW Holdings for domain name purchase | YSW-00000863-64 |
| 46 | 07/28/2020 | Excerpt of IT Exhibit 395, EBET Subscription Agreement for GSK Strategies | EBET_0000009244-55 |
| 47 | 12/29/2020 | IT Exhibit 341, Email chain among Casey, Friedlander, EBET executives regarding terms of convertible note agreement | EBET_0000006012 |
| 48 | 04/13/2021 | Excerpt of IT Exhibit 493, EBET Form S-1/A Registration Statement filed April 13, 2021 | Publicly available |
| 49 | 09/11/2020 | IT Exhibit 225, Text message chain between Alomari and Casey regarding EBET | AA-0011570-71 |
| 50 | 6/17/2020 to 04/06/2022 | Excerpt of IT Exhibit 325, Chat messages between Friedlander, Casey and McClory (Boustead) | SEC_B-03418_F_011838-55 |
| 51 | 09/10/2020 to 06/28/2022 | IT Exhibit 335, WhatsApp chat among Csaey, Friedlander, others regarding EBET | SEC_B-03418_F_012661-62 |
| 52 | 11/24/2020 | IT Exhibit 339, Meeting invite for Casey, Friedlander, EBET executives for Nov. 25, 2020 MS Teams meeting | EBET_0000033175 |
| 53 | 02/21/2021 | IT Exhibit 344, Email from Lourie to Casey, Friedlander attaching Selling Stockholders Questionnaire | SEC_B-03418_F_008566-73 |
| 54 | 03/08/2021 | IT Exhibit 297, Email from Casey to Cravey regarding role as managing director of Vertical Holdings and | CASEY0009759 |

| | | signing Selling Stockholder Questionnaire | |
|---|---|---|---|
| 55 | 03/08/2021 | IT Exhibit 300, Email from Casey to Pavri, Lourie, Cravey attaching Selling Stockholder Questionnaire | CASEY0009814-21 |
| 56 | 03/08/2021 | IT Exhibit 298, Email from Cravey to Casey attaching Selling Stockholder Questionnaire | CACEY0009550-58 |
| 57 | 04/02/2021 | IT Exhibit 226, Text message chain between Alomari and Friedlander regarding EBET | AA-0012747-50 |
| 58 | 04/09/2021 | IT Exhibit 227, Text message chain between Alomari and Friedlander regarding timing of EBET IPO, promotions | AA-0012782-83 |
| 59 | 04/14/2021 | IT Exhibit 229, Text message chain between Casey and Alomari regarding EBET IPO | AA-0011779-80 |
| 60 | Undated | Excerpts of IT Exhibit 246, Trading records showing trades for Casey entities, among others | SEC_PROD_00288760-66 |
| 61 | 09/02/2021 | Excerpt of IT Exhibit 400, Sidus Space Subscription Agreement for Vertical Holdings | SEC-BOUSTEAD-E-0091459-507 |
| 62 | 12/15/2021 | IT Exhibit 403, Email chain including Casey and Boustead employees regarding Sidus Space share purchases | SEC-BOUSTEAD-E-0108479-81 |
| 122 | 09/01/2020 | Excerpt of IT Exhibit 407, Consulting Agreement between Volcon and GSK Strategies | VOLCON-7774-7790 |
| 123 | 04/02/2018 | IT Exhibit 15, Amendment No. 1 to Note Purchase Agreement | ABV-SOL0001166-68 |
| 63 | 03/03/2019 | James Deposition Exhibit 21, Text message chain between James and Alomari regarding Soliton promotions | AA-0003980-82 |
| 64 | 03/06/2019 | James Deposition Exhibit 24, Text message chain between Alomari and James regarding terms of Alomari agreement with Soliton | AA-0003991-95 |
| 65 | 03/10/2019 | James Deposition Exhibit 27, Email from James to Alomari with links for Soliton promotional content | AA-0003776 |

| 66 | 05/13/2019 | James Deposition Exhibit 38, Stock Option Agreement between MCM Consulting and ASJ Living Trust | AA-0003656-58 AA-0002680-83 |
|---|---|---|---|
| 67 | 05/29/2019 | James Deposition Exhibit 42, Alomari NasdaqStocks.com promotion for Soliton | N/A |
| 68 | 08/12/2019 | James Deposition Exhibit 51, Alomari NasdaqStocks.com promotion for Soliton | N/A |
| 69 | 08/14/2019 | James Deposition Exhibit 52, Alomari NasdaqStocks.com promotion for Soliton | N/A |
| 70 | 06/2019 | Excerpt of James Deposition Exhibit 43, Soliton Securities Purchase Agreement | AEC-TDA-E-0058417-509 |
| 71 | 06/15/2019 | James Deposition Exhibit 44, James to Bisson attaching signature pages for Securities Purchase Agreements | CASEY0039846-48 |
| 72 | 06/2019 | Excerpt of James Deposition Exhibit 45, Soliton Securities Purchase Agreement | SEC-TDA-E-0055669-707 CASEY0008425 |
| 73 | 08/06/2019 | Excerpt of James Deposition Exhibit 48, Soliton Form S-1/A Registration Statement Filed on August 6, 2019 | Publicly available |
| 74 | 11/08/2019 | Excerpt of James Deposition Exhibit 57, Soliton Form S-1 Registration Statement Filed on November 8, 2019 | Publicly available |
| 75 | 06/28/2019 | Excerpt of James Deposition Exhibit 46, email from James to Casey with attached Soliton Form S-1 | CASEY0046083-110 |
| 76 | 11/6/2019 | James Deposition Exhibit 56, Email from James to Pavri stating Camarillo is manager of ALS Investments | N/A |
| 77 | 10/09/2019 | Excerpt of James Deposition Exhibit 54, Email to James with Soliton offering documents | DAJ-000312-472 |
| 78 | 10/11/2019 | Excerpt of James Deposition Exhibit 55, Email from Bisson to James regarding issuance of Soliton shares | DAJ-000478-497 |
| 79 | 06/22/2020 | Friedlander Deposition Exhibit 1, Email among Boustead, others regarding Casey and Friedlander concerns about acting as a group | SEC-BOUSTEAD-E-0062404 |

| 80 | 07/23/2020 | Friedlander Deposition Exhibit 2, Email chain between Williams and YSW Holdings regarding wire instructions for EBET | YSW-00000865 |
|---|---|---|---|
| 81 | 08/30/2020 | Friedlander Deposition Exhibit 3, Compilation of Note Purchase Agreements | SEC_B-03418_F_008404-08 EBET_0000009115-19 YSW-0000857-861 |
| 82 | 09/01/2020 | Friedlander Deposition Exhibit 10, Compilation of Domain Purchase Agreements | EBET_0000092348-57 EBET_0000004287-98 EBET_0000164611-21 |
| 83 | 07/22/2020 | Friedlander Deposition Exhibit 7, Email from Escrow.com to Friedlander regarding domain name purchase of esportsgames.com | SEC_B-03418_F_007760-62 |
| 84 | 06/06/2020 to 06/15/2022 | Excerpt of Friedlander Deposition Exhibit 9, Chat Messages between Casey and Friedlander | SEC_B-03418_F_012547-71 |
| 85 | 07/28/2020 | Friedlander Deposition Exhibit 8, Email from Williams to Friedlander regarding domain name purchase of esportsgames.com | SEC_B-03418_F_000544-49 |
| 86 | 09/10/2020 to 06/28/2022 | Friedlander Deposition Exhibit 35, WhatsApp chat among Csaey, Friedlander, others regarding EBET | SEC_B-03418_F_012661-62 |
| 87 | 09/30/2020 | Excerpt of Friedlander Deposition Exhibit 32, EBET Pre-IPO Offering Term Sheet Summary | SEC-CONTSTT-E-0041304-19 |
| 88 | 12/07/2020 | Friedlander Deposition Exhibit 14, Email from Williams to Lourie attaching three Stock Purchase Agreements | EBET_0000070697-706 |
| 89 | 02/23/2021 | Friedlander Deposition Exhibit 17, Email from Speech to Barden regarding Casey suggestion from paid marketing for EBET | EBET_0000177102-03 |
| **Documents Produced During Discovery** | | | |
| **Exhibit** | **Date of Document** | **Description** | **Bates Numbers** |
| 90 | 08/16/2017 | Triple G Convertible Note | CNS-00030004-07 |
| 91 | 09/07/2017 | Vertical Holdings Convertible Note | CNS-00029969-72 |
| 92 | 01/02/2018 | Email Priebe to Casey Regarding CNS Advisory Board | CASEY 28797 |
| 93 | 04/17/2019 | Consulting Agreement between GSK Strategies and CNS | CNS-00036556-59 |

26

| 94 | 01/14/2019 | Email Climaco to Casey Regarding CNS Timeline | CNS-00034775 |
| 95 | 03/04/2019 | Email Casey to Climaco Regarding Comments to CNS S-1 | CASEY0017817-18 |
| 96 | 03/20/2019 | Email from Casey Regarding CNS S-1 Review and Filing | CNS-00046158 |
| 97 | 03/20/2019 | Email Casey to Climaco Regarding Introduction of Alomari to CNS as Consultant | AA-0002994 |
| 98 | 03/24/2019 | Email to Casey Regarding Hiring Alomari for CNS | AA-0003596 |
| 99 | 04/08/2019 | Email Climaco to Casey Regarding Highbridge and GSK Consulting Agreements with CNS | CNS-00036445-46 |
| 100 | 04/11/2019 | Email Climaco to Falcon Capital Introducing Rondini to CNS | CNS-00037139-41 |
| 101 | 05/03/2019 | Email Lourie to Casey Regarding Meeting with Strikepoint Media re CNS | CNS-00038850 |
| 102 | 10/19/2019 | Email Alomari to Casey Regarding Investors for CNS IPO | AA-0003593-95 |
| 103 | 03/08/2019 | Chat between Alomari and James regarding Soliton | AA-0003999-4002 |
| 104 | 05/10/2019 | Chat between Alomari and James regarding Soliton | AA-0004226-28 |
| 105 | 05/12/2019 | Email James to Alomari Regarding Option Agreement for Soliton shares | AA-0003571 |
| 106 | 05/09/2019 | Email Casey to Bisson Regarding Schedule for Soliton press releases | CASEY0042418-19 |
| 107 | 05/25/2019 | Chat between Alomari and James regarding Soliton | AA-0004289 |
| 108 | 07/16/2020 | Email Williams to Friedlander Regarding Offer on esportsgames.com | SEC_B-03418_000410-12 |
| 109 | 04/2021 | Boustead Securities Spreadsheet – Trade Blotter | SEC-VFM-E-0000007 |
| 110 | 04/2021 | Excerpt of Boustead Securities/Vision Financial Markets brokerage account statement for-Vertical Holdings | SEC-VFM-E-0000106-123 |
| 111 | 04/2021 | Log of Alomari posts on Investors Underground chatroom | Alomari_000056 |
| 112 | 04/2021 | Excerpt of TD Ameritrade brokerage account statement for Vertical Holdings | N/A |

| Public Documents | | | |
|---|---|---|---|
| **Exhibit** | **Date of Document** | **Description** | |
| 113 | 10/29/2019 | *Klinek v. LuxeYard, Inc.*, No. 14-1700899-cv, 2019 WL 5565964 (Tex. App. Oct. 29, 2019), *superseded by* 596 S.W.3d 437 (Tex. App. Feb. 13, 2020). | |
| 114 | 04/16/2003 | Order Granting Summary Judgment, *SEC v. Global Datatel, Inc.*, 01-CV-9108 (S.D. Fla.), Dkt. No. 47. | |
| 115 | 01/07/2013 | LuxeYard Inc. Form 8K | |
| 116 | 10/07/2019 | Excerpt of CNS Pharmaceutical, Inc. Form S-1/A Registration Statement | |
| 117 | 02/2019 | Excerpt of Soliton S-1 for IPO | |
| 118 | 11/22/2019 | Soliton, Inc. S-1 Notice of Effectiveness | |
| 119 | 09/24/2020 | EBET, Inc. Nevada Business Portal Filing History | |
| 120 | Accessed 07/06/2026 | Print out of https://www.nasdaq.com/contact-us | |
| 121 | 07/09/2015 | Complaint, *Luxeyard, Inc. v. Kay Holdings, Inc. et al.* 15-CV-00357 (D. Nev.) | |

Respectfully submitted,

On behalf of the Commission,

/s/ Kathleen B. Shields
Alexandra B. Lavin, *Pro Hac Vice*
Jonathan T. Menitove, *Pro Hac Vice*
Kathleen B. Shields, *Pro Hac Vice*
U.S. Securities and Exchange Commission
Boston Regional Office
33 Arch Street, 24th Floor
Boston, MA 02110
(617) 573-8951 (Lavin); (617) 573-4565 (Menitove); (617) 573-8904 (Shields)
(617) 573-4590 (Facsimile)
LavinAl@sec.gov; MenitoveJ@sec.gov; ShieldsKa@sec.gov

28

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2026, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by email to all parties of record by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF system.

/s/ Kathleen B. Shields
Kathleen B. Shields